**SILLS CUMMIS EPSTEIN & GROSS P.C.**
One Riverfront Plaza
Newark, New Jersey 07102

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**
100 Park Avenue
New York, New York 10017

Counsel for Plaintiffs and the Putative Class
[Additional Counsel listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DARLERY FRANCO, and<br>WILLIAM B. ERICSON, M.D.,<br>individually and on behalf of all others<br>similarly situated,<br><br>          Plaintiffs,<br><br>   -against-<br><br>CONNECTICUT GENERAL LIFE INSURANCE<br>CO., CIGNA CORPORATION, and CIGNA<br>HEALTH CORPORATION,<br><br>          Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

07– 6039

**FIRST AMENDED COMPLAINT**

**JURY TRIAL FOR ALL**
**CLAIMS SO TRIABLE**

Plaintiffs Darlery Franco and William B. Ericson, M.D. (collectively "Plaintiffs") allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through their attorneys, as follows:

## SUMMARY OF CLAIMS

1.     Plaintiff Darlery Franco brings this action as a beneficiary in a fully insured group plan insured by CIGNA.  Plaintiff William B. Ericson, M.D. brings these claims individually and on behalf of a class by virtue of assignments from CIGNA beneficiaries.  Plaintiffs bring their

claims against Defendants Connecticut General Life Insurance Company, Cigna Corporation and Cigna Health Corporation (collectively "CIGNA" or "Defendants").

2.      CIGNA beneficiaries, members and beneficiaries (hereinafter "beneficiaries") pay an increased premium for the right to choose to use out-of-network ("ONET") providers for health care services. CIGNA contracts that it will determine ONET reimbursement as the lesser of the billed charge or the usual, customary and reasonable ("UCR") amount for the service. CIGNA promised beneficiaries that the UCR for a service was the "prevailing charge" charged by most providers of comparable services in the locality where the beneficiary received the service, with consideration given to the nature and severity of the condition, as well as any complications or unusual circumstances involved which would require additional time, skill or experience on the part of the provider. To price ONET claims, CIGNA used the Ingenix database, which fails to comply with the UCR definition in CIGNA's insurance contracts.

3.      In addition, CIGNA failed to disclose to its beneficiaries the Ingenix data and the Ingenix methodology underlying its ONET reimbursement decisions, preventing beneficiaries from effectively challenging or appealing CIGNA's UCR determinations. Although CIGNA is aware of serious, systemic flaws in the Ingenix database, CIGNA concealed such flaws from its beneficiaries. For example, the Ingenix database averages the charges of both physicians and other healthcare providers who are not medical doctors. The Ingenix database fails to consider factors reflecting provider-specific, patient-specific and procedure-specific basis.

### SUMMARY OF RELIEF SOUGHT

4.      CIGNA breached the express terms of its health plans. In addition to making invalid UCR determinations, CIGNA further reduced or minimized out-of-network reimbursement by using multiple surgical, assistant and co-surgeon reductions that were not

2

satisfactorily disclosed to beneficiaries.  Plaintiffs and the Class seek reimbursement for their

unpaid benefits, as well as other appropriate equitable and legal relief to remedy CIGNA's

ongoing violations of ERISA and/or federal common law.

## JURISDICTION, VENUE AND THE PARTIES

     5.     Jurisdiction exists under the Employee Retirement Insurance Security Act of 1974

("ERISA") § 502, 29 U.S.C. § 1132 and 28 U.S.C. § 1331.  Plaintiffs seek to represent all

similarly situated beneficiaries and their assignees as defined in the Class definition alleged

herein.

     6.     Venue is appropriately established in this Court under 28 U.S.C. § 1391, because

Defendants conduct a substantial amount of business here.  Venue is also appropriate in this

Court because Plaintiff Darlery Franco is a New Jersey resident in a health plan sponsored by a

New Jersey employer.  Plaintiff William B. Ericson is a Board-certified hand surgeon who

resides in Seattle, Washington.  As an assignee, he stands in the shoes of patients who have

assigned to him the right to receive the contractual amounts owed to such patients by CIGNA.

He is suing on behalf of assignee providers and beneficiaries whose assigned claims for ONET

services have been underpaid by CIGNA.

