**NOT FOR PUBLICATION**
### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARLERY FRANCO, | : |
| Plaintiff, | : Civil Case No. 07-6039 (FSH) |
| v. | : **OPINION and ORDER** |
| CONNECTICUT GENERAL LIFE INSURANCE CO. et al., | : Date: August 6, 2008 |
| Defendants. | : |

**HOCHBERG, District Judge**

This matter is before the Court upon Defendant Connecticut General Life Insurance Co.'s ("CIGNA") motion to dismiss Plaintiff Franco's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 because the Plaintiff's claims arise under ERISA § 502, 29 U.S.C. § 1132. The Court held oral argument on April 21, 2008.[1]

This motion presents the following issue: does Plaintiff Franco lack standing when CIGNA, after four years of litigation, realized that it erroneously processed Franco's claim as an "out-of-network" ("ONET") claim and subjected the claim to an allegedly improper "usual,

---

[1] Defendants filed a motion to dismiss Plaintiff's original complaint on July 6, 2006. The Court terminated that motion on July 27, 2006 in order to permit Plaintiffs to file an amended Complaint. Defendants moved to dismiss Plaintiff's first amended complaint for lack of standing on July 16, 2007. The Court held oral argument on Defendants' motion on December 4, 2007. Following oral argument, the Court denied Defendants' motion without prejudice and ordered the parties to engage in 30 days of intensive discovery on the issue of standing. On February 20, 2008, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing based on information brought to light during the Court-ordered period of intensive discovery.

customary, and reasonable" ("UCR") calculation in an apparent violation of CIGNA's private, internal Offer & Settlement policy, and thereafter redressed Franco's claim by paying her surgeon's balance bill in full pursuant to that policy? That is the position taken by CIGNA in this motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Darlery Franco suffered from complete facial paralysis, resulting from the use of forceps during her birth in Columbia. Compl. ¶ 9. Plaintiff tried, but was unable to get facial reanimation surgery while insured as a dependant under her father's insurance.

After graduating from college, Plaintiff Franco was employed by the Hispanic Women's Center in Newark. At that time, and through July 2003, Franco's employer insured its employees though CIGNA. Because Franco was now covered by her own insurance plan, she again sought facial reanimation surgery. Plaintiff alleges that she selected two out-of-network ("ONET") surgeons to perform the procedure and CIGNA "preauthorized the full amount of [the] surgeons' charges in advance of the surgery." Compl. ¶ 13.

Plaintiff's ONET surgeons performed the first stage of Plaintiff's surgery on July 18, 2003. Plaintiff Franco had the second stage of the surgery in 2004, while she was covered by a different insurer. Plaintiff Franco's surgeons performed the third stage of the surgery in September 2005, at which time Franco was again covered by CIGNA insurance. CIGNA paid a portion of the surgeons' billed charges for these two surgical operations. Plaintiff alleges that CIGNA's failure to pay the entire billed amount resulted in more than $100,000 in unpaid charges. Plaintiff's first amended complaint, filed on December 20, 2007, also alleges that she

was liable for the unpaid portion of the surgeons' charges.  See Compl. ¶ 17.

Plaintiff's claims arise from the terms of her insurance contract with CIGNA and are brought pursuant to ERISA, 29 U.S.C. § 1001 et seq.  Plaintiff Franco alleges that her operations were treated as ONET procedures under the terms of her insurance contract.  The contract states that CIGNA "contracts that it will determine ONET reimbursement as the lesser of the billed charge or the usual, customary and reasonable ["UCR"] amount for the service."  Compl. ¶ 2.  The contract also allegedly promises beneficiaries that UCR will be the

> "prevailing charge" charged by most providers of comparable services in the locality where the beneficiary received the service, with consideration given to the nature and severity of the condition, as well as any complications or unusual circumstances involved which would require additional time, skill or experience on the part of the provider.

Id.  Plaintiff alleges that the Ingenix database used by CIGNA to determine the extent of Plaintiff Franco's benefits fails to comply with the definition of UCR provided in her contract with CIGNA.  Plaintiff also alleges that CIGNA breached the insurance contract by reducing ONET reimbursement by using undisclosed "surgical, assistant and co-surgeon reductions."

