**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| | : *Document Electronically Filed* |
| DARLERY FRANCO, individually and on | : |
| behalf of all others similarly situated, et al., | : |
| | : **Case No. 07-cv-6039 (SRC) (PS)** |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| CONNECTICUT GENERAL LIFE | : |
| INSURANCE CO., et al., | : |
| | : Motion Date: December 7, 2009 |
| Defendants. | : |
| | : |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT.........................................................................................................6

I.   PLAINTIFFS LACK STANDING TO ASSERT MANY OF THEIR
     CLAIMS. ...................................................................................................6
     A.   Provider Plaintiffs Lack Standing To Assert Any Claims. ...................7
          1.   Provider Plaintiffs do not allege the "full" and "express"
               assignments necessary to give them standing. ...........................8
          2.   Provider Plaintiffs lack standing because their patients lack
               standing. ...................................................................................10
          3.   Provider Plaintiffs cannot bring claims as third-party beneficiaries. ........11
     B.   Association Plaintiffs Lack Standing To Assert Any Claims................12
          1.   Association Plaintiffs cannot bring claims on behalf of their
               members...................................................................................12
          2.   Association Plaintiffs cannot bring claims on their own behalf. ...............13
     C.   Subscriber Plaintiff Franco Lacks Standing To Assert RICO Claims...................14
     D.   All Plaintiffs Lack Standing To Assert Any Claims For Declaratory And
          Injunctive Relief. .............................................................................15

II.  PLAINTIFFS DO NOT ALLEGE FUNDAMENTAL ELEMENTS OF
     THEIR ERISA CLAIMS. .........................................................................16
     A.   CIGNA Is Not A Proper Defendant.....................................................17
     B.   Plaintiffs Do Not Identify The Contract Provisions That CIGNA
          Supposedly Breached. ......................................................................18
     C.   Plaintiffs Cannot Bring Claims For Non-Disclosure Of R&C
          Methodology. ...................................................................................19

III. PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A RICO CLAIM. .................22
     A.   Plaintiffs Do Not Define A Plausible RICO Enterprise. ......................22
          1.   Plaintiffs offer two contradictory definitions. ..........................22
          2.   Plaintiffs do not allege relationships among the purported
               enterprise's members. ..............................................................23
     B.   Plaintiffs Allege Facts Showing That CIGNA Did Not Direct The
          Supposed Enterprise's Affairs. ..........................................................25
     C.   Plaintiffs Have Not Adequately Pled The Predicate Acts. ...................27

IV.  PLAINTIFFS DO NOT ALLEGE PLAUSIBLE ANTITRUST CLAIMS. ................29
     A.   Plaintiffs Do Not Allege An Antitrust Injury. .....................................29
          1.   Plaintiffs assert contract injuries, not antitrust injuries. ...........29
          2.   Plaintiffs' own allegations show there was no antitrust injury
               caused by CIGNA. ....................................................................31
     B.   Plaintiffs Do Not Adequately Allege An Agreement To Restrain Trade. .............32

1.       Plaintiffs cannot rely on allegations of parallel conduct, because they allege that CIGNA did *not* always act in parallel. ............................33

2.       Plaintiffs cannot rely on allegations about market conditions, because none of those conditions suggest a conspiracy. ..........................34

3.       Plaintiffs acknowledge that CIGNA had independent business reasons to act as it did. ...............................................................35

C.       Plaintiffs Do Not Plead A Valid Relevant Market. ...............................................36

**V.       PLAINTIFF CHAZEN DOES NOT STATE A VIABLE CLAIM UNDER THE NEW JERSEY REGULATION...........................................................................37**

A.       ERISA Preempts Plaintiffs' New Jersey Regulation Claim. .................................37

B.       The New Jersey Regulation Does Not Allow a Private Right of Action. ..............38

C.       Plaintiff Does Not Allege a Violation of the New Jersey Regulation. .................39

**CONCLUSION ...........................................................................................................................40**

# TABLE OF AUTHORITIES

**Cases**

*A.D.M. Club Mgmt. Sys., Inc. v. Gary Jonas Computing, Ltd.*,
No. 05-3943, 2006 WL 2689400 (D.N.J. Sept. 19, 2006)................................................31

*Agency Holding Corp. v. Malley Duff Assocs., Inc.*,
483 U.S. 143 (1987).......................................................................................................15

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
37 F.3d 996 (3d. Cir. 1994) ..........................................................................................34

*AMA v. United Healthcare Corp.*,
Nos. 00-2800 and 00-7246, 2001 WL 863561 (S.D.N.Y. July 31, 2001)........................20

*AMA v. United Healthcare Corp.*,
No. 00-2800, 2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002)...........................................14

*AMA v. United Healthcare Corp.*,
No. 00-2800, 2007 WL 1771498 (S.D.N.Y. June 18, 2007) ......................................13, 17

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (U.S. 2009).............................................................................................19

*Barden v. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund*,
12 F. App'x 412 (7th Cir. 2001) ................................................................................20, 21

*Bartlett v. Penn. Blue Shield*,
No 02-4591, 2003 WL 21250587 (E.D. Pa. Mar. 31, 2003)...........................................14

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*,
942 F. Supp. 235 (E.D. Pa. 1996) ...................................................................................30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................32, 34, 35, 36

*Bernstein v. Misk*,
948 F. Supp. 228 (E.D.N.Y. 1997) ..................................................................................27

*Bogosian v. Gulf Oil Corp.*,
561 F.2d 434 (3d. Cir. 1977) .........................................................................................35

*Bridge v. Phoenix Bond & Indem. Co.*,
128 S.Ct. 2131 (2008)....................................................................................................24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)........................................................................................................29

*Byrd v. Reliance Standard Life Ins. Co.*,
    160 F. App'x 209 (3d Cir. 2005) ..................................................................21

*Campo v. Oxford Health Plans, Inc.*,
    No. 06-4332, 2007 WL 1827220 (D.N.J. June 26, 2007)..................................18

*Chambless v. Masters, Mates & Pilots Pension Plan*,
    772 F.2d 1032 (2d Cir. 1985) ........................................................................30

*Chrysler Corp. v. Fedders Corp.*,
    643 F.2d 1229 (6th Cir. 1981) ......................................................................30

*City of Pittsburgh v. W. Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998) ...........................................................7, 13, 29, 32

*Clark v. Burger King Corp.*,
    255 F. Supp. 2d 334 (D.N.J. 2003) ...............................................................12

*Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*,
    143 F. App'x 433 (3d Cir. 2005) ...................................................................9

*Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan*,
    No. 05 5941, 2007 WL 2793372 (D.N.J. Sept. 25, 2007) .......................8, 9, 10

*Cosmetic Gallery, Inc. v. Schoeneman Corp.*,
    495 F.3d 46 (3d. Cir. 2007) ....................................................................33, 34

*Curley v. Cumberland Farms Dairy, Inc.*,
    728 F. Supp. 1123 (D.N.J. 1989) ..................................................................29

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    Nos. 06-3044, 07-2224, 07-2608, 2008 WL 5413105 (D.N.J. Dec. 23, 2008) ................28

*Dist. 29, United Mine Workers of Am. v. New River Co.*,
    842 F.2d 734 (4th Cir. 1988) ........................................................................20

*Doe v. Nat'l Bd. of Med. Exam'rs*,
    210 F. App'x 157 (3d Cir. 2006) ..................................................................16

*Ehlmann v. Kaiser Found. Health Plan of Texas*,
    198 F.3d 552 (5th Cir. 2000) ........................................................................20

*Eichorn v. AT&T Corp.*,
    248 F.3d 131 (3d Cir. 2001) .........................................................................30

*Figueroa Ruiz v. Alegria*,
    896 F.2d 645 (1st Cir. 1990)..........................................................................22

*FMC Corp. v. Guthery*,
    No. 07-5409, 2009 WL 1033663 (D.N.J. Apr. 17, 2009)................................15

*Franco v. Conn. Gen. Life Ins. Co.*,
    No. 07-6039, 2008 WL 3399644 (D.N.J. Aug. 6, 2008) ....................................6

*Gilmore v. Berg*,
    820 F. Supp. 179 (D.N.J. 1993) ...................................................................26

*Goode v. City of Philadelphia*,
    539 F.3d 311 (3d Cir. 2008) .........................................................................12

*Graden v. Conexant Sys. Inc.*,
    496 F.3d 291 (3d Cir. 2007) .........................................................................17

*Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
    No. 06-462, 2006 WL 1541021 (D.N.J. June 1, 2006)................................12, 38

*Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*,
    803 F.2d 109 (3d Cir. 1986) .....................................................................17, 18

*Harrow v. Prudential Ins. Co. of Am.*,
    279 F.3d 244 (3d Cir. 2002) .........................................................................16

*Hill v. Park*,
    No. 03-4677, 2004 WL 180044 (E.D. Pa. Jan. 27, 2004)................................12

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
    623 F. Supp. 2d 568 (D.N.J. 2009) ...............................................................10

*Horvath v. Keystone Health Plan E., Inc.*,
    333 F.3d 450 (3d Cir. 2003) ...........................................................................7

*Horvath v. Keystone Health Plan E., Inc.*,
    No. 00-0416, 2002 WL 265023 (E.D. Pa. Feb. 22, 2002)................................20

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)......................................................................................12

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) .....................................................................33, 34

*In re Ins. Brokerage Antitrust Litig.*,
    Nos. 04-5184, 05-1079, 2007 WL 2533989 (D.N.J. Aug. 31, 2007) ..............32

*In re Ins. Brokerage Antitrust Litig.*,
    No. 04-5184, 2007 WL 2892700 (D.N.J. Sept. 28, 2007)..........................passim

*In re Jamuna Real Estate, LLC*,
    382 B.R. 263 (Bankr. E.D. Pa. 2008) ..............................................................10

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ..............................................................36

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    263 F. Supp. 2d 172 (D. Mass. May 13, 2003)..................................................24

*In re Resolution of the State Comm'n of Investigation*,
    527 A.2d 851 (N.J. 1987) ..................................................................................38

*Krauss v. Oxford Health Plans, Inc.*,
    418 F. Supp. 2d 416 (S.D.N.Y. 2005) ..............................................................20

*Lattaker v. Rendell*,
    269 F. App'x 230 (3d Cir. 2008) .......................................................................16

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*,
    696 A.2d 546 (N.J. 1997) ..................................................................................39

*Lerman v. Joyce Int'l, Inc.*,
    10 F.3d 106 (3d Cir. 1993) ...........................................................................8, 10

*Levesque v. Kemper Nat'l Servs., Inc.*,
    No. 04-4143, 2006 WL 1686624 (E.D. Pa. June 14, 2002)...............................18

*Livingston v. Shore Slurry Seal, Inc.*,
    98 F. Supp. 2d 594 (D.N.J. 2000) .....................................................................27

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) .........................................................................27, 28

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) ...........................................................................7, 13

*Mathews v. Kidder, Peabody & Co.*,
    260 F.3d 239 (3d Cir. 2001) ..............................................................................15

*Mehling v. N.Y. Life Ins. Co.*,
    163 F. Supp. 2d 502, 508 (E.D. Pa. 2001) .......................................................28

*Mondry v. Am. Family Mut. Ins. Co.*,
    557 F.3d 781 (7th Cir. 2009) .............................................................................20

*N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
    No. 07-4812, 2008 WL 4371754, (D.N.J. Sept. 18, 2008) ..............................8, 9

*N. Jersey Secretarial Sch. v. McKiernan*,
    713 F. Supp. 577 (S.D.N.Y. 1989) ................................................37

*N.J. Auto. Ins. Plan v. Sciarra*,
    103 F. Supp. 2d 388 (D.N.J. 1998) ...............................................26

*Nicholas v. Saul Stone & Co., LLC*,
    No. 97-860, 1998 WL 34111036 (D.N.J. June 30, 1998).................26

*Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*,
    913 F. Supp. 1088 (N.D. Ill. 1995) ...............................................33

*Owen v. Regence Bluecross Blueshield of Utah*,
    388 F. Supp. 2d 1318 (D. Utah 2005)...........................................11

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002) .........................................................13

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*,
    388 F.3d 393 (3d Cir. 2004) ...........................................................8

*Passini v. Falke-Gruppe*,
    745 F. Supp. 991 (S.D.N.Y. 1990) ...............................................27

*Pine Belt Enters., Inc. v. SC & E Admin. Servs., Inc.*,
    No. 04-105, 2005 WL 2469672 (D.N.J. Oct. 6, 2005) ...................11

*Pryzbowski v. U.S. Healthcare, Inc.*,
    245 F.3d 266 (3d Cir. 2001) .........................................................38

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ....................................................36, 37

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    773 A.2d 1132 (N.J. 2001) ......................................................38, 39

*Reinert v. Giorgio Foods, Inc.*,
    No. 97-2379, 1997 WL 364499 (E.D. Pa. 1997) ...........................17

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)...............................................................25, 26

*Ris v. Bedell*,
    699 F. Supp. 429 (S.D.N.Y. 1988) ...............................................28

*Sellers v. General Motors Corp.*,
    590 F. Supp. 502 (E.D. Pa. 1984) ................................................27

*Snyco, Inc. v. Penn Cent. Corp.*,
    551 F. Supp. 949 (E.D. Pa. 1982) ..................................................................30

*Sponaugle v. First Union Mortg. Corp.*,
    40 F. App'x 715 (3d Cir. 2002) ...................................................................11

*St. Clair v. Citizens Fin. Group*,
    No. 08-4870, 2009 WL 2186515 (3d Cir. July 23, 2009) ................................34

*Stahl v. Tony's Bldg. Materials, Inc.*,
    875 F.2d 1404 (9th Cir. 1989) .....................................................................20

*Thorpe v. Ret. Plan of Pillsbury Co.*,
    80 F.3d 439 (10th Cir. 1996) .......................................................................18

*Touro Infirmary v. Am. Maritime Officer*,
    No. 07-1441, 2007 WL 4181506 (E.D. La. Nov. 21, 2007) ..............................9

*United States v. Boyle*,
    129 S. Ct. 2237 (U.S. 2009) ........................................................................24

*United States v. Chandler*,
    388 F.3d 796 (11th Cir. 2004) .....................................................................23

*United States v. Turkette*,
    452 U.S. 576 (1981) ....................................................................................24

*Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993) .................................................................25, 26

*VanDenBroeck v. CommonPoint Mortg. Co.*,
    210 F.3d 696 (6th Cir. 2000) .......................................................................24

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ....................................................................................10

*Weiss v. First Unum Life Ins. Co.*,
    482 F.3d 254 (3d Cir. 2007) ........................................................................14

*Weiss v. First Unum Life Ins.*,
    No. 02-4249, 2003 WL 25713970 (D.N.J. Aug. 27, 2003) ..............................14

*Young v. W. Coast Indus. Relations Ass'n, Inc.*,
    763 F. Supp. 64 (D. Del. 1991) ....................................................................28

**Statutes**

18 U.S.C. § 1962(c) ................................................................................................22, 23

18 U.S.C. § 1962(d) ......................................................................................................28

29 U.S.C. § 1002(16)(A) (ERISA § 3(16)(A)) ..............................................................17

29 U.S.C. § 1022(a) (ERISA § 102(a)) ..........................................................................19

29 U.S.C. § 1022(b) (ERISA § 102(b)) ..........................................................................20

29 U.S.C. § 1109(a) (ERISA § 409(a)) ..........................................................................21

29 U.S.C. § 1111 (ERISA § 411) ....................................................................................21

29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(l)(B)) .........................................................7

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ...................................................................7

29 U.S.C. § 1133 (ERISA § 503) ....................................................................................20

29 U.S.C. § 1144(a) (ERISA § 514(a)) ..........................................................................37

29 U.S.C. § 1144(c)(1) (ERISA § 514(c)(1)) ..................................................................37

N.J.A.C. § 11:21-1.4 ......................................................................................................39

N.J.A.C. § 11:21-2.13 ....................................................................................................39

N.J.A.C. § 11:21-7.13 ...............................................................................................19, 39

## INTRODUCTION

This litigation has been pending in this Courthouse for more than five years. During that time, Plaintiffs have filed at least half a dozen complaints, the parties have generated hundreds of docket entries, and CIGNA has spent more than $35 million defending itself. Despite this long and tortured history, no Judge in this District has yet had the opportunity to conduct a thorough claim-by-claim examination of Plaintiffs' case to determine whether they have stated any plausible claims upon which relief can be granted. Now that this Court has that opportunity, it should dismiss Plaintiffs' Consolidated Amended Complaint in its entirety.

Fundamentally, this is an ERISA breach-of-contract case. The central issue is whether CIGNA breached its members' ERISA-governed benefit plans when it used Ingenix data to determine the reasonable and customary ("R&C" or "UCR") amounts defined by those plans.[1] But in their 150-page Consolidated Complaint, Plaintiffs do not even identify the specific plan provisions that CIGNA supposedly breached. This is not surprising, given that many of the plans at issue specifically *required* CIGNA to use Ingenix data to determine R&C amounts. Even if Plaintiffs had successfully pled an ERISA breach of contract, they are suing the wrong party -- ERISA allows benefits claims only against a plan or a plan administrator, and CIGNA is neither. Plaintiffs' ERISA claims also suffer from other defects and should be dismissed.

Despite the Court's expressed skepticism at the July 6, 2009 status conference, Plaintiffs decided to retain RICO and Sherman Act claims in their Consolidated Complaint. These claims are nothing more than add-ons, solely designed to allow Plaintiffs to seek a windfall through trebled damages and thereby increase their settlement leverage. But Plaintiffs' strained attempt to transform this ERISA contract matter into a RICO or Sherman Act case fails for a host of

---

[1] CIGNA does not believe or concede either that the Ingenix database was fundamentally flawed or that its use of that database was in any way improper.

reasons. Putting aside their lack of standing to bring these claims, Plaintiffs' RICO claims fail because they do not properly allege the existence a RICO enterprise that CIGNA played a role in controlling, or that CIGNA committed the requisite predicate acts of fraud or embezzlement. Plaintiffs' Sherman Act claims fail because they do not allege properly an antitrust injury, fail to allege an agreement to restrain trade, and fail to define a valid relevant market. Accordingly, Plaintiffs' add-on claims should also be dismissed.

Plaintiff Chazen also asserts an add-on claim -- previously dismissed with prejudice by Plaintiff Franco -- for violation of a New Jersey insurance regulation that **requires** the use of Ingenix data to determine R&C amounts. This claim is absurd given that the gravamen of Plaintiffs' Consolidated Complaint is that CIGNA somehow did something wrong by using Ingenix data. The claim is further fundamentally flawed, in that the regulation at issue is preempted by ERISA and does not allow a private right of action.

In short, despite more than five years of litigation, tens of millions of pages in document production, and more than two dozen depositions, Plaintiffs have not pled a single plausible claim for relief. Because any further opportunities to replead would be futile, and would simply serve to waste more of the Court's and the parties' time and resources, Plaintiffs' Consolidated Complaint should be dismissed with prejudice.

## BACKGROUND

The first R&C case brought against CIGNA in this Court was filed on March 19, 2004. The complaint in *Franco v. Connecticut General Life Insurance Co., et al.* (Civ. No. 04-1318, *renumbered* Civ. No. 07-6039) asserted nine claims on behalf of Darlery Franco, and Philippe and Pamela Millen, against CIGNA and Northwest Airlines. In December 2004, the Judicial Panel on Multidistrict Litigation transferred *Franco* to the Southern District of Florida, finding it

related to *In re Managed Care Litigation* (MDL No. 1334). On February 13, 2006, the Panel remanded *Franco* to this Court.

Two weeks after CIGNA moved to dismiss the *Franco* complaint, arguing (in part) that the Millens were not proper plaintiffs and that Northwest Airlines was not a proper defendant, the Millens withdrew as plaintiffs and Ms. Franco dismissed all counts against Northwest. Ms. Franco also asked for, and received, an extension to file an amended complaint.

After nearly a year, the Court ordered Ms. Franco actually to file a new complaint, which she did on June 15, 2007. The amended *Franco* complaint added Dr. William Ericson as a plaintiff, and added several new counts, including one for an alleged violation of New Jersey's Small Employer Health Plan Regulation (the "New Jersey Regulation"). On July 16, 2007, CIGNA moved to dismiss this amended complaint, arguing that (1) Ms. Franco lacked standing to pursue her ERISA claims as she was no longer a CIGNA plan member; (2) Ms. Franco's ERISA claims failed as a matter of law; (3) Ms. Franco lacked standing to assert the New Jersey Regulation claim; and (4) Dr. Ericson was not a proper plaintiff. Recognizing the deficiencies of their claims, Dr. Ericson withdrew as a plaintiff and Ms. Franco dismissed her New Jersey Regulation claim -- with prejudice.

In December 2007, the Court heard oral argument on Ms. Franco's surviving ERISA claims for unpaid benefits and equitable relief. During oral argument, Ms. Franco's counsel expressly represented that her only equitable claims were for injunctive relief. (Cert. of E. Evans Wohlforth, Jr. ("Cert.") Ex. 1 at 19:18-25.) A week later, Ms. Franco told the Court that she would not "pursue her claims for injunctive relief inasmuch as she is not a current member of a CIGNA health insurance plan." (Cert. Ex. 2.)

With only benefits claims under ERISA § 502(a)(1)(B) remaining, the Court ordered the parties to conduct discovery on whether Ms. Franco had standing to bring those claims, and directed CIGNA to file a new motion to dismiss based on that discovery. As directed, in February 2008, CIGNA moved to dismiss Ms. Franco's benefit claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Court denied that motion on August 6, 2008. Significantly, the Court did not address the other substantive arguments made by CIGNA in its earlier motions to dismiss.

Nine days later, David Chazen filed a new action against CIGNA in this Court. The complaint in *Chazen v. Connecticut General Life Insurance Co., et al.* (Civ. No. 08-4106), asserted claims identical to those first asserted in the amended *Franco* complaint -- including a claim for violation of the New Jersey Regulation that Ms. Franco had withdrawn with prejudice.

Soon thereafter, Ms. Franco asked for leave to file a Second Amended Complaint in the *Franco* case, seeking to revive the claims for declaratory relief that she had withdrawn almost a year earlier and to add new RICO claims. Leave was granted, and Ms. Franco filed her new complaint on December 4, 2008.

CIGNA moved to dismiss the *Franco* Second Amended Complaint on January 15, 2009. CIGNA argued that Ms. Franco's RICO claims failed because (1) she lacked standing to assert such claims; (2) such claims were partially time-barred; and (3) such claims failed as a matter of law. In addition, CIGNA argued that Ms. Franco's ERISA claims failed because (1) she lacked standing to assert claims for declaratory relief because she had already withdrawn them and was not a CIGNA plan member; and (2) her ERISA claims were fatally flawed.

On February 9, 2009, a new R&C case was filed against CIGNA in this Court -- *AMA, et al. v. Connecticut General Life Insurance Co., et al.* (Civ. No. 09-578) -- on behalf of various

medical associations and MD providers. The AMA filed an amended complaint on February 11, 2009. Just over two months later, on April 17, 2009, a case was filed on behalf of non-MD providers -- *Shiring v. Connecticut General Life Insurance Co., et al.* (Civ. No. 09-1971) -- which named the existing CIGNA defendants as well as Connecticut General Corporation, CIGNA Behavioral Health, Inc., and CIGNA Dental Health, Inc.