     7.     CIGNA is incorporated in Connecticut and has a principal place of business in

Connecticut.  Many of the Explanation of Benefit ("EOB") forms and other official

communications regarding Plaintiffs' health plans list Connecticut General Life Insurance

Company as the responsible entity.  Other EOB forms and certain appeals notices, however, list

"CIGNA" or "CIGNA Health Care" as the responsible entity.  Defendants are collectively

referred to as "CIGNA."

## PLAINTIFFS' EXPERIENCE WITH CIGNA

8.      CIGNA failed to comply with the terms of Plaintiffs' health plans by systematically making UCR determinations that reduced the amount CIGNA considered allowable without valid or compliant data to support such determinations.

**Plaintiff Darlery Franco**

9.      Plaintiff Darlery Franco is a young woman who suffered complete facial paralysis on the left side of her face from nerve damage inflicted by the use of forceps during her birth in Colombia.  She needed facial reanimation surgery to restore proper functioning to her facial muscles and to repair nerve damage.

10.     While she was a college student and a dependent of her father's insurance plan with CIGNA, Ms. Franco applied to CIGNA for preauthorization for the surgery she needed. CIGNA declined to preauthorize the surgery, so Ms. Franco decided to wait until she was insured under her own insurance policy.

11.     After graduating from college, Ms. Franco became employed by the Hispanic Women's Center in Newark, New Jersey, which, until July of 2003, insured its employees through CIGNA.  Ms. Franco teaches English to adults preparing for U.S. citizenship.

12.     Ms. Franco selected Dr. Elliott Rose and Dr. Fred Valauri to perform her microsurgery because of their vast experience with facial surgery and their familiarity with the complex surgical  procedures she required (including grafting nerves from other parts of her body into her face).

4

13.     CIGNA preauthorized the full amount of her surgeons' charges in advance of the surgery. Dr. Rose and Dr. Valauri performed the all-day surgery on Ms. Franco on June 18, 2003.

14.     Despite its preauthorization of Dr. Rose and Dr. Valauri's charges in advance of the surgery, CIGNA's reimbursement to Ms. Franco was for less than *half* of the preauthorized amount. CIGNA paid only $25,000 out of the surgeons' total charges of $64,000.

15.     Ms. Franco appealed CIGNA's denial of full reimbursement. In a final appeal dated December 29, 2003, CIGNA arbitrarily increased its prior reimbursement by 20%, and therefore paid an additional $5,000. CIGNA's final determination still left Ms. Franco owing $34,000 - - over half of the surgeons' charges.

16.     The only documents CIGNA provided Ms. Franco regarding its reimbursement decision were Explanation of Benefit ("EOB") forms stating that the surgeons' charges purportedly exceeded the "prevailing charge" for their area. The EOB's reflected the use of multiple procedure rules and UCR to reduce reimbursement amounts.

17.     Although CIGNA's EOBs to Ms. Franco stated that Dr. Rose and Dr. Valauri could not balance bill Ms. Franco for amounts unpaid by CIGNA, these out-of-network surgeons are not compelled to accept payments from CIGNA that are less than their actual charges for the services they provided. Rather, only in-network providers are contractually obligated to accept CIGNA's discounted fees as payment in full. Out-of-network providers, such as Dr. Rose and Dr. Valauri, are entitled to receive full payment of their billed charges. Ms. Franco remains liable for any unpaid portion of Dr. Rose and Dr. Valauri's billed charges. The representations made by CIGNA to its beneficiaries in its EOBs representing that the ONET doctors cannot balance bill are false and baseless.

18.     CIGNA breached its contractual obligations to Ms. Franco by using reimbursement policies and protocols (including UCR and multiple and assistant surgery) to reduce payments for her facial surgery which were not authorized by her health plan. CIGNA did not adequately disclose these reimbursement policies and protocols as required by federal law.

19.     Upon information and belief, Ms. Franco's plan was a small employer plan, such that CIGNA was obligated to comply with N.J.A.C. § 11:21-7.13(a) ("New Jersey UCR regulation") governing such plans. The New Jersey UCR Regulation provides that the "...carrier shall pay covered charges for medical services on a reasonable and customary basis, or actual charges, and for hospital services, based on actual charges." It requires insurers to use the 80th percentile of the Ingenix data updates within 60 days after each update is released by Ingenix. CIGNA's reimbursements to Ms. Franco violated the New Jersey UCR Regulation.

### Dr. Ericson's Experience With CIGNA

20.     Dr. Ericson is a board-certified hand surgeon who treats patients in health plans where CIGNA pays the claims for ONET services to beneficiaries and their assignees. Dr. Ericson is an ONET provider vis-à-vis CIGNA.