## II. STANDARD

### *A. Article III Standing*

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."  Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see also Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998).  As the Third Circuit has noted, "[t]he constitutional component [of standing] derives from the Article III 'case or controversy' requirement and has

three elements:

> (1) the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Twp. of Piscataway v. Duke Energy, 488 F.3d 203, 208-09 (3d Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "These requirements have been described as 'immutable,' and as the 'irreducible constitutional minimum' of standing under the 'case or controversy' clause. . . ."  Clark v. McDonald's Corp., 213 F.R.D. 198, 206 (D.N.J. 2003) (quoting Bennett v. Spear, 520 U.S. 154, 162 (1997), and Defenders of Wildlife, 504 U.S. at 560-61)).

As the Supreme Court has noted, "[t]hat a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)); see also Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.").  Consequently, the "Court may not defer the issue of standing to the class certification stage of this action.  Demonstration of Article III standing is a

threshold requirement in any action in federal court, and ordinarily a court must address the issue of Article III standing before addressing the merits of a case." In re Lord Abbett Mut. Funds Fee Litig., 407 F. Supp. 2d 616, 623-24 (D.N.J. 2005) vacated in part on other grounds by 463 F. Supp. 2d 505, 508-09 (D.N.J. 2006).

*B. Federal Rule of Civil Procedure 12(b)(1)*

"Motions to dismiss for lack for standing may be reviewed under Federal Rule of Civil Procedure 12(b)(1)." New Life Homecare, Inc. v. Blue Cross of Ne. Pa., No. 06-2485, 2008 WL 423837, at *3-4 (M.D. Pa. Feb. 14, 2008) (citing Maio v. Aetna, 221 F.3d 472, 482 & n.7 (3d Cir. 2000)); In re Intel Corp. Microprocessor Antitrust Litig., 452 F. Supp. 2d 555, 557-58 (D. Del. 2006). A defendant may attack a complaint under Rule 12(b)(1) as either deficient on its face, or as deficient as a matter of fact. See Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); In re Intel, 452 F. Supp. 2d at 557 ("Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction.").

When a defendant attacks a complaint as deficient on its face, the Court, as in a motion brought pursuant to Rule 12(b)(6), must assume that "the allegations contained in the complaint are true." New Life Homecare, 2008 WL 423837 at *3-4 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In a facial attack, the Court is limited to considering "the allegations in the complaint, the documents referenced in or attached to the complaint, and matters in the public record." In re Intel, 452 F. Supp. 2d at 557 (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)). The Court need not convert the 12(b)(1) motion to one for summary judgment "if the plaintiff's claims are based on the

documents and the documents are undisputedly authentic." Id. (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When a Court considers an "in fact" challenge under Rule 12(b)(1), the court is not limited to the allegations contained on the face of the complaint. Rather, "the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction." Id. at 558 (citing Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997)); see also Carpet Group Intern., 227 F.3d at 69. "When a defendant attacks subject matter jurisdiction 'in fact,' as opposed to an attack on the allegations on the face of the complaint, the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." Carpet Group Intern., 227 F.3d at 69 (citing Mortensen, 549 F.2d at 891).

### III. ANALYSIS

During the Court-ordered 30-day period of discovery on the issue of standing, CIGNA found several previously undiscovered documents in its own files that relate to the provision of Plaintiff Franco's benefits. These documents form the basis of Defendants' present motion.[2] Specifically, Defendants direct the Court to internal CIGNA documents, supported by a deposition of a CIGNA representative, demonstrating that Plaintiff Franco's procedure was approved by CIGNA "on an in-network basis." See McMahon Cert. Ex. C (deposition of

---

[2] At oral argument on April 21, 2008 the Court questioned CIGNA's counsel as to why it had taken CIGNA four years to review these basic documents and to raise this issue. CIGNA's counsel replied "Your Honor, it took four years for the lawyers to get to the files and determine that that's what happened with Miss Franco's claim." Tr. at 5(1)-(6). Counsel's response does not explain why neither CIGNA's in-house nor outside counsel reviewed these documents at any time prior to the Court-ordered discovery.

CIGNA representative Treva Mattingly), D (internal CIGNA clinical notes).  CIGNA argues that these documents demonstrate that Plaintiff Franco's procedure was not at any time subject to the injury alleged in her complaint, namely that her benefits were improperly reduced pursuant to an out-of-network determination by CIGNA for which CIGNA relied on improperly calculated UCR data.  Defendants argue that because Plaintiff's procedures were approved as in-network procedures, Franco lacks Article III standing to represent a class of Plaintiffs whose claims were subject to out-of-network determinations.