On May 20, 2009, all the R&C cases against CIGNA pending in this District -- *Franco*, *Chazen*, *AMA*, and *Shiring* -- were transferred to the Honorable Stanley Chesler. On June 10, 2009, CIGNA filed a motion before the Honorable Frederico A. Moreno in the Southern District of Florida to enforce an injunction against the named parties in the initial AMA action -- including Provider Plaintiffs Antell and Gardner, and Association Plaintiffs AMA, NJMS, CSMS, TMA, and NCMS -- and separately against former non-physician plaintiff Shiring. *In re Managed Care Litig.*, No. 00-MDL-1334 (S.D. Fla., June 10, 2009) (Docket Entries 5974 and 5972). In its motion, CIGNA asked the Court to (1) enforce a settlement agreement between CIGNA and a class of healthcare providers that was approved on February 2, 2004; and (2) enjoin the AMA, *et al.*, from pursuing certain claims against CIGNA. CIGNA has not sought and will not seek a stay in the *Franco* action pending the resolution of these motions.

On June 16, 2009, this Court issued a Case Management Order that consolidated these R&C cases for all purposes. The next day, Stephanie Higashi filed a new class action complaint in the Central District of California -- *Higashi v. Connecticut General Life Insurance Co., et al.* (Civ. No. 09-4348) -- alleging similar claims on behalf of non-MD providers. As with other such plaintiffs, CIGNA filed a motion to enforce the *In re Managed Care* settlement agreement against Ms. Higashi. *In re Managed Care Litig.*, No. 00-MDL-1334 (S.D. Fla., July 28, 2009) (Docket Entry 6000). In addition, the parties filed an unopposed motion to transfer that action to

this Court, which the Central District granted, ordering CIGNA to file its response to the complaint within 30 days of transfer. Because the *Higashi* Complaint raises claims similar to those in the Consolidated Complaint, it suffers from similar defects. As necessary, CIGNA will address any issue specific to *Higashi* in a motion to dismiss that Complaint.

On July 14, 2009, the Court deemed as moot CIGNA's pending motion to dismiss and ordered the various plaintiffs in these cases to file a Consolidated Complaint, which they did on August 7, 2009. In the Consolidated Complaint, Plaintiffs drop Ms. Shiring and add three new providers as named Plaintiffs. Plaintiffs also add eight additional medical societies and associations, while dropping defendants Connecticut General Corporation, CIGNA Behavioral Health, Inc., and CIGNA Dental Health, Inc.[2] As for Plaintiffs' causes of action, Plaintiffs assert claims against CIGNA based on alleged violations of ERISA, RICO, the Sherman Act, and the New Jersey Regulation.

CIGNA now moves to all of these claims for failure to state a claim under Rule 12(b)(6) and many of them for lack of subject matter jurisdiction under Rule 12(b)(1).[3]

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO ASSERT MANY OF THEIR CLAIMS.

Even after five years of litigation, Plaintiffs' counsel are still asserting claims on behalf of Plaintiffs who have no standing because they suffered no injuries. Specifically: (1) the

---

[2]   On August 20, 2009, after Plaintiffs filed the Consolidated Complaint in *Franco*, CIGNA filed a supplemental motion to enforce the settlement agreements against all of the currently named plaintiffs. *In re Managed Care Litig.*, No. 00-MDL-1334 (Docket Entry 6006).

[3]   Per the Court's July 14 Order, CIGNA does not seek dismissal for any issue decided by Judge Hochberg in August 2008. Plaintiffs argue in footnotes 1-3 of their Consolidated Complaint (*see* Compl. at pp. 95, 102, 106) that Counts I(A), III(A) and IV are substantively the same as counts raised in Plaintiff Franco's First Amended Complaint and "upheld" by Judge Hochberg in her Opinion and Order denying CIGNA's motion to dismiss, entered on August 6, 2008. But Plaintiffs' footnotes are misleading -- the only issue actually decided by Judge Hochberg was that Plaintiff Franco "has Article III standing to pursue her claim" for ERISA benefits under Rule 12(b)(1). *See Franco v. Conn. Gen. Life Ins. Co.*, No. 07-6039, 2007 WL 3399644, at *1, 15 (D.N.J. Aug. 6, 2008).

Provider Plaintiffs lack standing to bring any claims; (2) the Association Plaintiffs lack standing to bring any claims; (3) Ms. Franco lacks standing to bring her RICO claims; and (4) all Plaintiffs lack standing to bring any claims for declaratory and injunctive relief.

## A. Provider Plaintiffs Lack Standing To Assert Any Claims.

Provider Plaintiffs do not allege that they, themselves, suffered the "injury in fact" required by Article III or that they meet the standing requirements of the ERISA, RICO, and Sherman Act statutes.[4]  Instead, they assert standing as the purported assignees of their patients and as the "third-party beneficiaries" of their patients' benefit plans.  (*E.g.*, Compl. ¶¶ 383, 402, 422, 435, 441, 479, 532, 550, 560.)  But Provider Plaintiffs' standing arguments fail for at least three reasons: (1) Provider Plaintiffs do not allege receipt of executed assignments that are "full" (for ERISA claims) and "express" (for RICO and antitrust claims); (2) even if they alleged such assignments, Provider Plaintiffs do not allege that their patients had claims to assign, as they do not allege the patients were ever harmed; and (3) while Provider Plaintiffs try to bring RICO and antitrust claims as "third-party beneficiaries" of their patients' benefit plans, they cannot base standing for non-contract claims on a contract theory and they do not even allege the essential element of that theory -- that CIGNA created its plans for the providers' benefit.

### 1. Provider Plaintiffs do not allege the "full" and "express" assignments necessary to give them standing.

Provider Plaintiffs lack standing to bring any claims -- ERISA, RICO, or antitrust -- as they do not allege that they obtained legally valid assignments.  For ERISA claims, they must

---

[4]    *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (under Article III, a plaintiff must allege an "injury in fact" that is "concrete and particularized" and is not "conjectural or hypothetical"); *see also* 29 U.S.C. § 1132 (§ 502(a)(l)(B) claims can be brought only by "a participant or beneficiary," 29 U.S.C. § 1132(a)(l); § 502(a)(3) claims only by a "participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(a)(3); and § 502(c) claims only by a "beneficiary" or a "participant," 29 U.S.C. § 1132(c)); *Maio v. Aetna, Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000) (a RICO plaintiff must allege "an injury to business or property;" a "concrete financial loss and not mere injury to a valuable intangible property interest"); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998) (an antitrust plaintiff "must establish that he actually sustained injury-in-fact to business or property") (internal quotations omitted).

show "a valid executed assignment by a plan participant" -- and only a "complete" and "unequivocal" assignment of rights will do. *N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 07-4812, 2008 WL 4371754, at *4, *8 (D.N.J. Sept. 18, 2008) (Ackerman, J.); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan*, No. 05 5941, 2007 WL 2793372, at *3 (D.N.J. Sept. 25, 2007) (Irenas, J.).[5] Along the same lines, to assert a derivative RICO or antitrust claim, Provider Plaintiffs must show an assignment that is "express." *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993) (Alito, J.).

Provider Plaintiffs do not meet these legal requirements, as they do not allege that any provider received a full and express assignment from any CIGNA plan member. They instead make general assertions that providers "*may* also agree to accept an assignment of benefits," (Compl. ¶5 (emphasis added)), that one provider "receives assignments from *some* CIGNA beneficiaries," (*id.* ¶ 137 (emphasis added)), and that another "*typically* obtains a claim assignment from his patients," (*id.* ¶ 174 (emphasis added)). But such "vague references to a common practice of non-network providers" are not enough to establish an actual assignment. *N. Jersey Ctr.*, 2008 WL 4371754, at *4 (an assertion that "patients assign their rights under their contracts of health insurance" did not show a valid assignment) (internal quotations omitted).

Similarly, while one named Provider Plaintiff, Dr. Kavali, asserts that she "obtained an Assignment of Benefits" from two specific patients, she does not describe the scope of those assignments. (Compl. ¶¶ 165, 167.) Thus, she has not pled the full assignment necessary for derivative standing. *See, e.g., N. Jersey Ctr.*, 2008 WL 4371754, at *8 (party could not show standing where it "has not provided any documentation that establishes what type of assignment

---

[5] It is an open question in the Third Circuit whether ERISA permits a subscriber to assign to a provider a claim for benefits under § 502(a)(1)(B). *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-01 & n.7 (3d Cir. 2004) (describing but not resolving a disagreement among district courts on this issue).

was made"); *see also Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan,* 143 F. App'x 433, 436 (3d Cir. 2005) (party's failure to present evidence of appropriate assignments executed by plan participants was "fatal" to standing).

And while the remaining Provider Plaintiffs describe their assignment forms (but not any actual assignments), those descriptions are not of full and express assignments. The providers simply allege that their forms authorize them to receive payment directly from CIGNA and (in some instances) to appeal CIGNA's benefit determinations.[6] But this is just an assignment of the right to reimbursement -- not a ***full*** assignment that also includes the right to pursue ERISA claims in federal court -- and does not give the Provider Plaintiffs standing here. *See, e.g., Cooper*, 2007 WL 2793372, at *3 (provider did not have ERISA standing based on an assignment that "allows the [provider] to receive payments directly from [the insurer], and in a situation such as this, to pursue available appeal processes," but "does not give [the provider] the right to pursue litigation based upon [the insurer's] refusal to pay charges"); *Touro Infirmary v. Am. Maritime Officer*, No. 07-1441, 2007 WL 4181506, at *5-6 (E.D. La. Nov. 21, 2007) (provider did not have ERISA standing based on an assignment that directed payment to the provider, but left the patient responsible for any unpaid charges) (citing *Cooper*).

Simply put, because none of the Provider Plaintiffs allege they actually received a ***full*** assignment of benefits from any of their patients, they lack standing to bring those patients' ERISA claims. Similarly, because they do not allege that any of their patients made an ***express*** assignment of RICO or antitrust claims, Provider Plaintiffs also lack standing to bring those

---

6   (*See* Compl. ¶ 119 (Dr. Gardner's form "includes an express authorization by the patient for CIGNA to remit payment directly to Dr. Gardner"); ¶ 137 (Dr. Antell's forms "indicate that CIGNA should pay Dr. Antell directly, and "enable" him to "demand reimbursement"); ¶ 175 (Mr. Mullins' forms "direct CIGNA, as the patient's insurer, to pay the benefit claim direct [sic] to the Nonpar"); ¶ 187 (Maldonado's form "allows Maldonado to bill CIGNA directly and receive payment for physician prescribed DME and related services" and to "facilitate the submittal of appeals").

claims. *See, e.g., In re Jamuna Real Estate, LLC*, 382 B.R. 263, 276-77 (Bankr. E.D. Pa. 2008) (secured lender lacked standing to bring RICO claims on behalf of debtor where "there is nothing in [the assignment documents] which rises to the level of an express assignment of RICO claims") (citing *Lerman*). Thus, all of Provider Plaintiffs' claims should be dismissed.

> ## 2. Provider Plaintiffs lack standing because their patients lack standing.