21.     Because there is no contractual arrangement between CIGNA and Dr. Ericson, CIGNA pays beneficiaries UCR when they receive medical services from Dr. Ericson.

22.     Dr. Ericson receives assignments from CIGNA beneficiaries. These assignments indicate that CIGNA should pay Dr. Ericson directly. These assignments also enable Dr. Ericson to stand in the shoes of the CIGNA beneficiaries, including to demand reimbursement in compliance with the UCR definition in their health plans.

23.     Dr. Ericson (and the CIGNA beneficiaries who have assigned their claims to him) have been systematically underpaid by CIGNA due to CIGNA's use of the Ingenix database.

24.     The Ingenix database does not account for provider specialty, experience, training or board certifications. Even Ingenix's corporate representative has acknowledged in sworn testimony that the Ingenix data does not consider these critical pricing factors.

25.     CIGNA's EOBs improperly advise beneficiaries that Dr. Ericson should not balance bill beneficiaries for the unpaid difference between Dr. Ericson's billed charge and CIGNA's UCR. CIGNA's statements to its beneficiaries are false and baseless. As CIGNA knows, Dr. Ericson is entitled to receive unpaid amounts from beneficiaries. CIGNA's internal documents acknowledge that ONET providers are free to require payment of unpaid amounts from beneficiaries in instances where CIGNA does not allow the full billed charge.

26.     Dr. Ericson seeks unpaid benefits for himself pursuant to assignments from CIGNA beneficiaries and on behalf of other providers who received assignments from CIGNA beneficiaries. As an assignee, he stands in the shoes of the beneficiary, and is entitled to enforce the terms of CIGNA's health plan contract with the beneficiary. He also seeks injunctive and declaratory relief preventing further use of the Ingenix data and enjoining CIGNA's continued ERISA violations.

## THE INGENIX DATABASE

27.     Upon information and belief, Defendants at all relevant times relied upon and utilized the Ingenix databases (known as PHCS and MDR) to make UCR determinations. As set forth below, the Ingenix data cannot accurately or properly determine UCR, as that term is defined under the applicable contracts of insurance.

7

28.     In October of 1998, Ingenix, Inc. ("Ingenix"), a wholly owned subsidiary of United HealthCare Group, purchased a UCR database from the Health Insurance Association of America ("HIAA"), an insurance trade association.

29.     Since 1973, HIAA produced and marketed its database primarily to insurers, such as CIGNA. HIAA informed the purchasers of its data that it was not endorsing, approving or recommending the use of any of its data for any particular purpose. In fact, HIAA released its data with a disclaimer that specifically stated, in relevant part, as follows:

> The data are provided to beneficiaries [*i.e.*, insurance companies such as Defendants] for informational purposes only and the HIAA disclaims any endorsement, approval or recommendation of the data. There is neither a stated nor implied "usual and customary" charge.

30.     Once Ingenix acquired the database from HIAA, it continued to use substantially the same disclaimer which continued to disclaim use of the data for UCR. . Nevertheless, CIGNA used, and continues to use, the Ingenix data as the primary source of data upon which it bases its UCR determinations even though it cannot and should not be used for that purpose.

31.     Under the express terms of Plaintiffs' health plans, CIGNA is obligated to consider various factors in making its UCR determinations.

32.     There are a number of flaws in the Ingenix data which makes it an inappropriate basis for setting UCR rates, in that it:

(a)     Collects charge data which is not representative of the actual number of procedures performed within a geographic area;

(b)     Does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority of the providers in a geographic area;

(c)     Does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

8

       (d)     Fails to compare providers of the same or similar training and experience level and, instead, combines and averages all provider charges by procedure code without separating the charges of physicians and non-physicians;

       (e)     Does not ascertain the most common charge for the same service or comparable service or supply;

       (f)     Does not collect sufficient data to enable its users to determine an appropriate medical market for comparing like charges;

       (g)     Fails to compare procedures that use the same or similar resources (and other costs) to the provider, but rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

       (h)     Fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

       (i)     Does not use an appropriate statistical methodology;

       (j)     Does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

       (k)     Does not properly consider medical costs in setting geographic areas;

       (l)     Lacks quality control, such as basic auditing, to ensure the validity, completeness, representativeness, and authenticity of the data submitted;

       (m)     Is subject to pre-editing by data contributors;

       (n)     Reports  charges that are systemically skewed downward;

       (o)     Uses relative values and conversion factors to derive inappropriate UCR amounts;

       (p)     Uses a methodology that does not comply with CIGNA's contractual definition of UCR; and

       (q)     Purports to be confidential and/or proprietary, which prevents access to, and scrutiny of, the data by beneficiaries or their employers.