*A. Franco's Pre-approval as "In-Network"*

According to Defendants, because Franco's procedures were approved as "in-network," Franco was not liable for any charges beyond her co-payment, which was zero.[3]  See McMahon Cert Ex. F (Plaintiff's plan) at 13.  CIGNA claims that it informed Franco that she was not liable for amounts over her copay/coinsurance amount in two Explanation of Benefits ("EOB") forms processed on September 16, 2003 and December 29, 2003.  See id. Exs. H, I.  Among the myriad numbers and codes on the EOB forms, the EOBs state that the "member [is] not responsible for any charges over the copay/coinsurance.  If billed over and above this amount, please contact member services immediately."  See id.

In a further attempt to demonstrate that Franco was not subject to an ONET

---

[3]  For the proposition that CIGNA approved Franco's procedure on an in-network basis, CIGNA directs the Court to the transcript of CIGNA employee Treva Mattingly (2/12/08), CIGNA's Answers and Objections to Plaintiff's Interrogatories Regarding Plaintiff's Standing (1/10/08), and internal CIGNA clinical notes.  See Mot. at 3.  None of these documents would have been available to Plaintiff or her providers at any time prior to the Court-ordered discovery.  Until that Court-ordered discovery, as far as Plaintiff knew – and indeed, as far as CIGNA and its attorneys knew – Franco's procedure had been subject to an ONET determination based on a UCR calculation.

determination, CIGNA directs the Court to CIGNA's "Offer & Settlement" policy. According to CIGNA, CIGNA applies this policy to claims for ONET treatment that CIGNA has approved on an in-network basis. See Mot. at 3. Under the terms of the Offer & Settlement policy, when CIGNA receives a bill from an out-of-network doctor who has performed a procedure that was approved by CIGNA on an in-network basis, CIGNA first offers to pay the out-of-network doctor an amount based on the UCR charge for that procedure. This first offer is an ONET amount calculated in a way that falls within the parameters of the class Complaint. CIGNA claims that this is in "recogni[tion of the fact] that doctors routinely accept less than their full-billed charges (both for reasonableness and efficiency reasons). . . ." Mot. at 3. CIGNA's policy next states that "if the provider either refuses to accept the [UCR] payment and/or bills the member for the balance over [UCR], the claim will be **immediately** adjusted to 'billed charges.'" Opp. Ex. 13 at 2 (emphasis in original).

CIGNA argues that the Offer & Settlement policy supports its position that "[a] member who has a procedure pre-authorized . . . will not be liable for charges by her provider even though the initial offer [to the provider] is tied to [use of the allegedly improper UCR data] . . . challenged in the Complaint." Mot. at 4. Defendants suggest that if Plaintiff had followed the fine print on her EOB and notified CIGNA that her ONET providers had balance billed her, CIGNA would have paid her providers in full and spared all parties this litigation.[4] See Mot. at 9

---

[4]    At oral argument, CIGNA stated its position this way:

MR. PRATT: Your Honor, if Miss Franco in 2003 had the instruction in her explanation of benefits –
THE COURT: So it's Miss Franco's fault, is that what you're saying?
MR. PRATT: Your Honor, she – she failed to notify CIGNA. So if we want to call that her fault, yes, Your Honor.

("If Franco had advised CIGNA that she was being billed for the balance, as she was instructed to do, CIGNA would have reimbursed Franco for any amount charged in excess of CIGNA's original reimbursement."). Importantly, CIGNA's Offer & Settlement policy is not public, was unknown to Franco, was never disclosed to her doctors, and CIGNA's own personnel did not apply it to Franco's claim even after Franco's surgeon advised CIGNA that Franco would be balance billed. Indeed, until the Court ordered discovery, the Offer & Settlement policy was apparently unknown even to CIGNA's in-house and outside counsel. The policy was finally discovered by new counsel for CIGNA in 2008, nearly four years after the original complaint was filed. In February 2008 Franco's doctors were paid the balance due them for Franco's procedures.[5]