Provider Plaintiffs also lack derivative standing to bring claims assigned by their patients, because they do not allege that those patients had valid claims in the first place. As assignees, Provider Plaintiffs "stand in the shoes" of their patients. *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 575 (D.N.J. 2009) (Wolfson, J.). Thus, Provider Plaintiffs have standing only to the extent that their patients do -- that is, to the extent that their patients suffered an injury in fact under Article III and met the standing requirements of the relevant statutes. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

Provider Plaintiffs do not allege that their patients suffered any injuries, and specifically do not allege that those patients suffered any financial harm. To the contrary, Provider Plaintiffs allege that providers choose to take assignments from patients "*rather than* require the Members to pay out-of-pocket," even though a provider "is entitled to bill the Member for the amount of the charge that exceeds the amount that the Member's health plan covers." (Compl. ¶ 5 (emphasis added).) Because they do not allege their patients were ever financially harmed, Provider Plaintiffs cannot show that those patients ever had standing to bring the assigned claims, and such claims asserted on their patients' behalf must be dismissed. *See, e.g., Sponaugle v. First Union Mortgage Corp.*, 40 F. App'x 715, 716 (3d Cir. 2002) (appellants lacked Article III standing to bring claim under Fair Debt Collection Practices Act where they had never paid a fee and the bank's debt-collection efforts had ceased); *Owen v. Regence*

*Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1326 (D. Utah 2005) (benefit plan subscriber's estate lacked Article III standing to bring ERISA benefits claim against insurer because there was "no evidence that [the subscriber's out-of-network provider] has ever, in fact, attempted to collect on the [bill not covered by the insurer]").

### 3. Provider Plaintiffs cannot bring claims as third-party beneficiaries.

Provider Plaintiffs cannot gin up standing by bringing their RICO and antitrust claims as "third party beneficiaries of their patients' out-of-network benefits." (Compl. ¶¶ 479, 532, 550, 560.) "Under New Jersey law, a third-party beneficiary may sue upon a contract made for their benefit without privity of contract." *Pine Belt Enters., Inc. v. SC & E Admin. Servs., Inc.*, No. 04-105, 2005 WL 2469672, at *4 (D.N.J. Oct. 6, 2005) (Chesler, J.). But CIGNA found no cases granting the third-party beneficiary to a contract the standing to bring non-contract claims, such as under RICO or the Sherman Act. Further, "[t]o qualify as a third-party beneficiary a claimant must demonstrate that the contract was made for its benefit within the intent and contemplation of the contracting parties." *Pine Belt Enters.*, 2005 WL 2469672, at *4 (quotations and citations omitted). Because they do not -- and cannot -- allege that CIGNA intended its benefit plans to benefit providers, Provider Plaintiffs have not plausibly pled that they are, in fact, third-party beneficiaries of those plans. *See id.; see also Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-462, 2006 WL 1541021, at *3 (D.N.J. June 1, 2006) (Greenaway, J.). Thus, all of Provider Plaintiffs' RICO and antitrust claims based on a third-party beneficiary theory must be dismissed.

### B. Association Plaintiffs Lack Standing To Assert Any Claims.

Association Plaintiffs, who claim as members a large number of providers, lack standing to bring any claims. First, these associations cannot bring claims on their members' behalf, as they do not allege those member providers suffered any actual injuries, and because those

individual member providers would have to participate in the lawsuit, which is fatal to an assertion of "associational standing." Second, Association Plaintiffs cannot bring claims on their own behalf, as they do not describe any injuries to the associations themselves.

       **1.**     **Association Plaintiffs cannot bring claims on behalf of their members.**

Association Plaintiffs do not meet the legal requirements for bringing claims on behalf of their members (who are medical providers). To do so, they must allege that "[their] members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Goode v. City of Philadelphia*, 539 F.3d 311, 324 (3d Cir. 2008). But, as discussed, none of the named Provider Plaintiffs have standing to sue CIGNA, and Association Plaintiffs do not identify any providers among their members who may do so. This pleading failure, alone, requires dismissal. *See, e.g., Hill v. Park*, No. 03-4677, 2004 WL 180044, at *6 (E.D. Pa. Jan. 27, 2004) (dismissing claims brought by association on behalf of its members where association did not allege that the named plaintiff was a member); *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 345 (D.N.J. 2003) (Irenas, J.) (dismissing disability group's ADA claims, where group did not identify which of its members were injured).

Association Plaintiffs also have to show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. But resolving the claims at issue here would require each of the providers in the associations' membership to show that they received a valid assignment and that they (or their patients) exhausted the available administrative remedies for each claim -- a highly individualized process that unquestionably would require the providers' participation. Thus, Association Plaintiffs lack standing to assert claims on behalf of these providers. *See AMA v. United Healthcare Corp.*, No. 00-2800, 2007 WL 1771498, at *21 (S.D.N.Y. June 18, 2007) (in R&C litigation against United Healthcare, medical association plaintiffs lacked associational

standing, because determining if the providers in those associations' membership had received valid assignments and had exhausted administrative remedies required "detailed and fact-specific inquir[ies]" with "individualized member participation").

### 2. Association Plaintiffs cannot bring claims on their own behalf.

Association Plaintiffs also lack standing to bring RICO or antitrust claims on their own behalf because they do not allege any concrete financial injury. To have standing to bring claims on its own, an association must have suffered a direct injury. *See Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002). Thus, to have standing to bring RICO and antitrust claims on their own, Association Plaintiffs must allege they suffered "an injury to business or property" that results from the conduct underlying those claims. *Maio*, 221 F.3d at 482-83 (RICO); *W. Penn Power Co.*, 147 F.3d at 268 (antitrust).

But the only "injuries" that Association Plaintiffs describe are spending unspecified "time" and unidentified "resources" in "counseling" and "helping" their members "deal with issues" concerning CIGNA's reimbursements and in "corresponding" and "communicating" with CIGNA. (Compl. ¶¶ 3, 26, 29, 32, 35, 38, 42, 199-200). Because these vague, conclusory assertions are not enough to plead a concrete financial injury, Association Plaintiffs' RICO and antitrust claims should be dismissed. *See, e.g., Maio*, 221 F.3d at 488 (allegations that patients' health insurance was "inferior" did not state a RICO injury); *AMA v. United Healthcare Corp.*, No. 00-2800, 2002 WL 31413668, at *4 (S.D.N.Y. Oct. 23, 2002) (dismissing medical associations' claims, brought on their own behalf, where AMA alleged it had set up a program to assist its members in dealing with United Healthcare's R&C policies, because "[t]his is not a concrete injury. This is volunteering to assist one's own members.").

## C.    Subscriber Plaintiff Franco Lacks Standing To Assert RICO Claims.

While Subscriber Plaintiffs try to guild their core ERISA claim with a damage-trebling RICO claim, their lead plaintiff, Ms. Franco, lacks standing to bring it, because she was fully reimbursed for the procedures at issue almost a full year *before* she first filed a RICO claim based on those procedures.  While Ms. Franco first filed RICO claims in December 2008, she was fully compensated for the procedures underlying those claims in February 2008.[7]  Because she had no injury-in-fact -- let alone a concrete injury to her business or property -- at the time she filed her RICO claims, she lacks standing to bring them, and they must be dismissed.  *See Weiss v. First Unum Life Ins.*, No. 02-4249, 2003 WL 25713970, at *4, *6 (D.N.J. Aug. 27, 2003) (Brown, J.) (dismissing plaintiff's RICO claim where plaintiff filed amended complaint two months after defendant reinstated his disability benefits, retroactive to the date they were terminated), *vacated on other grounds*, 482 F.3d 254, 258 n.2 (3d Cir. 2007); *see also Bartlett v. Penn. Blue Shield*, No 02-4591, 2003 WL 21250587, at *3 (E.D. Pa. Mar. 31, 2003) (member did not have RICO standing for denied claims where insurer paid member's benefits).[8]

---

[7]    Ms. Franco's procedures -- even though performed by out-of-network providers -- were processed in-network by CIGNA.  In such cases, it is CIGNA's policy that the subscriber should not pay anything out of pocket.  (*See* Defs.' Mot. to Dismiss Pl.'s First Am. Compl., at Ex. J, *Franco v. Conn. Gen. Life Ins. Co.*, Civ. No. 07-6039 (Feb. 20, 2008) (Docket Entry 24).)  CIGNA first learned that Ms. Franco actually paid funds to her providers for the procedures at issue on January 10, 2008, when it received her Interrogatory responses.  (*See id.* at Ex. K.)  Upon learning of this, CIGNA acted pursuant to its policy and paid those providers amounts reflecting their full charges for the procedures, plus interest.  CIGNA made these payments in February 2008.  (*See* Cert. Ex. 3.)

[8]    Because Ms. Franco lacks standing to bring her RICO claims, the only named Subscriber Plaintiff with standing to bring such a claim is Mr. Chazen, who first filed that claim as part of the current Consolidated Complaint on August 7, 2009.  Because RICO has a four-year statute of limitations, *Agency Holding Corp. v. Malley Duff Assocs., Inc.*, 483 U.S. 143, 156 (1987), which begins to run once a plaintiff knows or should know of her injuries, *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 245 (3d Cir. 2001), any claims asserted on behalf of Subscriber Plaintiffs arising before August 7, 2005 should be dismissed.

Further, even if Ms. Franco had standing to bring a RICO claim, she could not base it on events occurring before December 4, 2004 -- four years before she first filed that claim in her Second Amended Complaint.  In that instance, her RICO claim should be dismissed to the extent it relies on events occurring before that date.  (*E.g.* Compl. ¶ 468 (basing RICO claims in great part upon events occurring in 2003).)

### D. All Plaintiffs Lack Standing To Assert Any Claims For Declaratory And Injunctive Relief.

After more than five years of litigation, half a dozen complaints, and numerous changes of named plaintiffs, Plaintiffs' counsel *still* has not come up with a single Plaintiff that is currently a member of a CIGNA plan and thus able to seek declaratory and injunctive relief. Instead, they continue to assert these claims through Ms. Franco and Mr. Chazen -- neither of whom is currently a CIGNA plan member and neither of whom was a CIGNA plan member when they first asserted these claims.[9]

Subscribers who are not current CIGNA plan members cannot bring claims for declaratory or injunctive relief, because Article III requires that a plaintiff "allege facts demonstrating a substantial likelihood of *future* injury," *see, e.g., FMC Corp. v. Guthery*, No. 07-5409, 2009 WL 1033663, at *7 (D.N.J. Apr. 17, 2009) (Pisano, J.) (emphasis added), and people not covered by CIGNA plans cannot plausibly allege that CIGNA is likely to harm them in the future. Further, neither Provider Plaintiffs nor Association Plaintiffs identify any future injuries that they are likely to experience.

As a result, all Plaintiffs lack Article III standing to bring claims for declaratory and injunctive relief, and all such claims must be dismissed. *See, e.g.*, *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (affirming dismissal of claim for declaratory relief filed in December 2007 based on child support obligations that terminated in July 2006); *Doe v. Nat'l*

---

[9]   Mr. Chazen admitted that he was not a CIGNA plan member when he filed his original Complaint. (Cert. Ex. 4 at ¶ 1 (upon filing of original complaint, "Chazen is not currently insured by CIGNA").)  Similarly, Ms. Franco admits that she was not a CIGNA plan member when she filed her original complaint in March 2004, her First Amended Complaint in June 2007, or her Second Amended Complaint in December 2008.  (Compl. ¶¶ 80, 95-97 (Ms. Franco was not covered by a CIGNA plan between June 30, 2003 and July 1, 2004 or after June 30, 2006).)  Indeed, Ms. Franco's counsel previously represented to Judge Hochberg that because Ms. Franco was not a current CIGNA plan member, she was withdrawing her claims for injunctive relief  (Cert. Ex. 1 at 20:19-21; 22:10-13); *see also*  (Cert. Ex. 2), and that she had no other equitable claims (Cert. Ex. 1 at 19:18-25; 29:24-30:3).

*Bd. of Med. Exam'rs*, 210 F. App'x 157, 160 (3d Cir. 2006) (affirming dismissal of claim for injunctive relief where plaintiff lacked standing because he "cannot show a likelihood of future injury"); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (dismissing declaratory claim, brought by plaintiff's estate under ERISA, that his health plan entitled him to coverage for an anti-impotence drug, because he "cannot benefit from a declaration of [his health insurer's] obligations" -- as he was dead).