33.     By systematically and typically making UCR determinations without compliant and valid data to substantiate its determinations, CIGNA has breached its obligation to comply with its health plan contracts.

34.     CIGNA has, since before 1996 and through the present date, contributed claims data to Ingenix. CIGNA's data contributions reflect improper, inaccurate and incomplete data that CIGNA knew, or should have known, would have the probable effect of skewing the data downward.

35.     Ingenix and CIGNA both failed to take appropriate steps to ensure that CIGNA's data contribution was complete, accurate and unbiased. Ingenix failed to take appropriate steps to ensure that other data contributors contributed complete, accurate and unbiased data to Ingenix. As a result, the Ingenix database is flawed and biased, and not an appropriate basis for UCR.

36.     As a further means of reducing ONET reimbursements to beneficiaries or their out-of-network providers, CIGNA automatically reduces coverage for multiple procedures performed on the same day or during the same session, even if the additional procedures are unrelated to what CIGNA considers to be the initial procedure. CIGNA also pays significantly reduced amounts to ONET assistant and co-surgeons who perform services for CIGNA beneficiaries. By so doing, CIGNA has made ONET reimbursement determinations that dramatically reduced amounts in violation of the terms of their health plan contracts. Plaintiffs were harmed by CIGNA's use of these undisclosed multiple surgical and assistant and co-surgeon policies and protocols which reduced ONET reimbursement amounts.

37.     By using UCR and other uniform policies relating to ONET services to reduce reimbursements in ways that are not disclosed in CIGNA's health plans with Plaintiffs, CIGNA has violated, and continues to violate, its legal obligations to Plaintiffs and other similarly situated individuals.

10

38.     CIGNA has failed to provide data and documentation regarding their ONET determinations to their beneficiaries. CIGNA's lack of disclosure violates ERISA and the federal common law. By failing to give beneficiaries an explanation of the basis for their UCR determinations, CIGNA failed to provide the "full and fair review" required by ERISA.

39.     CIGNA has violated various fiduciary and statutory and common law duties to Plaintiffs by not providing them with a full and fair appeals process, the underlying data on which they purportedly relied on to deny their benefits, and to make decisions untainted by their self-interest.

40.     Plaintiffs seek unpaid benefit amounts, and legal and equitable relief for the conduct described herein, on their own behalf and on behalf of the proposed Class defined below.

## CLASS ACTION ALLEGATIONS

### The Class

41.     Plaintiffs bring this action on their own behalf and on behalf of a class of all persons in the United States who are, or were, at any time during the period within six years of the date this action was filed (the "Class Period"), beneficiaries or their dependents in any health plan administered by CIGNA or as to which CIGNA is a claims fiduciary, who received medical or hospital services from an out-of-network provider and for whom CIGNA made out-of-network determinations (including but not limited to reductions based on UCR, or its multiple surgical, or assistant and co-surgeon policies) in an amount less than the billed charge for that procedure. Class members include both beneficiaries in health plans fully insured by CIGNA (such as Plaintiff Darlery Franco) and providers who received assignments from CIGNA insureds (such as Plaintiff William Ericson, M.D.) (collectively, the "Class").

42.     The Class brings claims against CIGNA for the following: to recover unpaid benefits due them under the plan and to enforce and clarify their rights under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). 29 C.F.R. § 2560.503-1. Plaintiffs allege that CIGNA breached its contractual obligations to pay UCR as defined in CIGNA's health plan contracts, including by relying on a database that cannot satisfy the contractual definition of UCR. Plaintiffs and the Class allege that CIGNA is a claims fiduciary and an ERISA fiduciary, and has violated its fiduciary duties of loyalty and care under ERISA §§ 404(a)(1)(B) and (D), and 406, *inter alia*, by making out-of-network reimbursement determinations using unauthorized and undisclosed rules; by failing to provide required data and other information to beneficiaries, and by failing to apprise beneficiaries of material information regarding how CIGNA determined their out-of-network reimbursement amounts. Plaintiffs also allege that CIGNA has violated specific ERISA provisions relating to appeals and Summary Plan Descriptions ("SPDs"), and has violated claim procedure regulations. Finally, Plaintiff Franco alleges that CIGNA has determined UCR in violation of the New Jersey Regulation.