Neither the EOBs nor the Offer & Settlement policy are sufficient to demonstrate that Franco lacks standing to represent a class of insureds who have suffered an adverse ONET determination. Plaintiff acknowledges in her Complaint that the EOBs purport to inform her that

---

Tr. 20(20)-21(1). In light of the fact that it took CIGNA four years and two sets of respected outside counsel to determine that Franco's procedures had been pre-approved as "in-network" and to locate its Offer & Settlement policy, one is left to ponder what would have happened if it had been Franco, rather than her surgeon, who contacted CIGNA. All the relevant information was available to CIGNA, yet CIGNA was either unable or unwilling to apply its own undisclosed Offer & Settlement policy to Franco's claim.

[5] After belatedly realizing that Plaintiff Franco's surgeries were approved as in-network, and in an apparent concession to the fact that Franco's surgeons' request should have been treated under its Offer & Settlement policy, sometime around February 11, 2008 Defendants made payments to Franco's surgeons equal to the total amount billed by the surgeons minus the amount already paid by CIGNA, plus interest. See Lefkowitz Cert. Ex. 1 (Letter from Defendants' counsel to Plaintiff's counsel noting that payment to Plaintiff's surgeons had been made). Defendants stated at oral argument, however, that the instant motion is not premised on CIGNA's payment to Plaintiff's providers; rather, it is based on CIGNA's purported treatment of her procedure as "in-network" and not as "out-of-network." See Tr. 32(8)-(10) ("Our motion before this court is -- does not depend on, in any way, shape or form, on the fact of payment.").

she cannot be balance billed. The Complaint also alleges, however, that "out-of-network surgeons are not compelled to accept payments from CIGNA that are less than their actual charges for the services they provided." CIGNA does not dispute this assertion. As a result, when in 2003 CIGNA refused to pay Franco's out-of-network surgeons' full pre-approved charges and instead relied upon allegedly improper UCR data to reduce her coverage, Franco reasonably believed that her proper recourse was to appeal the decision within CIGNA and then file suit.[6] Thus, while CIGNA now implicitly states that it mistakenly treated Franco's claim as an out-of-network claim, and that if it had followed its own policy it would have paid the claim as a pre-approved in-network claim, the fact remains that CIGNA for many years treated Franco's claim as an ONET claim. If Franco had not sued, CIGNA would not have paid her claim. A lawsuit lasting four years was required to get CIGNA to figure out its own internal policy and decide to apply it to Franco's claim.

CIGNA's argument that Franco lacks standing is unpersuasive because CIGNA did not abide by its Offer & Settlement policy even though it knew Franco was being balance billed by her surgeon. As noted above, the Offer & Settlement policy states that "if the provider either refuses to accept the [UCR] payment and/or bills the member for the balance over [UCR], the claim will be **immediately** adjusted to 'billed charges.'" Opp. Ex. 13 at 2 (emphasis in original). So what happened in this case? On October 20, 2003 Dr. Rose wrote to CIGNA "to appeal [CIGNA's] unwarranted reduction of benefits for complex microsurgical services. . . ."

---

[6] As a result of Franco's internal appeal, CIGNA increased its payment to her surgeons by $5,000. See Compl. ¶ 15. Even during those internal appeals, however, CIGNA apparently failed to discover the Offer & Settlement policy and the other documents at issue in this motion. CIGNA's incomplete review of Plaintiff's file casts doubt upon the effectiveness of CIGNA's internal appeals process.

Lefkowitz Cert. Ex. 10.  In this letter, Dr. Rose noted that "Ms Franco is of modest means and presented with a devastating facial paralysis and looked forward to staged reconstructive surgery to achieve facial symmetry and the ability to smile.  She is now faced with potential out-of-pocket costs of nearly $40,000."  Id.