*     *     *

This Court should dismiss with prejudice for lack of standing: (1) all of Provider Plaintiffs' claims; (2) all of Association Plaintiffs' claims; (3) Ms. Franco's RICO claims; and (4) all Plaintiffs' claims for declaratory and injunctive relief.

## II.     PLAINTIFFS DO NOT ALLEGE FUNDAMENTAL ELEMENTS OF THEIR ERISA CLAIMS.

The essential claim in this litigation is and always has been an ERISA claim for benefits. But despite tens of million pages of discovery, and multiple opportunities over many years to cure their pleading defects, Plaintiffs still do not allege the most basic elements of this claim. Plaintiffs' ERISA claims fail because (1) they do not allege that CIGNA is a plan or a plan administrator -- the only proper defendants for their central ERISA claims, including their claim for benefits; (2) Plaintiffs do not allege or even identify the plan provisions that CIGNA supposedly breached; and (3) while Plaintiffs try to dress up their benefits claim with other ERISA claims that CIGNA failed to disclose information about its R&C methodology, they cannot point to any portion of ERISA requiring those disclosures.

### A.     CIGNA Is Not A Proper Defendant.

Plaintiffs bring their ERISA claims against the wrong party.

In a claim for unpaid benefits under ERISA § 502(a)(1)(B), the only proper defendants are "the plan itself (or plan administrators in their official capacities only)." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007). Plaintiffs do not and cannot allege that CIGNA is, itself, a benefits plan. And Plaintiffs cannot allege that CIGNA was the plan administrator of any of the plans at issue. ERISA explicitly defines a plan "administrator" as either (1) the entity designated as such in the plan documents; or (2) in the absence of such a designation, the plan sponsor. 29 U.S.C. § 1002(16)(A); *see generally Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986) (the term "plan administrator" is a "term[ ] of art under ERISA"). Plaintiffs do not, and cannot, allege that CIGNA meets either of these criteria.[10] Accordingly, all of Plaintiffs' claims for benefits under ERISA § 502(a)(1)(B) must be dismissed. *See Reinert v. Giorgio Foods, Inc.*, No. 97-2379, 1997 WL 364499, at *4 (E.D. Pa. 1997) (dismissing § 502(a)(1)(B) claim against insurer that was not the plan or plan administrator); *see also AMA*, 2007 WL 1771498, at *25-26 (granting summary judgment on § 502(a)(1)(B) claims to defendant United Healthcare for plans where United was not the designated plan administrator).

For the same reasons, CIGNA is not the proper defendant for Plaintiffs' claims for declaratory relief under ERISA § 502(c). That provision allows claims against only "plan administrator[s]" for "failure to fulfill obligations imposed on such administrators by [ERISA and its attendant regulations]." *Groves*, 803 F.2d at 112-13 (3d Cir. 1986); *see also Thorpe v. Ret. Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996) ("The language of § 1132(c) and § 1002(16)(A)(i) is unambiguous and admits of no other interpretation."). Because Plaintiffs do not allege that CIGNA is the plan administrator for any of the plans at issue, their claims under

---

[10] CIGNA is not the designated plan administrator for either Ms. Franco's plan or Mr. Chazen's plan. (Cert. Exs. 5, 6.)

ERISA § 502(c) must be dismissed. *See Levesque v. Kemper Nat'l Servs., Inc.*, No. 04-4143, 2006 WL 1686624, at \*1 (E.D. Pa. June 14, 2002) (dismissing § 502(c) claims against insurer because "[a]n insurance company, which is not a plan administrator, cannot be liable for statutory damages for failure to comply with an information request"); *Campo v. Oxford Health Plans, Inc.*, No. 06-4332, 2007 WL 1827220, at \*5 (D.N.J. June 26, 2007) (Simandle, J.) (dismissing § 502(c) claim against heath insurer that was not the designated plan administrator).

### B. Plaintiffs Do Not Identify The Contract Provisions That CIGNA Supposedly Breached.

The gravamen of Plaintiffs' claim for ERISA benefits is that "CIGNA breached its plan provisions . . . by underpaying UCR and other ONET reimbursement amounts covered by ERISA healthcare plans." (Compl. ¶¶ 376, 385.) Specifically, Plaintiffs' claim hinges on the allegation that CIGNA "breache[d]" its plan provisions by using Ingenix data to calculate R&C amounts. (*Id.* ¶¶ 377, 386.)

But, despite five years of litigation, and despite asserting over a dozen times that CIGNA breached its plan provisions, Plaintiffs are unable to identify what those supposedly violated provisions actually are. Indeed, Plaintiffs spend only one Paragraph out of 570 even discussing plan obligations in general terms -- and that discussion conflicts with the Subscriber Plaintiffs' actual plans. For example, while Plaintiffs allege that using Ingenix "fails to comply with the definition of UCR contained in CIGNA's insurance contracts" (Compl. ¶ 6), Mr. Chazen's plan actually *requires* use of Ingenix.[11] Similarly, while Plaintiffs allege that CIGNA always defines

---

[11] This requirement is in three steps: (1) the Plan defines "reasonable and customary" as "an amount that is not more than the lesser of the usual or customary charge for the service or supply as determined by [CIGNA], based on a standard approved by the Board; or the negotiated fee schedule" (Cert Ex. 5 at 21); (2) the "Board" is defined as "the Board of Directors of the New Jersey Small Employer Health Benefits Program" (*id.* at 14); and (3) that Board, by regulation, has defined "reasonable and customary" as: "a standard based on the Prevailing Healthcare Charges System profile for New Jersey or other state when services or supplies are provided in such state, incorporated herein by reference published and ***available from the Ingenix, Inc***" and

R&C "with consideration given to the nature and severity of the Member's condition, as well as any complications or unusual circumstances that would require additional time, skill, or experience on the part of the Nonpar," (*id.* ¶ 6), this language simply does not appear in Mr. Chazen's plan. (Cert. Ex. 5.) These are not excusable or curable defects -- Plaintiffs' counsel have had years to find suitable clients and examine their plans.

Because Plaintiffs try to plead breach of contract without even referring to the relevant contract provisions, they have not alleged facts making their ERISA benefits claim plausible, and that claim should be dismissed with prejudice. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (U.S. 2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," and a claim is "plausible" only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## C. Plaintiffs Cannot Bring Claims For Non-Disclosure Of R&C Methodology.

Although Plaintiffs try to dress up their core benefits claims with other ERISA claims, premised in part on CIGNA's alleged failure to disclose its use of Ingenix and its specific R&C methodology, none of the ERISA provisions that Plaintiffs cite -- ERISA §§ 102, 404, or 503 -- actually require disclosure of that information.

First, ERISA § 102 requires plan administrators to provide Summary Plan Descriptions that include specific, enumerated information. 29 U.S.C. § 1022(a). But R&C methodology is not among this information, *id.* at § 1022(b), and failure to disclose it is not a breach of § 102. *See Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 418, 430 (S.D.N.Y. 2005) (disclosing the existence of "usual, customary and reasonable" limits regarding multiple surgeries satisfied § 102 but that "failure to provide more specific information about what the

---

that the "[t]he maximum allowable charge shall be based on the 80th percentile of the profile." N.J.A.C. § 11:21-7.13(a) (emphasis added).

particular UCR limit was or how it was calculated is not a violation of ERISA"); *see also Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1409 (9th Cir. 1989); *Dist. 29, United Mine Workers of Am. v. New River Co.*, 842 F.2d 734, 737 (4th Cir. 1988).

Second, and similarly, ERISA § 404 requires disclosure of only the information listed in that statute and its attendant regulations. *See Horvath v. Keystone Health Plan E., Inc.*, No. 00-0416, 2002 WL 265023, at *7-8 (E.D. Pa. Feb. 22, 2002) (ERISA does not impose additional disclosure duties beyond those enumerated in the statute) (citing cases). Because ERISA § 404 does not require disclosure of R&C methodology, Plaintiffs do not state a viable claim. *See AMA v. United Healthcare Corp.*, Nos. 00-2800 and 00-7246, 2001 WL 863561, at *9 (S.D.N.Y. July 31, 2001) (dismissing § 404 claim based on non-disclosure of accurate R&C data); *see also Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552, 555-56 (5th Cir. 2000); *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 797 (7th Cir. 2009).

Finally, ERISA § 503 simply requires that, when a plan denies benefits, it "[set] forth the specific reasons for such denial." 29 U.S.C. § 1133. Here, Plaintiffs allege that CIGNA told subscribers and providers that its payments reflected R&C amounts. (*E.g.* Compl. ¶ 89 ("reflects prevailing charge for service in your area"), ¶ 112 ("the 80th percentile of all charges made by providers of such service or supply in the geographic area"), ¶ 123 ("the UCR rate for the geographic area").) This is all that § 503 requires. *See Barden v. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund*, 12 F. App'x 412, 414-15 (7th Cir. 2001). In *Barden*, a union benefit plan delegated responsibility for examining and paying its members' claims to a third-party administrator, which used "data supplied to it by an outside company" to determine the "reasonable and customary" amount payable on each claim. *Id.* at 413 (internal quotations omitted). A union member brought a § 503 claim that the plan had not adequately explained the

reasons why it had partially denied medical benefits for his son. *Id.* The district court granted

summary judgment for the plan and the Seventh Circuit affirmed, holding that § 503 did not

require such specificity:

> [t]he letters clearly explained why the claims had been partially
> denied: based on the definition of "reasonable and customary,"
> [the doctor] had been paid the maximum amount allowed under the
> Plan. They thus supplied [the union member] with a statement of
> reasons that, under the circumstances of the case, permitted a
> sufficiently clear understanding of the administrator's position to
> permit effective review.

*Id.* at 414-15 (quotations and citations omitted). Similarly, because CIGNA explained that its

payments were based on R&C, it complied with § 503. *See id.* [12]

\*     \*     \*

Plaintiffs' ERISA claims must be dismissed with prejudice, as follows: (1) all claims

under § 502(a)(1)(B) and § 502(c) for failure to name a proper defendant; (2) all claims under

§ 502(a)(1)(B) for failure to identify the plan provisions that CIGNA allegedly breached; and

(3) all claims to the extent that they are based on non-disclosure of R&C methodology.

## III.   PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A RICO CLAIM.

Plaintiffs' first attempt to conjure up the specter of treble damages is through RICO.

Even though at the July 6, 2009 status conference the Court suggested that they reconsider

bringing this claim, Plaintiffs choose to ignore that advice. Instead, they present a series of

conclusory and contradictory allegations that just serve to show how flimsy and unsupportable

the claim really is. When confronted with such a transparent grasp at settlement leverage, "[i]n

---

[12]   Plaintiffs also seek CIGNA's removal as a plan fiduciary. (Compl. ¶¶ 420, 428.) But Plaintiffs cannot seek this
remedy because they do not plead causes of action under ERISA §§ 409(a) or 411. *See* 29 U.S.C. §§ 1109(a),
1111. Even if they brought such claims, Plaintiffs are not entitled to this remedy, as it is available only to the
plan as whole, and Plaintiffs bring claims only on behalf of subscribers, providers, and associations of
providers. *See Byrd v. Reliance Standard Life Ins. Co.*, 160 F. App'x 209, 212 n.4 (3d Cir. 2005) (affirming
dismissal of a claim under §§ 409 and 502(a)(1) because "[o]ur cases make clear that such relief is available to
the plan, not to individual plan participants").

fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation[,]" as "the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (citations omitted).

Here, Plaintiffs' RICO claims fail for three basic reasons: (1) Plaintiffs do not plausibly allege a RICO enterprise, both because they cannot agree on the definition of that enterprise and because they do not allege any relationships among its members; (2) even if some enterprise existed, Plaintiffs allege facts showing that CIGNA did not direct its affairs; and (3) Plaintiffs do not properly allege that CIGNA committed the underlying predicate acts.