**The Class Satisfies Legal Requirements**

43.     The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, CIGNA insures millions of beneficiaries nationwide. CIGNA also insures thousands of beneficiaries who are in New Jersey small employer plans. The Class contains beneficiaries and providers who have valid assignments from beneficiaries of health plans administered by CIGNA or as to which CIGNA is a claims fiduciary. The precise number of members in the Class are within Defendants' custody and control. Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class.

44.     Common questions of law and fact exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including: whether CIGNA systematically and typically breached its health plan contracts when it used Ingenix data to determine UCR; whether CIGNA systematically and typically breached its health plan contracts when it reduced ONET reimbursement with  multiple surgery, assistant or co-surgeon policies and protocols; whether CIGNA violated its fiduciary duties in failing to disclose material information and/or data to beneficiaries; whether CIGNA systematically and typically fails to provide a "full and fair review" to beneficiaries and their assignees who received determinations reflecting UCR, multiple surgery, or assistant or co-surgeon policies and protocols; and whether CIGNA systematically and typically violated ERISA or federal claims procedure regulations.  As to Plaintiff Darlery Franco and the class she represents, the common questions include:  whether CIGNA systematically violated the New Jersey Regulation applicable to New Jersey small employer plan members; whether CIGNA systematically and typically fails to provide a "full and fair review" to New Jersey small employer beneficiaries and their assignees who received determinations reflecting UCR, multiple surgery, or assistant or co-surgeon policies and protocols; and whether CIGNA systematically and typically violated ERISA or federal claims procedure regulations as to New Jersey small employer plan members.

45.     The named Plaintiffs' claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, CIGNA has breached their statutory, plan and contractual obligations to Plaintiffs and the Class through and by a uniform pattern or practices as described herein.

46.     The named Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained

counsel competent and experienced in Class litigation and have no interests antagonistic to or in conflict with those of the Class. For these reasons, the named Plaintiffs are adequate Class representatives.

47. The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for CIGNA.

48. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Classes is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a Class action.

49. CIGNA failed to comply with the terms of Plaintiffs' health plans by systematically and typically making UCR determinations that have the effect of underpaying benefits in amounts less than amounts authorized by CIGNA's health plan contracts, in part by using noncompliant and invalid data to make its reimbursement determinations. CIGNA has also failed to comply with the terms of Plaintiffs' health plans by systematically and typically reducing reimbursement for multiple procedures and procedures by assistant and co-surgeons, when such policies and protocols are not authorized or adequately disclosed in the health plan contracts.

**COUNT I**

**BREACH OF PLAN PROVISONS FOR BENEFITS AND BREACH OF CONTRACT
UNDER ERISA § 501(a)(1)(B)**

50.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

51.     Under the provisions of the health plans of Plaintiffs and the Class members they represent, CIGNA administers the health plan or at least functions as a claims fiduciary.   The insurance plans at issue are governed by ERISA.

52.     CIGNA breached its plan provisions for benefits by underpaying UCR and other ONET reimbursement amounts.  CIGNA also breached its obligations to Plaintiffs in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by paying out-of-network reimbursement less than the amounts CIGNA contractually agreed to pay.  CIGNA is liable to beneficiaries and their assignees whenever CIGNA breached its health plans, including but not limited to instances where it used the Ingenix database to calculate UCR.  Thus, CIGNA is liable to Plaintiffs and the Class for unpaid benefits and interest under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

53.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs and the Class are entitled to obtain unpaid benefits, interest and declaratory and injunctive relief related to enforcement of the terms of their plans, and to clarify future benefits.

## COUNT II
## FAILURE TO PROVIDE FULL & FAIR REVIEW

54.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

55.     CIGNA took upon itself the role of determining appeals and grievances within the meaning of such terms under ERISA.  Plaintiffs and the Class are entitled to receive a "full and fair review" of all claims denied by CIGNA, and they are entitled to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for CIGNA's failure to comply with these requirements.

56.     Although CIGNA was obligated to do so, it failed to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for Plaintiffs, *inter alia*, by failing to disclose the "specific reasons" for benefit denials, failing to disclose data and/or the methodology it relied on in determining UCR, and failing to comply with appeal procedures imposed by ERISA and the federal common law.