At this point, CIGNA was on notice from Franco that her doctor was expecting the balance to be paid.  Franco had thus notified CIGNA of a balance bill.  Yet CIGNA treated this letter as neither a "rejection" of CIGNA's initial UCR payment to Dr. Rose, nor as notice that Dr. Rose intended to balance bill Franco.  Rather, CIGNA unilaterally decided to treat Dr. Rose's letter as an "appeal."  See Opp. Ex. 5 (deposition of Treva Mattingly) at 80-90.  Once CIGNA dubbed Dr. Rose's letter an "appeal," it did not apply its Offer & Settlement policy.  By that action, CIGNA continued to treat Franco's claim as a UCR-based claim.   The Court is left to conclude that, at the time of Dr. Rose's letter, CIGNA's claims department either (1) did not know about its own Offer & Settlement policy; (2) believed that the Offer & Settlement policy did not apply to Franco's claim; or (3) simply chose not to apply the policy to Franco's claim.  Regardless, as Franco's claim made its way through CIGNA's internal appeals process, anyone in Franco's position would reasonably believe that her claim had been subject to an out-of-network determination of the sort pleaded in her Complaint.  A secret policy that was unknown to the insured, unknown to her doctors, and unheeded by the insurer is no basis to deny Plaintiff standing when, notwithstanding the policy, Plaintiff's claim was in fact treated as described in her Complaint.[7]  To put it succinctly, CIGNA's apparent admission that it should have acted

---

[7] At oral argument Defense counsel stated that "I had not investigated the substance of her claims file [prior to the previous motion]. . . . Once I did that, it didn't take me long to figure out what was going on."  Tr. at 45(21)-(25).  However, the case was already four years old

differently with respect to Plaintiff's claim does nothing to change the fact that CIGNA acted as it did.

Defendants' argument rests on the faulty proposition that Franco's "claims were processed in-network and [she] did not have any financial liability whatsoever for her doctors' billed charges." Mot. at 9. Plaintiff's claim was clearly <u>not</u> "processed in-network," for Franco reaped none of the purported benefits of having her care pre-approved on that basis. At most, it appears that Franco's claim was initially <u>designated</u> "in-network" by CIGNA internally, but subsequently "processed" as an ONET claim for the past four years of administrative appeals and litigation. If Franco's claims had truly been "processed in-network," as CIGNA now claims they were, CIGNA could have saved the parties nearly four years of litigation. It was only this litigation by Franco that got CIGNA to finally treat her claim the way they promised to when they pre-approved it in 2003.

Similarly, Defendants argue that Franco lacks standing because, unlike insureds whose claims were actually subject to an ONET determination, Franco "was always over here with a

---

when this happened. Presumably CIGNA's in-house attorneys and previous outside counsel reviewed the claims file at some point in preparing its two previous motions to dismiss. Indeed, one might expect that to be the very first thing that CIGNA and its attorneys would do upon receiving notice of a suit like that at bar. Yet for nearly four years CIGNA defended this litigation under the assumption that Franco's claims were ONET claims.

  Furthermore, the timing of CIGNA's revelation is cause for concern, given that CIGNA was the only party in possession of the documents it now relies upon to demonstrate that Franco's surgery was approved as in-network. It is therefore rather specious to state, as Defendants did at oral argument, that "in the course of that discovery [Defendants] learned several facts that" gave rise to this motion. <u>See</u> Tr. at 3(5)-(6). Those facts were solely and entirely in CIGNA's possession from the outset of this litigation, and it is surprising that CIGNA had not located these documents in its own files prior to July 3, 2007, at which time the parties represented that they had completed their Rule 26 disclosures. <u>See</u> No. 04–cv-1318, DKT#57 ¶ 4.

right to be made whole as a benefit unaffected by the Ingenix database." Tr. 36(13)-(16). But neither Franco nor her providers were aware that Franco had this right, and until CIGNA's attorneys recently reviewed the relevant documents, neither CIGNA nor its attorneys were aware that she had that right, either. Only CIGNA could have known of its own internal policy, and from the perspective of any other party, Franco's claim was treated in the way described in Franco's Complaint.

If the instant case were not a class action, Defendants' payment to Plaintiff's providers would likely present a mootness issue rather than a standing issue. However, Defendants do not allege that CIGNA's belated payment of benefits to Franco's providers moots Franco's claim. As CIGNA recognizes, "the Third Circuit has recently held that, following the filing of a class complaint and prior to moving for certification, a defendant cannot render class claims moot by offering the named plaintiff the full amount of his individual claim." Smolow v. Hafer, 353 F. Supp. 2d 561, 567 (E.D. Pa. 2005) (citing Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004)); see also Rep. at 7 n.3. Moreover, Defendants' payment does not provide Franco with all the relief she seeks. Although ERISA entitles Franco to "unpaid benefits," and not to compensatory or punitive damages, see e.g., DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 458 (3d Cir. 2003) (Becker, J., concurring) (noting that "a string of Supreme Court cases has interpreted ERISA to disallow any recovery of compensatory or punitive damages" and citing Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985) and Mertens v. Hewitt Associates, 508 U.S. 248 (1993)); Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989); Finocchiaro v. Squire Corrugated Container Corp., No. 05-5154, 2007 WL 608462, *4 (D.N.J. Feb. 23, 2007), ERISA also permits Franco to seek equitable relief under ERISA § 502(a)(3).