A.      **Plaintiffs Do Not Define A Plausible RICO Enterprise.**

Even though Plaintiffs' counsel have spent years suing multiple healthcare companies for using Ingenix data, they are still not able to come up with a plausible theory of why using that data is a RICO violation. The incoherence of their claim is most evident in their latest attempt to define an "enterprise," as RICO requires. 18 U.S.C. § 1962(c).

1.      **Plaintiffs offer two contradictory definitions.**

To start with, Plaintiffs cannot even agree on who was involved in this supposed enterprise. In several RICO claims -- including one brought on behalf of "*all* Plaintiffs" -- they say that CIGNA was part of an enterprise along with United Healthcare and Ingenix "among others," including "other healthcare companies" (*id.* ¶ 482-83; *see also id.* ¶¶ 555, 531) such as Aetna, WellPoint, Oxford, and Health Net (*id.* ¶¶ 556-57 (defining enterprise to include Co-Conspirators); ¶¶ 70-73 (defining Co-Conspirators to include insurers)). In other words, Plaintiffs describe a "hub-and-spoke conspiracy,"

> in which a central core of conspirators recruits separate groups of co-conspirators to carry out the various functions of the illegal enterprise. In such a conspiracy, the core conspirators are the hub

and each group of co-conspirators form a spoke leading out from
the center in different directions.

*United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) (citations omitted).  Specifically, Plaintiffs allege that all of these insurance companies conspired to submit flawed data to Ingenix and reduce R&C reimbursements across the healthcare industry.  (Compl. ¶ 75.)

But the same Plaintiffs' counsel who signed these allegations earlier told the Court that

Plaintiff has not alleged a "hub and spoke" enterprise precisely
because Plaintiff does not believe that one exists. Instead,
Ms. Franco alleges that Ingenix and CIGNA entered into a two-
party associated-in-fact enterprise.

(Cert. Ex. 7 at 11 (emphasis removed).)  And, sure enough, Plaintiffs include the assertion that CIGNA and Ingenix make up their own ***two-party*** enterprise (Compl. ¶ 454) -- even though this completely contradicts their assertion that CIGNA and Ingenix are part of a ***multi-party*** enterprise.  At this point in the litigation, one would think that Plaintiffs could at least agree among themselves on who was part of this alleged conspiracy.  The fact that they cannot -- despite buckets of discovery from several insurers and from Ingenix -- highlights just how implausible Plaintiffs' RICO claims really are.

### 2. Plaintiffs do not allege relationships among the purported enterprise's members.

The only somewhat intelligible reading of Plaintiffs' confused and conflicting RICO claims is that they are, in substance, alleging a hub-and-spoke conspiracy consisting of multiple insurance companies.  Plaintiffs assert that this conspiracy formed an "association-in-fact 'enterprise'" under RICO (Compl. ¶ 482; *see also id.* ¶ 455), which the Supreme Court has defined as a "group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).

But Plaintiffs do not allege the facts necessary to plead that Ingenix and various insurance companies formed an association-in-fact enterprise, because they do not allege any relationships among those insurers. The Supreme Court recently reaffirmed that an association-in-fact enterprise "must have a structure," including "relationships among those associated with the enterprise." *United States v. Boyle*, 129 S. Ct. 2237, 2244-45 (U.S. 2009) (while the enterprise does not need "a hierarchical structure or a 'chain of command,'" the members of the enterprise must join together in some fashion to make decisions on behalf of the enterprise). But Plaintiffs offer no well-pled allegations that CIGNA and the other insurers have any conspiratorial relationship, or that they ever came together to make joint decisions. Without such allegations, there is no RICO enterprise -- no enterprise "rim" connecting the conspiracy's "spokes" -- and Plaintiffs' RICO claims should be dismissed. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 and 05-1079, 2007 WL 2892700, at *25 (D.N.J. Sept. 28, 2007) (Brown, J.) (dismissing RICO claim based on alleged hub-and-spoke enterprise among insurance companies and brokers, because "Plaintiffs' pleadings do not contain any actual facts suggesting that Insurer-Defendants were interrelated").[13]

### B. Plaintiffs Allege Facts Showing That CIGNA Did Not Direct The Supposed Enterprise's Affairs.

Plaintiffs also contradict their own allegations in trying to plead, as RICO requires, that CIGNA conducted or participated in directing the alleged enterprise's affairs, not just its own affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Univ. of Md. at Baltimore v.*

---

[13] *See also VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 700 (6th Cir. 2000) (dismissing RICO claim based on alleged hub-and-spoke enterprise among bank and sub-lenders, because plaintiff did not "show any type of mechanism by which this 'group' . . . conducted its affairs or made decisions"), *abrogated on other grounds*, *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131 (2008); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 184 (D. Mass. May 13, 2003) (dismissing RICO claim based on alleged hub-and-spoke enterprises among drug companies and health care providers, because an "allegation that each provider was aware that there were likely other providers engaged in parallel schemes is insufficient to establish an association-in-fact RICO enterprise").

*Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3d Cir. 1993); *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 2892700, at *25 (this requirement "has been rigorously enforced to prevent an explosion of RICO civil strike suits").  Plaintiffs try to meet this requirement by alleging that CIGNA participated in the supposed enterprise in only two ways -- using the Ingenix database and submitting inadequate data to Ingenix.  (Compl. ¶¶ 464-66, 496.)

But Plaintiffs' allegation that CIGNA somehow "participated" in creating the Ingenix database by sending data to Ingenix is flatly contradicted by an allegation, made in federal court by some of the Plaintiffs, represented by the same Plaintiffs' counsel, that the Ingenix database is under the "***exclusive and permanent control***" of United Healthcare -- not CIGNA.  (Cert. Ex. 8 ¶ 132 (*AMA v. United Healthcare Corp.*, Fourth Am. Compl. (July 10, 2007)) (emphasis added).) Similarly, Plaintiffs contradict their assertion that CIGNA "participated" in the enterprise by using Ingenix data when they allege that CIGNA used this data without Ingenix's involvement -- specifically, that "although Ingenix issues a disclaimer to the users of the Ingenix Database (including CIGNA), CIGNA continued to use the Ingenix Database in a manner directly ***at odds with*** the disclaimer." (Compl. ¶ 458 (emphasis added).)  And, even without these contradictory statements, Plaintiffs' allegations that CIGNA sent data to and used data received from Ingenix does not show -- or even suggest -- that CIGNA somehow directed Ingenix's creation of its own database.

In substance, Plaintiffs have alleged nothing more than a normal, arms-length business relationship between CIGNA and Ingenix, which does not show that CIGNA directed the affairs of any RICO enterprise.  *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 2892700, at *31 (dismissing RICO claims against a trade association, because "Plaintiffs' facts indicate that each Defendant elaborately conducted and directed its own affairs but not those of any

enterprise"); *see also Reves*, 507 U.S. at 185-86 (affirming grant of summary judgment for defendant on RICO claims brought against outside accounting firm, because it did not participate in operation or management of the corporation that it served); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 414-15 (D.N.J. 1998) (Rodriguez, J.) (granting summary judgment on RICO claim to third-party defendants, an insurance company and broker, because they were "conducting their own affairs" by insuring applicants to an auto insurance plan and were not directing the affairs of the plan itself) (emphasis removed).

At best, Plaintiffs allege that CIGNA contributed data to the creation of a faulty database that was used in the healthcare industry. But even if true, and even if this contribution was somehow important or illicit, these allegations do not show that CIGNA directed the affairs of an enterprise that created that database. *See e.g.*, *Peat, Marwick*, 996 F.2d at 1539 (affirming dismissal of RICO claims against accounting firm because, even if its services were "indispensable" to an enterprise, plaintiffs did not allege that the firm "had any part in operating or managing the affairs" of that enterprise); *Gilmore v. Berg*, 820 F. Supp. 179, 183 (D.N.J. 1993) (Brotman, J.) (dismissing RICO claims against attorney who prepared allegedly false documents for an enterprise because, even if attorney committed fraud, plaintiff did not allege that he "was directing the legal entities he represented to engage in particular transactions"); *Nicholas v. Saul Stone & Co., LLC*, No. 97-860, 1998 WL 34111036, at *24 (D.N.J. June 30, 1998) (Thompson, C.J.) (dismissing RICO claims against brokers who placed trades on behalf of an alleged Ponzi scheme because "there are no allegations that any of the defendants had decision making authority").

These are fundamental pleading failures that cannot be fixed through yet another amended complaint. Over the past five years, Plaintiffs counsel have received massive amounts

of discovery from CIGNA, Ingenix, and United Healthcare (Ingenix's parent company) yet they are still not able to allege facts showing that CIGNA had any role in creating or manipulating the Ingenix database. Indeed, they have alleged the opposite. It is time to dispense with Plaintiffs' poorly stated and completely unsupportable RICO claims, and to do so with prejudice.

### C. Plaintiffs Have Not Adequately Pled The Predicate Acts.

That Plaintiffs' RICO claims are ill-considered add-ons is also evident from their conclusory assertions that CIGNA committed predicate acts of mail and wire fraud and of embezzlement. Mail and wire fraud must be pled with particularity under Rule 9(b). *See Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004). But all Plaintiffs allege is that CIGNA underpaid ERISA benefits and made a handful of mailings in doing so. This is not enough. *See Livingston v. Shore Slurry Seal, Inc.*, 98 F. Supp. 2d 594, 598-600 (D.N.J. 2000) (Irenas, J.) (dismissing RICO claims based on mail fraud because defendants' alleged mailing of paychecks in violation of the Prevailing Wage Act was not enough to constitute mail fraud); *Bernstein v. Misk*, 948 F. Supp. 228, 238-39 (E.D.N.Y. 1997); *Passini v. Falke-Gruppe*, 745 F. Supp. 991, 992-93 (S.D.N.Y. 1990); *Sellers v. Gen. Motors Corp.*, 590 F. Supp. 502, 506 (E.D. Pa. 1984) (dismissing RICO claim based on alleged mail fraud because "[p]laintiff's general allegations of such a scheme [to defraud] are not sufficient").

Nor do Plaintiffs properly allege that CIGNA committed embezzlement. Embezzlement is the act of fraudulently appropriating another person's property, s*ee Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 508 (E.D. Pa. 2001), but all that Plaintiffs allege is that CIGNA underpaid ERISA benefits. (Compl. ¶¶ 517, 537.) For fully-funded plans, Plaintiffs concede that CIGNA pays these benefits from "its own assets," (Compl. ¶¶ 518, 538), and CIGNA's alleged failure to make even required payments from its own assets is not embezzlement. *See, e.g., Young v. W. Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 76 (D. Del. 1991)

(employer's failure to make required contributions to an employee benefit plan was not embezzlement of plan assets under § 664; rather, the employer owed a debt to the plan); *see also Mehling*, 163 F. Supp. 2d at 508 (dismissing RICO embezzlement claim where defendant plan administrator and trustees "had exclusive authority over the 'control and management' of the investment of Plan assets"). And for self-funded plans -- where benefits are paid from an employer's assets, not CIGNA's -- Plaintiffs do not allege that CIGNA fraudulently appropriated anything, only that CIGNA "justif[ied]" administrative fees paid to it by employers. (Compl. ¶¶ 518, 538.) Even if true, "justifying" a fee is not embezzlement. *See e.g., Ris v. Bedell*, 699 F. Supp. 429, 439 (S.D.N.Y. 1988) (receipt of valid obligations is not embezzlement).