57.     Plaintiffs and the Class have been harmed by CIGNA's failure to provide a "full and fair review" of appeals submitted by Plaintiffs and the Class under ERISA § 503, 29 U.S.C. § 1133, and by CIGNA's failure to disclose information relevant to beneficiaries' and providers' appeals in violation of ERISA and the federal common law.   Plaintiffs  and the Class are entitled to injunctive and declaratory relief to remedy CIGNA's continuing violation of these provisions.

## COUNT III

### CIGNA'S FAILURE TO COMPLY
### <u>WITH FEDERAL CLAIMS REGULATIONS</u>

58.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

59.     CIGNA functions as an insurance company administrator within the meaning of such terms under ERISA claims procedure regulations.  CIGNA must comply with all such ERISA claims procedure regulations in denying any benefit to Plaintiffs and the Class.  Plaintiffs and the Class are entitled to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for a failure to comply with these requirements by Defendants.

60.     The claims procedure regulations set forth minimum standards for claim procedures, appeals, notice to beneficiaries, and the like.  In engaging in the conduct described herein, including but not limited to, making out-of-network determinations that are inconsistent with the terms of group health plans, by failing to give required notice to beneficiaries, and

failing to disclose data and/or methodology they used to determine UCR or other out-of-network reimbursements, CIGNA failed to comply with such regulations.

61.     The consequences of CIGNA's failure to comply with the regulations (as well as federal common law), are that CIGNA failed to provide reasonable claims procedures, and failed to make required disclosures.

62.     Beneficiaries' administrative remedies are deemed exhausted *inter alia* by virtue of the invalid database and CIGNA's failure to provide reasonable claims procedures.  Any appeal would have been futile.

63.     Plaintiffs and the Class are entitled to injunctive and declaratory relief to remedy CIGNA's continuing violation of these provisions.

**COUNT IV**
**FAILURE TO PROVIDE AN ACCURATE**
**SPD AND REQUIRED DISCLOSURE**

64.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

65.     CIGNA's disclosure obligations under ERISA, include furnishing accurate materials summarizing such group health plans, known as Summary Plan Description ("SPD") materials  under ERISA § 102, 29 U.S.C. § 1022; supplying information requested by beneficiaries or their assignees, such as Plaintiffs and the Class under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

66.     CIGNA's failure to supply accurate SPDs and accurate information is redressable under ERISA § 502(c), 29 U.S.C. § 1132(c).

67.     CIGNA's failure to disclose material information about its UCR and other out-of-network reimbursement determinations violates federal common law, which obligates fiduciaries such as CIGNA to provide such information to beneficiaries and their assignees.

68.     Plaintiffs and the Class have been proximately harmed by CIGNA's failure to provide accurate information violates the federal common law and with ERISA § 102, 29 U.S.C. § 1022 and with ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and are entitled to injunctive and declaratory relief to remedy CIGNA's continuing violation of these provisions.

## COUNT V
## VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE

69.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

70.     CIGNA acted and acts as a fiduciary to Plaintiffs in connection with their health plans, as the term fiduciary is interpreted under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). CIGNA also acted and acts as a claims fiduciary.

71.     As a functional fiduciary under ERISA and as a claims fiduciary, CIGNA owes beneficiaries in such plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan.  ERISA § 404(a)(1)(B) and (D), 29 U.S.C. § 1104(a)(1)(B) and (D).  In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, CIGNA violated their fiduciary duty of care.

72.     As a fiduciary of health plans under ERISA, CIGNA owed beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries.

18

ERISA § 406, 29 U.S.C. § 1106.   CIGNA cannot, for example, make benefit determinations for the purpose of saving money at the expense of beneficiaries.

73.      CIGNA violated and violates its fiduciary duty of loyalty, *inter alia*, by making UCR and other ONET reimbursement determinations that benefited themselves at the expense of beneficiaries.  In addition, CIGNA violates its fiduciary duty of loyalty by failing to inform beneficiaries of flaws in the Ingenix database that preclude its appropriate use to determine UCR reimbursement.  In fact, CIGNA made representations *inter alia* about the Ingenix database that it knew, or should have known, were untrue.  As a data contributor to the Ingenix database, CIGNA knows or should know many of the flaws that makes the Ingenix data an inappropriate basis for UCR.