See 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan"). Plaintiff seeks equitable relief "enjoining CIGNA from using the Ingenix database, or from making UCR determinations in the absence of proper or reliable data substantiating the lesser amounts". Compl. at 20 ¶ A. Franco's situation may, however, be sufficiently different from other UCR claimants as to undermine her adequacy as a class representative based on typicality and commonality issues. Those issues are not presently before the Court.

### B. The Elements of Article III Standing

It cannot be doubted that prior to CIGNA's payment of Franco's providers in February, 2008, see Lefkowitz Cert. Ex. 1, Franco had suffered and properly alleged an "injury" sufficient to confer Article III standing. CIGNA allegedly used improper UCR data to calculate its initial offer of payment to Franco's surgeons and Franco was then balance billed by her surgeons. Plaintiff's Complaint alleges that CIGNA computed UCR in violation of ERISA. This allegedly improper reduction in Franco's benefits constitutes an injury sufficient to confer Article III standing. As noted above, CIGNA was on notice that Dr. Rose planned to balance bill Franco, and it did nothing to correct its processes during the last four years of litigation.

Franco has demonstrated sufficient causation and redressability to confer Article III standing. CIGNA does not dispute that its initial payment to Dr. Rose was based on UCR data.[8]

---

[8] It is worth reiterating that CIGNA's internal "Offer & Settlement" policy does not alter the Court's analysis. Franco's alleged injury existed at the time CIGNA improperly reduced Franco's benefits. CIGNA is not entitled to reduce benefits based on UCR data pursuant to a

Franco's alleged injury – the improper reduction of her pre-approved benefits – was caused, at least in part, by CIGNA's reliance on allegedly improper UCR data in making this payment to Dr. Rose.[9] It is equally clear that Franco's injury would be redressed by the equitable relief and unpaid benefits she seeks in her Complaint.[10]

For the reasons stated above, the Court finds that Plaintiff Franco has Article III standing to pursue her claim on behalf of the class identified in her Complaint.

IV. ORDER

**ACCORDINGLY** it is this 6th day of August, 2008

**ORDERED** that Defendants' motion to dismiss the first amended complaint is **DENIED**.

/s/ Faith S. Hochberg
**HON. FAITH S. HOCHBERG, U.S.D.J.**

---

non-public policy and then, when challenged on its decision, escape liability for its action by pleading incompetence in processing beneficiaries' claims.  Franco has alleged that CIGNA relied upon improper UCR data to reduce her benefits in violation of ERISA.  Plaintiff has demonstrated a causal connection between CIGNA's reliance on UCR data and her injury.

[9] Franco's injury may have multiple causes.  It is possible, for example, that CIGNA's claim-processing error based on its failure to apply its Offer & Settlement policy is the "but for" cause of Plaintiff's injury.  It is also true, however, that Franco's injury was proximately caused by CIGNA's allegedly improper use of UCR data to make a "low-ball" offer to Dr. Rose.  CIGNA made its "low-ball" offer even after Dr. Rose's March 2003 letter, in which Dr. Rose sought preapproval for the procedures and concluded by stating: "If your established fees differ from the above CPRs, please notify the patient and my officer administrator. . . ." Lefkowitz Cert. Ex. 2 at 3.  CIGNA ignored Dr. Rose's request.  CIGNA's use of allegedly improper UCR data is a link in the chain of events that caused Franco's injury.

[10] As discussed above, CIGNA paid the balance of Franco's bill in February 2008.  This payment relieved Franco of liability to her surgeons and reimbursed her out-of-pocket payments.  Because this payment was made after Franco had filed a class action complaint, however, CIGNA has not moved to dismiss on mootness grounds.  See supra at 13-14 (discussing mootness issue).