*        *        *

This Court should dismiss Plaintiffs' RICO claims with prejudice because (1) Plaintiffs do not allege the existence of a RICO "enterprise"; (2) they allege facts showing that CIGNA did not direct any such enterprise's affairs; and (3) they do not adequately allege that CIGNA committed any predicate acts.[14]

## IV.  PLAINTIFFS DO NOT ALLEGE PLAUSIBLE ANTITRUST CLAIMS.

Provider Plaintiffs' claim under § 1 of the Sherman Act is another attempt to shoehorn this contractual benefits case into an ill-fitting conspiracy claim, in a further gambit to

---

[14]  Plaintiffs' RICO claims have two additional problems:

First, Plaintiffs' claim that CIGNA violated 18 U.S.C. § 1962(d) by conspiring to violate RICO § 1962(c) fails because, as shown, they do not plausibly plead any actual RICO violations. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, Nos. 06-3044, 07-2224, 07-2608, 07-2860, 2008 WL 5413105, at *16 (D.N.J. Dec. 23, 2008) (Wolfson, J.) (dismissing RICO conspiracy claims where plaintiffs did not sufficiently plead any RICO violations) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 227 n.5 (3d Cir. 2004)).

Second, this Court should reject Plaintiffs' request for declaratory and injunctive relief under RICO, both because Plaintiffs lack standing (Section I.D.) and because the RICO statute -- while expressly allowing the government to seek equitable relief -- makes no such provision for private RICO plaintiffs to do so. *See Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1136-38 (D.N.J. 1989) (Brotman, J.) (dismissing claim for injunctive relief under RICO because it is not provided for by statute, listing cases that reach the same conclusion, and noting it is an "open issue" in the Third Circuit).

manufacture settlement leverage.  But as with Plaintiffs' RICO allegations, their antitrust allegations show that -- at most -- this is just an ERISA dispute.

Plaintiffs' antitrust claim fails for three basic reasons: (1) they do not allege antitrust injuries, only contract injuries; (2) they do not plausibly allege that CIGNA participated in an agreement to restrain trade, and their own allegations show that CIGNA had independent reasons to act as it did; and (3) they present an untenable market definition that does not include all medical providers who offer the same services.

### A.      Plaintiffs Do Not Allege An Antitrust Injury.

#### 1.      Plaintiffs assert contract injuries, not antitrust injuries.

Plaintiffs cannot plausibly allege that underpayment of ERISA benefits is an antitrust injury.  Rather, to have an antitrust claim, Plaintiffs must allege an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 266 (3d Cir. 1998) ("[T]he question of whether the plaintiff has experienced antitrust injury depends in part on its source -- did the injury flow from that which makes the defined acts unlawful.").

But an antitrust injury cannot simply be a harm that flows from a breach of contract. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1235 (6th Cir. 1981); *see also Snyco, Inc. v. Penn Cent. Corp.*, 551 F. Supp. 949, 952 (E.D. Pa. 1982).  This is especially true of contract harms governed by other statutes, such as ERISA.  *See Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1042 (2d Cir. 1985) (diminished retirement benefits did not show an antitrust injury, as this was "essentially an ERISA matter").  This point is well illustrated by the case of *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 942 F. Supp. 235 (E.D. Pa. 1996), *aff'd*, 118 F.3d 178 (3d Cir. 1997).  There, plaintiff, who provided telemarketing services

to defendant in return for payment as defined by the parties' contract, asserted antitrust claims based on an alleged conspiracy to breach that contract. *Id.* at 236. The court dismissed the claim, noting that even if the defendant breached the contract as a result of anticompetitive conduct, "the type of injury [plaintiff] has suffered cannot be said to be of the kind that the antitrust laws were designed to protect." *Id.* at 237.

Here, the only antitrust "injury" that Plaintiffs allege is underpayment of out-of-network benefits through low R&C rates. (Compl. ¶¶ 562-63.) But they elsewhere concede that these benefits, and the definition of R&C, are governed by the contract provisions of CIGNA's benefit plans. (*E.g. id.* ¶ 6.) Indeed, this is the entire basis of their benefits claim under ERISA. (*Id.* ¶ 385 (asserting that "CIGNA breached it plan provisions for benefits by underpaying UCR and other ONET reimbursement amounts covered by ERISA healthcare plans").)

Simply put, because the alleged underpayment of benefits is a contract injury, Plaintiffs cannot use it to bring an antitrust claim. *See Barton*, 942 F. Supp. at 237; *Eichorn v. AT&T Corp.*, 248 F.3d 131, 148 & n.7 (3d Cir. 2001) (Scirica, J.) (former employees could not maintain § 1 claim against former employer based on loss of pension benefits where they could seek to redress those losses under ERISA); *A.D.M. Club Mgmt. Sys., Inc. v. Gary Jonas Computing, Ltd.*, No. 05-3943, 2006 WL 2689400, at *5 (D.N.J. Sept. 19, 2006) (Ackerman, J.) ("Plaintiffs have standing with respect to breach of contract and the like, but those claims do not also give rise to standing to assert anticompetitive injury under the antitrust laws.").

### 2. Plaintiffs' own allegations show there was no antitrust injury caused by CIGNA.

Even if underpayment of ERISA benefits was an antitrust injury, Provider Plaintiffs still could not use those underpayments to bring an antitrust claim, because these underpayments did have any effect on the prices they charge. Plaintiffs present a two-step, "linked market" theory

of injury: (1) CIGNA and its competitors conspired to use Ingenix as the single provider in the "Data Market" -- the "market for data used to calculate UCRs for reimbursement of subscriber claims for [out-of-network], non-negotiated medical services;" and (2) this conspiracy affected the "Linked Market" -- "the market for the purchase of insured medical services acquired on an [out-of-network] basis" -- where Provider Plaintiffs compete. (Compl. ¶ 322.) Specifically, Plaintiffs allege that CIGNA's actions "artificially depressed" prices paid in this Linked Market for insured medical services. (*Id.*)

But Plaintiffs directly contradict their assertion that the prices for medical services have been depressed -- when they elsewhere allege that providers can charge whatever they want for those services. Specifically, Plaintiffs allege that non-participating providers (1) "are not required to accept reduced rates for procedures performed;" (2) "may collect their full charges directly from patients at the time of service;" and (3) are "entitled to bill the Member for the amount of the charge that exceeds the amount that the Member's health plan covers." (*Id.* ¶ 5; *see also* Cert. Ex. 9 ¶ 25 (*Shiring* Compl.) (alleging that out-of-network providers "can instead charge ***any amount they choose***") (emphasis added).) Put another way, Plaintiffs' real gripe is that CIGNA supposedly reimbursed its subscribers less than their out-of-network providers charged them -- not that CIGNA reduced what those providers could bill the subscribers in the first place.

Because Plaintiffs cannot show any harm to competition in the Linked Market caused by CIGNA, they have not alleged an actionable antitrust injury, and their Sherman Act claim must be dismissed. *See W. Penn Power*, 147 F.3d at 268 ("[A]ntitrust injury must be caused by the antitrust violation -- not a mere causal link, but a direct effect").

**B.     Plaintiffs Do Not Adequately Allege An Agreement To Restrain Trade.**

In addition to not alleging antitrust injuries, Plaintiffs do not provide what the Supreme Court required in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) -- "allegations plausibly suggesting (not merely consistent with) agreement [to restrain trade.]" *Id.* at 557.   The "crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement[.]"   *Id.* at 553 (quotations and citations omitted).   Thus,  to survive a motion to dismiss, Plaintiffs must allege -- at a minimum -- "enough factual matter (taken as true) to suggest that an agreement was made."  *Id.* at 556; *In re Ins. Brokerage Antitrust Litig.*, Civ. Nos. 04-5184, 05-1079, 2007 WL 2533989, at *8 (D.N.J. Aug. 31, 2007) (Brown, C.J.) (plaintiffs must plead "the facts constituting the conspiracy, its object and accomplishment, such as the date of the alleged conspiracy or its attendant circumstances").

Because Plaintiffs cannot allege facts showing an express agreement among CIGNA and other insurers to fix prices, they try to infer one from allegations that CIGNA and its competitors engaged in parallel behavior (Compl. ¶¶ 309-21) and that the "Data Market is conducive to . . . collusion" (*id.* ¶¶ 330-37).   But these assertions do not add up to a plausible inference that CIGNA acted pursuant to an agreement with other insurers, because (1) Plaintiffs allege that CIGNA often did not act in parallel with other insurers; (2) none of the alleged "market conditions" actually suggest an agreement was made; and (3) even if Plaintiffs had alleged parallel conduct and market conditions that suggest a conspiracy, they also allege facts affirmatively showing that CIGNA had rational, independent business reasons to act as it did -- which defeats Plaintiffs' claim.

### 1. Plaintiffs cannot rely on allegations of parallel conduct, because they allege that CIGNA did *not* always act in parallel.

While Plaintiffs try to infer an agreement from allegations that CIGNA acted in parallel with other insurers, they allege that CIGNA often did otherwise. For example, while they assert that all insurers "adopted a ***standard*** formula for making UCR determinations," (Compl. ¶ 317 (emphasis added)), Plaintiffs elsewhere allege that CIGNA often "applied ***its own*** default formula" whenever the Ingenix data "did not report a certain number of charges" (*id.* ¶¶ 285-86 (emphasis added); *see also id.* ¶¶ 287-91), and that some CIGNA claims systems used "rounding rules" that produced "***inconsistent***" R&C determinations, which differed from "the exact Ingenix dollar amount" (*id.* ¶¶ 292-95 (emphasis added)). And Plaintiffs allege that CIGNA also used "***other*** Nonpar Pricing methods to reduce reimbursements" that they do not allege were used by other insurers. (*Id.* ¶¶ 297 (emphasis added); *see also id.* ¶ 296.)

Because Plaintiffs allege that CIGNA often acted differently than other insurers, it cannot plausibly assert that all of these insurers acted in parallel. And without plausible allegations of parallel conduct, Plaintiffs' antitrust claim must be dismissed. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 132 (3d Cir. 1999) (refusing to infer conspiracy from allegedly parallel behavior because "defendants' marketing activities refute rather than support parallel pricing"); *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 54-55 (3d Cir. 2007) (refusing to infer conspiracy where plaintiff failed to establish conscious parallelism; *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F. Supp. 1088, 1122 (N.D. Ill. 1995) (vacated pursuant to settlement) (court "cannot support the inference of conspiracy from parallel conduct" if "there was no parallelism") (emphasis removed).

### 2. Plaintiffs cannot rely on allegations about market conditions, because none of those conditions suggest a conspiracy.

Plaintiffs' last gasp in trying to allege an antitrust agreement is to assert that the market for R&C data services is "conducive" to an antitrust conspiracy among CIGNA and its competitors. But none of the market conditions they describe implies a conspiracy to fix prices.

First, while Plaintiffs allege that the market is concentrated and has an "exceedingly high barrier to entry" (Compl. ¶ 333; *see also id.* ¶ 332), a conspiracy cannot be inferred from an allegation that market conditions are conducive to an agreement. *See St. Clair v. Citizens Fin. Group,* No. 08-4870, 2009 WL 2186515, at *3 (3d Cir. July 23, 2009) (allegation that plaintiff "effectively barricaded entry into the market," was "too conclusory to be sufficient under *Twombly*") (quotations and citations omitted).

Second, while Plaintiffs allege that CIGNA had a financial incentive to provide low reimbursement rates (Compl. ¶466), if CIGNA had a motive to save money, "then every company in every industry would have such a 'motive'" -- and would have "no motive to enter into a price-fixing conspiracy." *In re Baby Food*, 166 F.3d at 133 (internal quotations omitted).

Finally, while Plaintiffs allege that CIGNA had "opportunities to communicate" and did communicate with alleged co-conspirators through joint membership in a trade association (Compl. ¶ 335), an agreement cannot be inferred from an opportunity to conspire -- and specifically cannot be inferred from joint membership in a trade association. *See Twombly*, 550 U.S. at 567 n.12; *Cosmetic Gallery*, 495 F.3d at 53; *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1013 (3d Cir. 1994).