74.      In relying on a database that was noncompliant with its health plan contracts,  and invalid to make UCR determinations, and in applying, *inter alia*, a reduction for multiple procedures that was not authorized and nowhere disclosed to beneficiaries in their plan documents, CIGNA violated its fiduciary obligations to Plaintiffs and the Class.

75.      Plaintiffs are entitled to assert a claim for relief for CIGNA's violation of their fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and may seek removal of any fiduciary that breached its duties.

### COUNT VI
### VIOLATION OF NEW JERSEY REGULATION FOR SMALL PLAN MEMBERS

76.      The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

77.      CIGNA must comply with New Jersey law and regulations for beneficiaries and their assignees in New Jersey.  For members in health plans with 50 or fewer members, CIGNA

must comply with the law and regulations governing small plans, including but not limited to N.J.A.C. § 11:21-7.13(a) ("New Jersey UCR Regulation").

78.     Under the New Jersey UCR Regulation, CIGNA must pay ONET hospital services based on actual charges, and must pay ONET medical services using the 80th percentile of the Ingenix database updated within 60 days.

79.     CIGNA cannot make reductions based on multiple surgery, assistant surgeons or co-surgeons for New Jersey small plan members.

80.     CIGNA's UCR and other ONET reimbursement determinations to Plaintiff Franco violated the New Jersey UCR Regulation.

81.     Plaintiff Franco, individually and on behalf of other New Jersey small plan beneficiaries, is entitled to unpaid benefits where CIGNA's payments were in derogation of the New Jersey UCR Regulation, and injunctive, declaratory and equitable relief to ensure past and future compliance with the law.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial for all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in their favor against CIGNA as follows:

A       Declaring that CIGNA has breached the terms of Plaintiffs' health plans and those of the Class, and awarding unpaid benefits to the Plaintiffs and the Class members, as well as awarding injunctive and declaratory relief to ensure enforcement of plan terms and to clarify future entitlement to benefits, including enjoining CIGNA from using the Ingenix database, or from making UCR determinations in the absence of proper or reliable data substantiating the lesser amounts;

20

B.     Declaring that CIGNA has failed to provide a "full and fair review" to Plaintiffs and the Class under ERISA § 503, 29 U.S.C. § 1133, and awarding injunctive, declaratory and other equitable relief to Plaintiffs and the Class to ensure compliance with ERISA's requirements;

C.     Declaring that CIGNA has violated its disclosure obligations under ERISA and the federal common law, including under § 104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 102, 29 U.S.C. § 1022, for which Plaintiffs and the Class are entitled to injunctive, declaratory and other equitable relief;

D.     Declaring that CIGNA has its fiduciary duties of loyalty and care to Plaintiffs, and awarding appropriate relief, including restitution, declaratory and injunctive relief to Plaintiffs and the Class, including removing any breaching fiduciary;

E.     Declaring that CIGNA has violated federal claims procedures, and awarding Plaintiffs and the Class declaratory and injunctive relief to remedy such violations;

F.     Declaring that CIGNA violated ERISA's SPD requirements, and enjoining future use of noncompliant SPDs;

G.     Awarding Plaintiff Franco and other New Jersey small employer plan class members unpaid benefits in all instances where CIGNA failed to comply with the New Jersey UCR Regulation, and declaratory, injunctive and equitable relief to ensure past and future compliance with New Jersey law;

H.     Awarding Plaintiffs and the Class the costs and disbursements of this action, including reasonable counsel fees, costs and expenses in amounts to be determined by the Court;

I.     Awarding prejudgment interest; and

J.     Granting such other and further relief as is just and proper.

Dated:  Newark, New Jersey
        June 15, 2007

21

Respectfully submitted,

**SILLS CUMMIS EPSTEIN & GROSS P.C.**
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Barry M. Epstein, Esq.


**POMERANTZ HAUDEK BLOCK
   GROSS MAN & GROSS LLP**
100 Park Avenue
New York, New York 10017
(212) 661-1100

D. Brian Hufford, Esq.


**CUNEO, WALDMAN & GILBERT**
317 Massachusetts Avenue, NE
Suite 300
Washington, D.C. 20002


**THE ALPERT LAW FIRM**
401 E. Jackson Street, Suite 1825
Tampa, FL 33602


KLARI NEUWELT, ESQ.
Law Offices of Klari Neuwelt
110 East 59th Street, 29th Floor
New York, NY 10022