Simply put, Plaintiffs do not describe market conditions that make the existence of an antitrust conspiracy plausible.

### 3. Plaintiffs acknowledge that CIGNA had independent business reasons to act as it did.

Even if Plaintiffs had alleged that CIGNA engaged in parallel conduct and that market conditions could imply an agreement to fix prices in that market -- which they have not -- their claim would still fail because Plaintiffs' own allegations show that CIGNA had rational reasons for its actions. When a § 1 claim hangs on allegations of parallel behavior, the allegations "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly,* 550 U.S. at 557. But if the allegations suggest that the defendant had rational, independent reasons for its actions, then courts will not infer an antitrust conspiracy and will instead dismiss the complaint. *See Id*. at 554; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977) ("The law is settled that proof of consciously parallel business behavior . . . without more, is insufficient unless the circumstances under which it occurred make the inference of rational, independent choice less attractive than that of concerted action.").

Here, Plaintiffs acknowledge that CIGNA had at least two independent reasons for using Ingenix data: (1) "CIGNA and other contributors to Ingenix are entitled to discounted use of the Ingenix Database simply for continuing to submit data at the level at which they submitted data when the database was owned by HIAA" (Compl. ¶ 312); and (2) "CIGNA could not have saved the millions of dollars it did if it had not used the Ingenix databases" (*id.* ¶ 466, 497). Indeed, Plaintiffs go even further, alleging other factors that gave CIGNA every incentive to use Ingenix data: (1) the market for R&C data has existed as it is now for "decades" (*id.* ¶ 334); (2) in that market, Ingenix promotes itself as the "'industry standard'" (Compl. ¶331); (3) there "are few competitors and . . . the market has been marked by consolidation among those few competitors"

(*id.* ¶ 334); and (4) the tremendous costs of building a competing infrastructure creates "high barriers to [market] entry" for other data providers (*id.* ¶ 332).

Because Plaintiffs allege that CIGNA had independent business reasons for engaging in the conduct at issue, it is not reasonable to infer that CIGNA acted because of an agreement, and Plaintiffs' antitrust claim should be dismissed with prejudice. *See Twombly*, 550 U.S. at 566 (directing dismissal of § 1 claim where "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway."); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962-63 (N.D. Cal. 2007) (dismissing § 1 claim where complaint's allegations tended to show that defendants acted independently based on market conditions).

### C. Plaintiffs Do Not Plead A Valid Relevant Market.

Even if Plaintiffs had pled that they were injured by an agreement to restrain trade, they have not alleged that this agreement affected a relevant market. Plaintiffs have the burden of validly defining such a market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). And the Third Circuit is clear that where a plaintiff "alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.*

Here, Plaintiffs describe a "market for the purchase of insured medical services acquired on an ONET [out-of-network] basis." (Compl. ¶ 322.) But there is no plausible reason why this market includes only medical services performed by out-of-network providers and excludes exactly the same services offered by providers who contract with CIGNA. (*See id.* ¶ 4 (the only difference between in-network and out-of-network providers is that in-network providers negotiate rates with CIGNA).) Consequently, Plaintiffs do not plead a valid relevant market and their § 1 claim must be dismissed. *See N. Jersey Secretarial Sch. v. McKiernan*, 713 F. Supp.

577, 583 (S.D.N.Y. 1989) (dismissing § 1 claim where plaintiff did not explain why proposed market of adult vocational schools in Northern New Jersey and Puerto Rico excluded similar schools in other areas); *see also Queen City Pizza,* 124 F.3d at 437-38 (dismissing § 2 claim where plaintiff did not explain why proposed market of ingredients and supplies used by Domino's Pizza excluded ingredients and supplies used by other pizza companies).

*       *       *

Plaintiffs' antitrust claim should be dismissed with prejudice because (1) Plaintiffs do not demonstrate an antitrust injury; (2) they do not allege facts showing an agreement to restrain trade; and (3) they have not pled a relevant market.

## V.      PLAINTIFF CHAZEN DOES NOT STATE A VIABLE CLAIM UNDER THE NEW JERSEY REGULATION.

Plaintiffs' last add-on claim is brought by one of the Subscriber Plaintiffs, Mr. Chazen, and asserts that CIGNA violated the New Jersey Regulation, which requires carriers of small insurance plans to pay certain charges using Ingenix data.  But this claim fails because (1) the Regulation is a state law preempted by ERISA; (2) the Regulation does not include a private right of action; and (3) Mr. Chazen has not pled that CIGNA breached the Regulation -- indeed, he alleges that CIGNA complied with it.

### A.      ERISA Preempts Plaintiffs' New Jersey Regulation Claim.

The claim that CIGNA breached the New Jersey Regulation is easily dispensed with. ERISA "supersede[s] any and all State laws" -- including regulations -- "insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. §§ 1144(a), (c)(1).  The Third Circuit has made clear that ERISA preempts state law provisions governing the amount of benefits due under health insurance plans.  *Pryzbowski v. U.S. Healthcare*, *Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (ERISA preempts challenges to administration of or eligibility for benefits,

but not laws governing the quality of medical care).  And Judge Greenaway of this Court held

that ERISA specifically preempts any claim under the New Jersey Regulation.  *Gregory Surgical

Servs., LLC v. Horizon Blue Cross Blue Shield of N.J.*, No. 06-0462, 2006 WL 3751385, at *2-3

(D.N.J. Dec. 19, 2006) (dismissing a claim asserted under the New Jersey Regulation brought by

a provider against a health insurer).  Indeed, the plaintiff in that case -- represented by counsel

who is counsel to Plaintiffs here -- conceded that ERISA preempts claims under that Regulation.

*Id.*  Accordingly, Mr. Chazen's claim under the New Jersey Regulation should be dismissed.

### B.    The New Jersey Regulation Does Not Allow a Private Right of Action.

Even if ERISA did not preempt Mr. Chazen's claim under the New Jersey Regulation,

that claim still fails because the Regulation does not authorize a private right of action.  The

Regulation contains no language granting such a right, and "New Jersey courts have been

reluctant to infer a statutory private right of action where the Legislature has not expressly

provided for such action."  *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d

1132, 1142 (N.J. 2001); *see also In re Resolution of the State Comm'n of Investigation,* 527 A.2d

851, 853-54 (N.J. 1987) (holding no right of action existed where "[t]he text of the statute does

not provide for a private right of action for persons who may be harmed by violations of it").

New Jersey courts specifically do not infer private rights of action under insurance

regulations with "comprehensive legislative scheme[s]" and an "integrated system of procedures

for enforcement[.]"  *Gaydos*, 773 A.2d at 1145 ("[W]henever the [New Jersey] Legislature

intended to create civil penalties for violations of insurance statutes, regulations, and Department

orders, it knew how to do so").  For example, in *R.J. Gaydos*, the court rejected a private right of

action under New Jersey's Fair Automobile Insurance Reform Act ("FAIRA") because the law

vested the Commissioner of Insurance with enforcement powers, including the ability to impose

civil penalties.  *Id.* at 1148 (allowing a private right of action under FAIRA "could undermine

the State's ability to properly regulate the automobile industry"). Similarly, the New Jersey Regulation at issue here contains a comprehensive scheme that allows the State to issue sanctions and levy penalties, including fines. N.J.A.C. §§ 11:21-2.13, 11:21-1.4. Accordingly, it is inappropriate to infer a private right of action under that Regulation. *See Gaydos*, 773 A.2d at 1148; *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 555 (N.J. 1997) (New Jersey's Insurance Producer Licensing Act does not create private right of action where the Department of Banking and Insurance has the power to "revoke or to refuse to renew a license and to impose civil penalties on licensees").

### C.  Plaintiff Does Not Allege a Violation of the New Jersey Regulation.

Even if Mr. Chazen could bring a claim under the New Jersey Regulation, he has not properly pled one. The Regulation requires small employer carriers to pay covered charges based on "a standard based on the Prevailing Healthcare Charges System profile for New Jersey . . . . *available from the Ingenix, Inc*.," N.J.A.C. § 11:21-7.13 (emphasis added), and Mr. Chazen concedes that CIGNA used Ingenix data to calculate his benefits (Compl. ¶ 109). Further, while Mr. Chazen alleges that CIGNA breached the Regulation by taking various reductions for multiple surgeries, assistant surgeons, and co-surgeons, (*id.* ¶ 449), the Regulation does not prohibit such reductions. And even if it did, Mr. Chazen does not allege that CIGNA applied any such reductions to his claims. Thus, even taking Mr. Chazen's legal theory as valid and all of his allegations as true, he has not pled a violation of the New Jersey Regulation.

*        *        *

Mr. Chazen's New Jersey Regulation claim should be dismissed with prejudice because (1) ERISA preempts such a claim; (2) the Regulation does not provide a private right of action; and (2) Mr. Chazen does not allege that CIGNA violated the Regulation.

## <u>CONCLUSION</u>

This litigation has been a massive waste of the parties' resources and the Court's time. The only conceivable claim that Plaintiffs could bring is one for ERISA benefits, but even there they fail to identify the relevant benefit plan provisions or to sue the proper parties.

Plaintiffs' add-on claims are even less plausible. Their attempts to define a RICO enterprise are so ill-conceived that not even all Plaintiffs can agree on what the enterprise was -- and they then allege facts showing that CIGNA could not have controlled any such enterprise's affairs. And Plaintiffs base their antitrust claim solely on what they concede are contract injuries, while alleging no facts suggesting some industry-wide scheme to use Ingenix data -- indeed, they allege facts showing that CIGNA had independent business reasons to do so.

To understand just how inexcusable these continued pleading defects are, it bears stressing once again how much time and information Plaintiffs have had to get their claims in order. The first R&C case against CIGNA was filed over five years ago -- and R&C cases brought by the same Plaintiffs' counsel against other health insurers have been on file for nearly a decade. During that time, Plaintiffs have received massive amounts of discovery, so much that even Plaintiffs' own counsel described it as "aggressive," "expansive," and even "wasteful."[15]

CIGNA has produced nearly 30 million pages of documents -- after reviewing nearly 100 million pages of potentially relevant material. CIGNA gathered documents from 426 of its current and former employees, located in 30 states at 104 different locations -- after interviewing well over 1000 individuals. It spent hundreds of man-hours extracting information from scores of other computer drives, databases, backup tapes, and file rooms. CIGNA also produced

---

[15] (Cert. Ex. 10 at 6 ("Wilentz has rebuffed any suggestion to engage in settlement talks, and has continued to pursue an aggressive and expansive discovery program") and 7 ("Pomerantz did not agree with the aggressive, wasteful, and ultimately, inefficient, litigation approach taken by Wilentz, but preferred to consider discussions with the defendants")).)

hundreds of millions of lines of claims data from a dozen large and complicated claim systems located all over the country. In addition, CIGNA has responded extensively to many hundreds of letters from Plaintiffs' counsel, providing extra information on topics ranging from claim processing to email storage. And this haul does not include all of the other discovery that Plaintiffs' counsel has received from Ingenix, from Ingenix's parent company United Healthcare, and from other users of the Ingenix database such as Health Net.

After all this, if Plaintiffs' counsel still cannot state a plausible claim based on CIGNA's use of Ingenix data, it is because there is no such claim. Given CIGNA's extensive discovery responses, additional discovery would be pointless. And after five years and half a dozen complaints, further amendment would be futile. CIGNA respectfully requests that this Court dismiss all of Plaintiffs' claims with prejudice.

Dated: September 9, 2009

William H. Pratt, Esq.
Zachary S. Brez, Esq.
Joshua B. Simon, Esq.
Andrew R. Dunlap, Esq.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

s/ Brian J. McMahon
Brian J. McMahon, Esq.
E. Evans Wohlforth, Jr., Esq.
William P. Deni, Jr., Esq.
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

Attorneys for Defendants