**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DARLERY FRANCO, individually and on behalf of all others similarly situated,  :<br><br>Plaintiffs, :<br><br>v.  :<br><br>CONNECTICUT GENERAL LIFE INSURANCE CO., et al.,  :<br><br>Defendants. : | **Case No. 07-cv-6039 (SRC) (PS)**<br><br>**OPINION** |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Plaintiffs for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3). Defendant Cigna ("Defendant" or "Cigna") has opposed the motion. The Court has opted to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion will be denied.

I.    **BACKGROUND**

Many health benefits plans insured or administered by Cigna distinguish between in-network and out-of-network ("ONET") providers in setting coverage levels for services obtained by subscribers and other plan beneficiaries. For a claim based on a service rendered by a provider who participates in Cigna's provider network ("in-network provider" or "Par"), that is,

1

has agreed to negotiated rates of reimbursement from Cigna, Cigna's plans provide that the "allowed amount" – i.e., the portion of the provider's charges that the plan will cover – is the rate set by the contract between the provider and Cigna. The in-network provider, in other words, has agreed to accept a negotiated rate as payment in full for the service, and the plan member will be responsible only for any applicable deductible or co-payment under the plan. In contrast, the allowed amount for a service rendered by an ONET or non-participating provider ("Nonpar"), is not tied to any contract between Cigna and the provider. A healthcare benefit plan may define the allowed amount for an ONET service in any number of ways, such as using a fee schedule or linking coverage to some percentage of Medicare rates. This case focuses on Cigna plans which, during the putative class period, set the allowed amount for ONET claims at the "usual, customary and reasonable" ("UCR") amount for the service.[1] The claims for relief revolve around the alleged denial of ONET benefits as a result of Cigna's use of an allegedly flawed database, operated by a third party known as Ingenix, to determine UCR.

A.    **Facts Relating to Named Plaintiffs' Alleged Adverse Benefit Determinations**

Named Plaintiffs Darlery Franco ("Franco"), David Chazen ("Chazen"), and Camilo Nelson Sr., Shahidah Nelson and Camilo Nelson, Jr. (collectively "the Nelsons") are, or were at all relevant times, participants or beneficiaries of employer-sponsored health benefit plans insured and/or administered by Cigna. For the sake of maintaining the continuity of labels used in previous opinions, the Court will generally refer to the named Plaintiffs collectively as

---

[1] The parties acknowledge that some plans instead used the term "reasonable and customary" amount or "maximum reimbursable charge," which they agree generally expresses the same concept of the prevailing fee for the service in a given geographical area. The Court discussed UCR at length in its September 23, 2011 Opinion ruling on the Rule 12(b)(6) motions.

"Subscriber Plaintiffs."  In brief, the facts giving rise to the Subscriber Plaintiffs' claims are as follows:

Franco was a member of an ERISA-governed health plan fully-insured by Cigna.  She underwent complex facial reanimation surgery in 2003 and again in 2005 to correct facial paralysis caused at birth.  The surgery was performed in stages by ONET providers.  Cigna processed these ONET claims using Ingenix to determine the UCR.  The plan applicable to Franco's subject ONET claims provides:

> A charge will be considered Reasonable and Customary if:
>
> it is the normal charge made by the provider for a similar service or supply; and
>
> it does not exceed the normal charge made by most providers of such service or supply in the geographic area where the service is received, as determined by [Cigna].

(Quackenbos Decl., Ex. 3 at 93.)  With regard to both the 2003 and 2005 ONET claims, Cigna determined the ONET benefit to be less than the provider's billed charge, explaining that the benefit payment reflects the prevailing charge for the service.  Cigna points out that it had authorized both the 2003 and 2005 surgeries as in-network procedures, advising Franco that she would only be responsible for her copay and coinsurance amount, as if the providers were not Nonpars, and instructing her to contact Cigna's member services department if she did receive a balance bill from the Nonpar.  Cigna asserts that it only learned of the balance bills in the discovery phase of this litigation and, in response, increased its benefit payment to cover the Nonpars' full charges.

3

Chazen, a New Jersey resident, is a beneficiary of an ERISA healthcare benefits plan fully insured by Cigna.  Because the employer sponsoring Chazen's plan employs less than 50 people, the plan is considered a "small employer health plan" under New Jersey insurance regulations. N.J.S.A. 17B:27A-17.  Chazen underwent shoulder surgery with a Nonpar in 2006.  His claims for benefits relating to the services provided by the Nonpar were paid by Cigna using Ingenix to determine UCR.  Chazen's plan required ONET claims to be paid based on the "Maximum Reimbursable Charge."  His plan states, under the heading "Maximum Reimbursable Charge" as follows:

> In-network services are paid based on the fee agreed upon with the provider.  Out-of-network services are paid based on the Maximum Reimbursable Charge.  For this plan, the Maximum Reimbursable Charge is calculated at the 80th percentile of all charges made by providers of such service or supply in the geographic area.

(Quackenbos Decl., Ex. 4 at 12.)  The plan section setting forth definitions of various terms states:

> The Maximum Reimbursable Charge is the lesser of
>
> 1.    the provider's normal charge for a similar service or supply; or
>
> 2.    the policy-holder selected percentile of all charges made by providers of such service or supply in the geographic area where it is received.
>
> To determine if a charge exceeds the Maximum Reimbursable Charge, the nature and severity of the Injury or Sickness may be considered.  [Cigna] uses the Ingenix Prevailing Health Care System database to determine the charges made by providers in an area.  The database is updated semiannually.
>
> The percentile used to determine the Maximum Reimbursable Charge is listed in the Schedule.

4

> Additional information about the Maximum Reimbursable Charge is
> available upon request.

(Id. at 64.) The billed charges in connection with the 2006 shoulder surgery exceeded the benefits

paid by Cigna.  Chazen, however, negotiated a discount in the amount balance billed by the

Nonpar.

The Nelsons, residents of California, are covered by a healthcare benefits plan

administered by Cigna and self-insured by Camilo Nelson Sr.'s employer.  They received

chiropractic services from Nonpar Stephanie Higashi, doing business as "Mar Vista," and their

claims were paid by Cigna based on UCR.  The applicable Cigna plan provides that the allowed

amount for a claim arising out of a Nonpar's services will be determined according to the

"Maximum Reimbursable Charge."  The definition of this term in the Nelsons' plan is identical

to the one provided in Chazen's plan. (Quackenbos Decl., Ex. 75 at 55-56.)  In fact, the entire

"Maximum Reimbursable Charge" provision in the Nelson plan is a verbatim copy of the

provision in the Chazen plan, with the exception of the explanation of what constitutes the

selected percentile of UCR.  Rather than stating that the policyholder-selected percentile used to

determine the Maximum Reimbursable Charge is set forth in the plan itself, the Nelson plan

advises that the percentile "can be obtained by contacting Member Services/Customer Service."

(Id. at 56.) Mar Vista's charges exceeded the ONET benefits the Nelsons received under their

Cigna plan. It appears that at least some if not all the balances on the charges billed by Mar Vista

for the services rendered to the Nelsons were forgiven, that is, written off by the provider.  By

way of example, the record shows that Mar Vista billed $215 for four services provided to

Camilo Nelson, Jr. on October 23, 2006.  Cigna allowed $200, leaving a balance of $15, after the

applicable co-insurance owed by the patient.  Mar Vista's balance sheets, however, show that it adjusted its charges downwards by $55, writing off the $15 balance and the $40 co-insurance that the Nelsons were required to pay under their plan.

## B.    Summary of Legal Claims

This consolidated action had initially been brought not only on behalf of Cigna plan subscribers, but also on behalf of healthcare providers who treated Cigna plan beneficiaries on an ONET basis and various professional associations of healthcare providers.  The Nelson Complaint, filed separately from the Consolidated Amended Complaint, had also named Ingenix and its parent company, UnitedHealth Group, Inc., as defendants.  On Cigna's Rule 12(b)(6) motions, the claims of the Provider Plaintiffs and Association Plaintiffs were dismissed for lack of Article III standing. Moreover, all claims against Ingenix and United HealthGroup have been dismissed.  Indeed, motion practice has also substantially streamlined the substantive relief at issue in this action. The active claims in this action are those of Franco, Chazen and the Nelsons to recover unpaid benefits under ERISA § 502(a)(1)(B) and to remedy Cigna's alleged violations of its fiduciary duties of loyalty and care under ERISA §§ 404(a)(1)(B) and (D).  Also active are the civil RICO and conspiracy to violate RICO claims brought by Franco and Chazen.[2]

Subscriber Plaintiffs allege that Cigna violated its ERISA plan and statutory obligations when it made benefit determinations based on flawed UCR data.  They claim that it was an abuse of Cigna's discretion under the applicable plans and a breach of its fiduciary duty to beneficiaries to use Ingenix data, which they maintain Cigna knew was completely incapable of supplying a UCR figure which complied with the plan standard for paying ONET claims. According to

---

[2] The Nelsons' RICO claims were dismissed for lack of statutory standing.

6

Subscriber Plaintiffs, the flawed nature of Ingenix and its inherent inability to yield an accurate UCR lies, in part, in its use of "contributed" data. Ingenix created a database of provider charges using data contributed by major health insurance companies, including Cigna, and other payors, such as self-funded groups and managed care organizations. Subscriber Plaintiffs take the position that the evidence shows that the database compiled by Ingenix could not satisfy the Cigna plans' UCR definition because it neither captured "all" or "most" amounts charged by providers in any particular geographical area nor based its schedules of provider charges on a random sample from which statistically accurate figures could be inferred. As such, Subscriber Plaintiffs maintain that Cigna failed to pay ONET benefits based on a standard reflecting the "normal charge made by most providers of such service or supply in the geographic area where the service is received" (Chazen and Nelson plan) or "all charges made by providers of such service or supply in the geographic area where it is received " (Franco plan) as the plans' terms expressly require. Their ERISA claims, to recover unpaid benefits and for breach of fiduciary duty, seek relief for the alleged misconduct of "systematically making UCR determinations that reduced the allowable amount without valid or compliant data to support such determinations." (Consol. Am. Compl., ¶ 78.)

As to the RICO claims, Subscriber Plaintiffs allege that the insurance companies that contributed data on provider charges to Ingenix are the very same payors to which Ingenix sells the database information for claims processing. They allege that Cigna contributed data to Ingenix containing inaccuracies, such as false information about the geographic area where the service giving rise to the provider charge was performed, and that Ingenix took no steps to audit the data, despite its awareness that it was flawed. They further allege that Ingenix provided

discounts on the licensing fee it charged payors, such as Cigna, based on the volume of data contributed by the payor.  According to Subscriber Plaintiffs, there is proof of a long-standing contractual relationship between Cigna and Ingenix and of their regular exchange of data, which will demonstrate the existence of the Cigna-Ingenix Enterprise.  This Enterprise, according to Plaintiffs, facilitated the creation, use and defense of an invalid database to underpay ONET benefits to Cigna plan subscribers.

### C.    Classes Seeking Certification

According to Subscriber Plaintiffs' brief, the instant Rule 23 motion requests that the Court certify two classes: a Subscriber ERISA Class and a Subscriber RICO class.

The Subscriber ERISA Class is defined as:

> All persons in the United States who are, or were, from March 1, 1998 through the date set by the Court as the outside class date ("class period"), members in [a] group health care plan insured or administered by CIGNA subject to ERISA who received medical services (including hospital, ambulance, physician, mental health, pharmaceutical, or any other type of medical services or supplies) from a Nonpar provider for which CIGNA (or anyone acting on behalf of CIGNA) allowed less than the provider's billed charge.

(Consol. Am. Compl., ¶ 348.)

The Subscriber RICO class is defined as:

> All persons in the United States who are, or were, from March 1, 1998 through the date set by the Court as the outside class date (RICO Class Period"), members in any health plan insured or administered by CIGNA who received medical services (including hospital, ambulance, physician, mental health, pharmaceutical, or any other type of medical services or supplies) from a Nonpar provider for which CIGNA (or anyone acting on behalf of CIGNA) allowed less than the provider's billed charge.

(Id., ¶ 351.)

## II.   STANDARD FOR CERTIFICATION UNDER RULE 23

Rule 23 of the Federal Rules of Civil Procedure sets forth a two-pronged standard for class certification.  To obtain certification, a plaintiff must demonstrate that the putative class meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which she wishes to proceed on behalf of a class. Fed. R. Civ. P. 23; Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548-49 (2011).  Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a); Behrend v. Comcast Corp., 655 F.3d 182, 189 (3d Cir. 2011), cert. granted in part on other grounds, 80 U.S.L.W. 3442 (U.S. June 25, 2012) (No. 11-864).  In this case, Subscriber Plaintiffs move for certification under Rule 23(b)(3), which applies when the putative class primarily seeks monetary relief.  Dukes, 131 S.Ct. at 2558.  Rule 23(b)(3) sets forth two requirements: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).  "These requirements are known as predominance and superiority."  Behrend, 655 F.3d at 190. Moreover, "[i]t has long been held that Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria." Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 438 (D.N.J. 2009).

In moving for class certification, the plaintiff has the burden of proving by a preponderance of the evidence that all requirements of Rule 23 are met. General Telephone Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2009).  The Supreme Court emphasized in its class certification decision

in Dukes that Rule 23 does not set forth a mere pleading standard; the plaintiff must in fact prove

that the rule's requirements have been satisfied.  Dukes, 131 S.Ct. at 2551.  In considering a

motion for class certification, the court must conduct a rigorous analysis, which will frequently

"entail some overlap with the merits of the plaintiff's underlying claims." Id. (quoting Falcon,

457 U.S. at 160.)  "A class certification decision requires a thorough examination of the factual

and legal allegations."  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154,

166 (3d Cir. 2001)); see also Dukes, 131 S.Ct. at 2551-52 (holding that Rule 23 analysis

generally involves consideration of the factual and legal issues that comprise the plaintiff's cause

of action).  It is essential that a court evaluate the elements of the legal claims "'through the

prism' of Rule 23."  Hydrogen Peroxide, 552 F.3d at 311 (quoting Newton, 259 F.3d at 181). The

Rule 23 analysis indeed "may include a preliminary inquiry into the merits" insofar as the merits

of the claim may be relevant to the class certification analysis.  Hohider v. United Parcel Svc.,

Inc., 574 F.3d 169, 176 (3d Cir. 2009); Hydrogen Peroxide, 552 F.3d at 317.

        The Court's authority to examine the merits of a case on a motion for class certification,

however, should not be overstated.  While a district court may delve beyond the pleadings for the

purpose of determining whether the plaintiff has satisfied Rule 23's requirements, it may not

inquire into the merits in order to determine whether the elements of each claim may be satisfied.

Sullivan v. D.B. Investments, Inc., 667 F.3d 273, 305 (3d Cir. 2011); see also Behrend, 655 F.3d

at 190 ("we are precluded from addressing any merits inquiry unnecessary to making a Rule 23

determination.")  In other words, "[a] court may inquire whether the elements of asserted claims

are capable of proof through common evidence, but lacks authority to adjudge the legal validity

or soundness of the substantive elements of asserted claims."  Sullivan, 667 F.3d at 305.

Consistent with this understanding of a court's role in evaluating whether a class may be certified, the Third Circuit has held that factual findings of the court on a Rule 23 motion are restricted to the question of whether a class may be certified and "do not bind the factfinder on the merits." Hydrogen Peroxide, 552 F.3d at 318.

If the Court finds that the action, or any portion thereof, warrants class certification, its order must "define the class and the class claims, issues, or defenses . . ." Fed.R.Civ.P. 23(c)(1)(B). The Third Circuit has explained that a court cannot comply with this Rule 23 requirement unless the "precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion." Wachtel v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 184 (3d Cir. 2006). The class certification order must not only define the certified class with precision but also include "a clear and complete summary of those claims, issues, or defenses subject to class treatment." Id.

### III.     ERISA Class

Cigna does not contest numerosity under Rule 23(a)(1) or the adequacy of Plaintiffs'

counsel under Rule 23(a)(4).  Because these factors have not been challenged and are not

essential to the Court's decision denying class certification, the Court does not express its

opinion on whether the proposed classes satisfy them.  Instead, it abbreviates its analysis of the

threshold class certification requirements to discuss only commonality and typicality, which have

been addressed by Cigna in its opposition brief.   Following its evaluation of whether the ERISA

class demonstrates commonality and typicality, the Court proceeds to discuss predominance and

superiority, which bring to the fore the intractable management problems that prevent

certification of this action under Rule 23(b)(3).

### A.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

Fed.R.Civ.P. 23(a)(2). "Commonality is informed by the defendant's conduct as to all class

members and any resulting injuries common to all class members." Sullivan, 667 F.3d at 297.

For example, the common issue binding a class together could be presented by a defendant's

course of conduct which subjects the entire class to the same harm. Baby Neal ex. rel. Kantor v.

Casey, 43 F.3d 48, 56-57 (3d Cir. 1994).  A single common issue will suffice to render classwide

adjudication appropriate. Dukes, 131 S.Ct. at 2556.  Merely raising common questions,

however, will not. Id. at 2551.  The Supreme Court's decision in Dukes makes it clear that

commonality demands that a plaintiff demonstrate that the proposed classwide proceeding is

capable of generating "common answers apt to drive the resolution of the litigation." Id.

(quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97,

131–132 (2009)).

Thus, for example, in <u>Dukes</u>, the Court analyzed the commonality requirement of Rule 23 vis-a-vis the Title VII claim for alleged gender discrimination in Wal-Mart's employment decisions. <u>Id.</u> at 2551-52. Prevailing on the merits of that claim, the Court reasoned, would require the plaintiffs to establish that Wal-Mart engaged in a pattern or practice of discrimination. <u>Id.</u> at 2552.  To establish a common question of law or fact among the putative class of female employees claiming a Title VII violation, the Court concluded that the plaintiffs would have to demonstrate that the employment decisions underlying the various alleged instances of discrimination were predicated on a common reason.  <u>Id.</u>  The Court held that "without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*."  <u>Id.</u> (emphasis in original).

In this case, the ERISA Class asserts that Defendant calculated ONET reimbursements from data supplied by Ingenix.  Subscriber Plaintiffs allege, and will attempt to prove at trial, that the Ingenix database was so flawed as to be completely incapable of generating any reliable data concerning what most providers in a relevant geographical area would charge for a health care service.  Their claim that ONET benefits were improperly denied depends on the common question of whether the Ingenix data was significantly inaccurate or faulty.  In other words, the question at the root of the ERISA Class's § 502(a)(1)(B) claim is whether Cigna used a database that was, allegedly, not grounded in real world information.  Similarly, each putative class member's ERISA claim for breach of fiduciary duty centers on the common factual question of whether Ingenix was an irredeemably flawed, corrupted and/or unrealistic database.

13

The "glue" holding the class's ERISA claims together is, in other words, is the common reason why their statutory rights and plan benefits were allegedly denied – the quality of the data on which their respective ONET claims determinations were based.  Subscriber Plaintiffs have demonstrated, as required by Dukes, that a common answer to the factual question of whether the Ingenix database was significantly and pervasively flawed will advance the resolution of the entire class's claims.  The Court finds Rule 23(a)'s commonality requirement satisfied.

### B.      Typicality

Cigna also argues that certification must be denied because none of the named plaintiffs have claims that are typical of the class.  For the sake of completeness, and to address each Rule 23 certification requirement challenged by Cigna, the Court will discuss whether Franco, Chazen and the Nelsons are typical Plaintiffs within the meaning of Rule 23(a)(3).

To meet the typicality requirement, the proposed class representative must show that her interests are aligned with those of the absent class members.  Stewart v. Abraham, 275 F.3d 220, 227 (3d Cir. 2001).  The typicality analysis focuses on whether the named plaintiff's claims "[arise] from the same event or practice or course of conduct that gives rise to the claims of the class members" and are "based on the same legal theory." Baby Neal, 43 F.3d at 58; see also In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 599 (3d Cir. 2009).  Moreover, for the class representative's claims to be considered typical of the class claims, her claims "must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation."  Schering Plough, 589 F.3d at 599.  If these criteria are met, the named plaintiff's claims may be considered typical, in common sense terms, of the claims of the class, notwithstanding factual differences between the named plaintiff's claims and those of the

14

absent class members. Baby Neal, 43 F.3d at 58; see also Beck v. Maximus, Inc., 457 F.3d 291, 295-96 (3d Cir. 2006) (citing Baby Neal for typicality standard).

The Court finds that the named Subscriber Plaintiffs satisfy Rule 23(a)(3).  Clearly, each of their ERISA claims arise from Cigna's alleged improper ONET benefits determinations based on Ingenix data to supply the UCR for the services they obtained from Nonpars.  The legal issues that will determine the named Plaintiffs' claims will govern those of the absent class members as well.

Cigna's arguments that certain unique circumstances of each named Plaintiffs' situation subject them to defenses that are not widely applicable are unavailing.  Cigna reiterates that Franco received a full payoff of her Nonpars' billed charges, which, it claims, eliminates her financial incentive to pursue the ERISA claims.  It also attempts to distinguish her claim as unique by pointing out that Franco's ONET services had been pre-approved by Cigna as in-network claims.  The Court, however, has previously dealt with and rejected the mooting of Franco's claims by virtue of Cigna's February 2008 payment of the balance of the medical bills associated with her claims for relief.  See Franco v. Conn. Gen. Life Ins. Co., No. 07-6039 (FSH), 2008 WL 3399644,  at *5-6 (D.N.J. Aug. 6, 2008); Franco v. Conn. Gen. Life Ins. Co., 818 F. Supp. 2d 792, 815-16 (D.N.J. 2011) (citing Weiss v. Regal Collections, 385 F.3d 337, 348 (3d Cir. 2004). For the same reasons that this payment did not extinguish her claims, the Court now holds that it does not render them atypical of the class claims.  Moreover, as the Court also previously noted, the record indicates that her claims were treated by Cigna as ONET claims and that her benefits were determined based on the UCR standard using Ingenix. Franco, 2008 WL 3399644, at *4-5.  The course of conduct – Horizon's use of Ingenix to determine ONET

reimbursement – and the legal theories on which Franco's claims are based are the same as those of the class she seeks to represent.  Cigna's payment of her bills after the commencement of this class action litigation does not subject Franco's ERISA claims to unique defenses that threaten to become the focus of the suit, as it remains that her claims for reimbursement of Nonpar services were treated on an ONET basis and allegedly handled in violation of the plan UCR standard, just like the claims of the absent class members.

For similar reasons, the ERISA claims pursued by Chazen are not atypical.  Chazen claims he received an adverse benefit determination, based on Ingenix, for the shoulder surgery he underwent with a Nonpar. Cigna argues that Chazen's settlement award in an unrelated products liability suit against the manufacturer of sports equipment which allegedly caused his shoulder injury somehow eliminates his right to pursue Cigna for its alleged ERISA violations. Cigna maintains that Chazen has no right to relief because, in its view, he has already recouped in excess of the Nonpar's billed charge.  This argument simply makes no sense.  The settlement money Chazen has received has nothing to do with the wrongdoing allegedly committed by Cigna under ERISA but rather was directed to compensating Chazen for a separate and distinct harm, that is, his shoulder injury.  His receipt of monies in settlement of personal injuries he sustained neither extinguishes his ERISA claims against Cigna for its alleged abuse of plan discretion and breach of fiduciary duty nor destroys the legal and factual resemblance of his claims to those of the rest of the class that allegedly received similarly improper ONET benefits.

The Nelsons similarly received allegedly improper benefits determinations based on Ingenix.  Their Nonpar's decision to forgive the balance on her billed charges may go to the issue of the ultimate recovery that they may be awarded for any proven ERISA violation, as the Court

discusses in more detail below, but it does not subject their ERISA claims to a unique defense that would render their claims atypical of the class claims. Cigna's contention that the Nelsons' failure to exhaust administrative remedies could defeat their claims and thus distinguishes their claims from those of the rest of the class is also unavailing, as the exhaustion prerequisite to an ERISA action presents a classwide issue, for reasons the Court will discuss in section D below. Finally, Cigna's argument relying on the Nelsons' execution of "assignment of benefits" forms in favor of the Nonpar does not destroy typicality. Cigna maintains that the Nelsons' relinquished their rights under their ERISA plan and therefore have no standing to pursue the ERISA claims, but a review of these forms indicates that they merely directed Cigna to pay the ONET benefit directly to the Nonpar, rather than sending the reimbursement check to the plan member.

In short, the Court concludes that Subscriber Plaintiffs have demonstrated that each of the named class representatives have claims that are sufficiently similar to those of the class sufficient to satisfy Rule 23(a)(3)'s typicality requirement.

### C.    Predominance

Rule 23(b)(3) certification requires that issues common to the class predominate over those affecting only individual class members. Predominance is similar to Rule 23(a)(2)'s requirement of commonality in that both are concerned with ensuring that the putative class presents common questions of law of fact. Indeed, the Rule 23(a) commonality requirement is generally regarded as subsumed by the more stringent Rule 23(b)(3) predominance requirement. Sullivan, 667 F.3d at 297. Predominance, however, imposes a "far more demanding standard," as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 266 (3d Cir. 2009) (quoting

17

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)).  A class of plaintiffs seeking to

try claims by representation pursuant to Rule 23(b)(3) may satisfy the predominance

requirements only when the plaintiffs "demonstrate that the element[s] of their claim [are]

capable of proof at trial through evidence that is common to the class rather than individual to its

members." Hydrogen Peroxide, 552 F.3d at 311-12; cf. Sullivan, 667 F.3d at 303 (holding that

analysis of whether settlement class satisfies predominance requirement need not be concerned

with manageability of trial and therefore possible variations that proving claims might present do

not defeat certification).

The stringent nature of the predominance requirement reflects the paramount Rule 23

concern with the manageability of the proposed litigation.  See Sullivan, 667 F.3d 302-03 (noting

that "the concern for manageability is a central tenet in the certification of a litigation class").  In

Sullivan, the Third Circuit emphasized this "'key'" distinction between certification of a class for

settlement versus certification for purposes of litigation."  Id. at 303.  It reasoned that while the

Rule 23 requirements must be satisfied by any class seeking certification, be it for purposes of

settlement or trial, the challenges inherent in proving claims with legal and factual variations

disappear when the proposal is for certification of a settlement class. Id. at 303-04, 322 n.56.

Guided by the Supreme Court's holding in Amchem and its own analysis in Warfarin, the Third

Circuit held that manageability issues that may be presented by such differences or

inconsistencies among putative class members' claims are not pertinent to a Rule 23(b) analysis

of predominance without the specter of a trial.  Id. at 303-04.  Not so, however, when a court

must predict how the varying claims will be established at trial. Id. at 303.  The Third Circuit's

discussion in Sullivan makes it equally clear that while manageability concerns may be obviated

in a class postured for settlement, they impact the predominance requirement of Rule 23(b)(3) in the litigation context. Id. at 303-04.

With these principles in mind, the Court concludes that Subscriber Plaintiffs have not shown by a preponderance of the evidence that common questions as to either liability or damages will predominate over individual ones.

      1.    ERISA liability issues

As Dukes and Hydrogen Peroxide teach, this Court must conduct its Rule 23 analysis with a clear understanding of the liability issues the ERISA class will have to address at trial. Dukes, 131 S.Ct. at 2552; Hydrogen Peroxide, 552 F.3d at 311. ERISA § 502(a)(1)(B) authorizes a plan participant or beneficiary to bring a claim to recover benefits due to him or her under plan terms. 29 U.S.C. § 1132(a)(1)(B); see also Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (holding same). To prevail on this claim, Subscriber Plaintiffs must establish that each member of the class "has a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (quoting Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006)). While the Court of Appeals has recognized that a § 502(a)(1)(B) claim "in essence, is the assertion of a contractual right," Burstein v. Retirement Account Plan for Employees of Allegheny, 354 F.3d 365, 381 (3d Cir. 2003) (quoting Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir.2002)), it has also stressed that the claim is not a common law breach of contract claim. See Hooven, 465 F.3d at 572-73 (holding that while contract principles apply in ERISA cases, a plaintiff's right to relief for allegedly denied benefits is not grounded in contract law); see also Burstein, 334 F.3d at 381 (holding that ERISA § 502(a)(1)(B) claims are governed

by a "federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions.").

Importantly, it is well-established that when the governing ERISA plan "gives [its] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a court must review a denial of benefits under an "arbitrary and capricious" standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Fleisher, 679 F.3d at 120-21 (citing Firestone and its progeny). The Third Circuit Court of Appeals has defined the task of the reviewing court as follows:

> We review a challenge by a participant to a termination of benefits under ERISA § 502(a)(1)(B) under an arbitrary and capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility for benefits. An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.

Miller, 632 F.3d at 844-845 (citations omitted). "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'" Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (quoting Daniels v. Anchor Hocking Corp., 758 F.Supp. 326, 331 (W.D. Pa.1991)). In other words, a court reviewing a plan administrator's interpretation of a plan under the highly deferential arbitrary and capricious standard should not disturb the administrator's decision unless it is unreasonable. Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir.1997); see also Funk v. CIGNA Group Ins., 648 F.3d 182, 190 (3d Cir. 2011) (summarizing standard applicable to an ERISA § 502(a)(1)(B) claim).

20

In Metropolitan Life Insurance Company v. Glenn, the Supreme Court reaffirmed its

adherence to the arbitrary and capricious standard of review it adopted in Firestone.  Metro. Life

Ins. Co. v. Glenn, 554 U.S. 105, 115-16 (2008).  The Glenn Court focused on the question of

how the deference afforded to an administrator might be affected by the inherent conflict of

interest a plan administrator faces in paying and evaluating claims, even when it is administering

a self-insured's funds.  Id. at 112.  The Supreme Court noted that in Firestone, it held that "a

conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'"

Id. at 115 (quoting Firestone, 489 U.S. at 115).  The Glenn Court stressed that the conflict does

not diminish the deference owed to the administrator's decision or turn the standard into one for

de novo review.  Id. at 115-16.  The standard of review, in other words, continues to be "abuse of

discretion."  Id.  Rather, Glenn explained that the conflict is but one of the many factors a court

may take into consideration when reviewing whether the administrator has applied plan terms

unreasonably.  Id. at 117.  The Court held:

> We believe that Firestone means what the word 'factor' implies, namely,
> that when judges review the lawfulness of benefit denials, they will often
> take account of several different considerations of which a conflict of
> interest is one.  This kind of review is no stranger to the judicial system.
> Not only trust law, but also administrative law, can ask judges to
> determine lawfulness by taking account of several different, often case-
> specific factors, reaching a result by weighing all together.

Id.

Prior to Glenn, the Third Circuit had "employed a 'sliding scale' standard of review,

where the level of conflict would influence the intensity of arbitrary and capricious review."

Miller, 632 F.3d at 845 n.3  In light of Glenn's holding, the Third Circuit rejected the sliding

scale as invalid and held that a court reviewing a benefits decision under an ERISA plan must

"apply a deferential abuse of discretion standard across the board and consider any conflict of

interest as one of several factors in considering whether the administrator or the fiduciary abused

its discretion."  Id. (quoting Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009)).

  The critical liability questions presented by the ERISA claims depend on plan language.

In other words, resolution of the ERISA claims requires an examination of what ONET benefits a

plan entitled a participant or beneficiary to receive and what authority a plan allowed the

administrator or fiduciary in determining eligibility for benefits.  Predominance as to factual or

legal issues therefore depends on uniformity or at least substantial similarity in key plan language

as to the entire ERISA Class.  Subscriber Plaintiffs have not demonstrated that establishing this

aspect of the alleged ERISA violations will be manageable at trial.

  Throughout their briefs, Subscriber Plaintiffs presuppose the existence of a "Standard

UCR Definition" in Cigna plans. The record before the Court is sparse on proof that Cigna either

formally adopted a "standard" definition of UCR or in practice used the same or substantially

similar language across plans.  Apart from the three plans of the named Subscriber Plaintiffs,

Plaintiffs proffer two pieces of evidence: an internal email exchange among Cigna employees

which discusses the term "reasonable and customary" as generally meaning the amount charged

by most providers for a service in a given geographical area and a manual presented to call center

employees concerning how to handle calls about claims, which instructed that the terms

"reasonable and customary" or UCR had such a meaning.  These proofs, however, do not

establish any uniformity among plans as to actual plan language, on which the § 502(a)(1)(B)

claims must necessarily be based.  Indeed, the email exchange cited by Subscriber Plaintiffs

belies their attempt to establish the existence of a standard definition without reference to the

plans themselves.  The Cigna employees participating in the exchange are discussing a particular

plan sponsor's account.  The portion cited begins with a question from the vice president of

national accounts asking "[f]or each plan, how does the plan define the term reasonable and

customary?" (Quackenbos Decl., Ex.2 at 3. ) Later, in trying to get an answer to this question, an

attorney from the law department asks others as follows: "Ricci, do you have a 'standard'

definition of R/U & C"?  I know it is dependent upon the plan language, but if you have a

standard definition, that would be helpful, Thanks!"  (Id. at 1.) Once a definition is found, the

attorney circulates it to the intended recipients within Cigna with the following statement: "Of

note: Gloria found this definition in the [plan sponsor's] SPD."  (Id.)  The mere use, somewhat

colloquially, of the phrase "standard definition" in one email exchange hardly establishes that

Cigna plans during the class period actually employed standard language with regard to ONET

and UCR.  If anything, the evidence provided by Subscriber Plaintiffs underscores that the

language is plan-specific.

Cigna, in opposition to the motion, has denied that it adopted a "standard" definition,

arguing that while Cigna plans during the putative class period did generally provide for ONET

benefits to be determined according to UCR, the term UCR was defined in a number of different

ways.  Cigna points to definitions as varied as providing that UCR will be determined using "a

fee schedule developed by [Cigna] that is based upon a methodology similar to a methodology

utilized by Medicare" to UCR definitions that state that "the nature and severity of the injury or

sickness will be considered." (Def. Br. at 6.) It also notes that some plans, such as those applicable to named plaintiffs Chazen and the Nelsons, explicitly call for UCR to be obtained from the Ingenix database while others allow Cigna to select a third-party database.

In this regard, it bears repeating that Subscriber Plaintiffs bear the burden of proving, based on evidence, that their proposed class satisfies the requirements of Rule 23. Dukes, 131 S.Ct. at 2551. To obtain certification under Rule 23(b)(3), they must demonstrate that the Cigna plan members, on whose behalf they wish to litigate the claim that Cigna's use of Ingenix violated the members' plan and statutory rights, form a cohesive group. Absent from the record, however, is any indication, as discussed above, that the critical UCR provision was uniform. Alternatively, assuming that the class could be redefined to incorporate the plan language that would join putative members together in their claimed ERISA violations, Subscriber Plaintiffs have provided no indication as to how many plans defined the ONET benefit in a manner that would even provide a basis for claiming the ERISA violations at issue in this action. Indeed, this lack of evidence proffered by Subscriber Plaintiffs to establish the existence of a class is highlighted by Cigna's point that it has made a variety of plans available, providing for the payment of ONET claims according to differing standards of reimbursement.

The problems with evaluating the ERISA claims on a classwide basis are amplified by the standard of review the Court must apply in reviewing the allegedly unlawful ONET benefits determinations. Assuming that the Subscriber Plaintiffs could overcome the foregoing impediment to manageability by, for example, defining the ERISA class with respect to particular plan language and/or creating subclasses to address variations in UCR definitions, the Court is

still left with the question of how Subscriber Plaintiffs could establish abuse of discretion based on common evidence.  For the ERISA Class to prove its claim to recover unpaid benefits and/or enforce plan terms, it is not enough to establish that Ingenix was invalid to determine UCR as defined in the plans.  In this case, in which both Subscriber Plaintiffs and Cigna submit that the Cigna plans at issue give Cigna discretion to interpret plan terms,[3] the ERISA Class's § 502(a)(1)(B) claims are valid only if Subscriber Plaintiffs can establish that Cigna misapplied plan terms in an abuse of its discretion under each class member's applicable plan.  The abuse of discretion inquiry, however, is a multi-factored one, dependent upon the facts and circumstances of each case and benefits determination.  Glenn, 554 U.S. at 116-17; Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 526 (3d Cir. 2009).  In rejecting the sliding-scale approach for determining the level of scrutiny to be given to a benefits decision under an abuse of discretion standard, the Third Circuit also noted the Supreme Court's instruction in Glenn that a proper review must take into consideration the unique facts and circumstances of each benefits determination.  Schwing, 562 F.3d at 526 (citing Glenn, 554 U.S. at 116).  The Court of Appeals held that "[a]s Glenn recognized, benefits determinations arise in many different contexts and circumstances, and therefore, the factors to be considered will be varied and case-specific."  Id.

Subscriber Plaintiffs have not addressed in their motion for class certification how they propose to establish a critical liability question – did Cigna's use of Ingenix constitute an abuse of discretion – on a classwide basis.  The sui generis nature of this question would appear to be underscored by variations in plan language with regard to the data source that Cigna may use to

---

[3] See Pl. Br. at 29; Def. Br. at 28.

25

obtain UCR information.  As Cigna highlights, sometimes plans expressly authorized Cigna to use Ingenix, as the Nelson plan illustrates, or required the use of Ingenix in compliance with governing state regulations, as was the case in the adverse benefit determination challenged by Chazen.[4]  The Court cannot even begin an analysis of whether a benefits determination was made in abuse of Cigna's discretion under the plan without evidence demonstrating what criteria factored into calculating an allowed amount.  Subscriber Plaintiffs do not demonstrate, by a preponderance of the evidence, that uniform or roughly equivalent criteria were used across the board, such that a common abuse of discretion analysis could be applied classwide.

The same concerns regarding cohesiveness, or rather Subscriber Plaintiffs' failure to establish cohesiveness of the ERISA Class, hold true for the breach of fiduciary duty claim.  This claim is based on the contention that Cigna's Ingenix-based ONET determinations violated its duty to act in the interests of its plan members.  The scope of Cigna's duty, and the issue of whether it was violated, must center on the parties' rights and responsibilities according to the applicable plan.

2.      ERISA damages issues

In addition to these impediments, the ERISA Class suffers from another glaring deficiency preventing certification under Rule 23(b)(3): Subscriber Plaintiffs have not demonstrated that each class member's recovery could be adjudicated on a classwide basis.  Even if they could establish that all putative ERISA class members have been affected by the same

---

[4] Cigna points specifically to New Jersey Department of Banking and Insurance Regulations which required that small employer health plans, such as Chazen's, determine the allowed charge for an ONET service using Ingenix.  See N.J.A.C. 11:21-7.13.

allegedly wrongful conduct – Cigna's use of Ingenix in an abuse of its plan discretion – based on common proof, Subscriber Plaintiffs have not shown that common questions as to the measure of damages will predominate over individual ones.

Consistent with Third Circuit law, the ERISA Class cannot be certified under Rule 23(b)(3) unless Subscriber Plaintiffs establish, by a preponderance of the evidence, that the injury suffered by class members is measurable on a classwide basis using common proof. Behrend, 655 F.3d at 203-04 (citing Hydrogren Peroxide, 552 F.3d at 325). The amount of damages to which each class member may be entitled may understandably differ, and such minor variation among the class will not by itself defeat certification. Id. at 204. Some standard methodology by which those amounts could be calculated must, however, be established. Id. at 207; see also Agostino, 256 F.R.D. at 476 (analyzing certification of subclass under Rule 23(b)(3) and finding that common questions predominated over individual ones, as "Plaintiffs have persuaded the Court that any damage calculations, though unique to each prospective Subclass member, can be easily ascertained using a standard methodology.").

Subscriber Plaintiffs argue that determining class damages is as simple as reprocessing the Ingenix-based ONET claims of class members in an automated way to calculate the difference between the Ingenix-based reimbursement and the provider's billed charge for the service. They contend that Cigna's computerized system maintains detailed claims data for nearly the entire Class Period that includes the information necessary to calculate the amount of damages: the member's identifying information, the provider of the service, billed charge, and any applicable member responsibility for the service, such as deductible, co-payment and

coinsurance.  Subscriber Plaintiffs, no doubt, have demonstrated the components for some

hypothetical damages methodology.  The question is, what factual basis is there for the formula

they maintain governs each class member's right to relief?  The standard method Subscriber

Plaintiffs have proposed to ascertain damages without the need to look at the circumstances of

each ONET claim depends on the assumption that, having been denied an ONET benefit based

on an accurate UCR, as plan terms require, plan members are entitled to an ONET benefit in the

amount of the billed charge for the service.  They argue that all plans establish two possible

measures of the allowed amount on an ONET claim – the billed charge or the "normal charge

made by most providers or such service or supply in the geographic area where the service is

received."  This statement, however, lacks factual support in two key regards.

      First, the record lacks proof to establish, by a preponderance standard, that, all Cigna

plans set forth this "either-or" method of determining ONET benefits, which would arguably

entitle the entire class to the alternative measure of ONET reimbursement in the amount of the

provider's billed charge, less any deductible and co-insurance.  Throughout their briefs,

Subscriber Plaintiffs presuppose existence of a "Standard UCR Definition" in Cigna plans.  As

the Court has discussed, although the Subscriber Plaintiffs treat the UCR definitions used in their

respective plans as Cigna plan boilerplate, the record does not establish that such a standard

definition was uniformly used, without modification, across ERISA plans insured and/or

administered by Cigna.

      Second, even assuming that Subscriber Plaintiffs had demonstrated that the language used

in their plans' ONET benefit provisions was used widely by Cigna, such that an appropriate

damages model could be designed according to that language, they could not persuade this Court

that their theory of classwide proof is plausible.  The plans in the record, that is, the named

Plaintiffs' plans, do not use the term "billed charge."  Franco's plan provides that reasonable and

customary means that the charge is the "*normal* charge made by the provider for a similar service

or supply; and it does not exceed the normal charge made by most providers . . . ."  (Quackenbos

Decl., Ex. 3 at 93.)  Likewise, the ONET provision in Chazen's plan and the Nelsons' plan does

not refer to a  "billed charge."   Instead, their plans provide that ONET services will be

reimbursed based on the lesser of "the provider's *normal* charge for a similar service or supply;

or the policyholder-selected percentile of all charges made by providers of such service or supply

. . . ."  (Id., Ex. 4 at 64.)   Subscriber Plaintiffs point to no single plan, much less to "standard"

plan language that might apply classwide, that entitles a plan beneficiary to the provider's billed

charge on an ONET claim.  The damages model they propose, in other words, simply has no

connection to the facts of this case.

   According to the plans of the Subscriber Plaintiffs, ONET claims may be based on "the

normal charge" of "the provider" of the service underlying the claim, so long as that charge does

not exceed the UCR for the service.  Guided by plan language, as the Court must be in

determining the parties rights and obligations, the Court would have to review each claim to

determine, in the first instance, what the class member's provider *normally* charges for the

underlying service or supply.  This exercise would require an individualized inquiry into each

class member, each ONET claim, each service or supply associated with that ONET claim, and

the billing records of each provider who rendered the service to determine what he or she

29

normally charges.  That "normal charge" – not the "billed charge" – is the key factor in the damages formula supported by plan language, but it is not readily ascertainable without, essentially, a minitrial.  Only then could each ONET claim be re-processed.

The distinction between the terms "billed charge" and "normal charge" is not, in this Court's view, merely semantic or hypothetical.  The amount billed by a Nonpar on any given Cigna plan member's particular service could, for example, far exceed that provider's "normal" charge if the provider has a practice of charging his non-insured patients a lower fee than insured patients for the same service or if the provider has a practice of forgiving or "writing off" the un-reimbursed balances of his insured patients, as the Nonpar who rendered services to the Nelsons did with regard to the portion of the bill not covered by the Cigna ONET benefit payment.  Quite arguably, in the latter scenario, the provider's normal charge might amount to no more than an insurance carrier's reimbursement.  The varying ways in which any given provider might bill illustrates the difficulty of determining what a "normal charge" for a service is and the impossibility of doing so without a case-by-case and fact-intensive inquiry.

Subscriber Plaintiffs have argued, in their opening brief, that any challenge that might be raised by Cigna to their proposed damages methodology would fall outside the Court's purview on a motion for class certification because, as the Third Circuit held in Behrend, it is not appropriate to examine the merits of a party's damages methodology on a motion for class action certification. Behrend, 655 F.3d at 206-07.  Behrend does not, however, stand for the proposition, as Subscriber Plaintiffs suggest, that the manner in which class damages will measured at trial is a question insulated from Rule 23 scrutiny.  The context of the Behrend opinion bears noting.

That antitrust action, by its nature, required on its merits some viable theory of anticompetitive impact on class members, and the plaintiffs had proffered an expert to present a damages model to measure the antitrust injury.  Id. at 203-205.  The Behrend court rejected as irrelevant to the class certification motion defendant Comcast's criticisms regarding the merits of the plaintiffs' theory of antitrust injury and their damages model.  Id. 206-07.  The proper focus of the district court on the Rule 23 motion had been, the Court of Appeals held, on whether the proposed approach would enable the plaintiffs to prove classwide damages based on common proof.  Id. at 207.

The problems discussed by this Court with Subscriber Plaintiffs' proposed measure of classwide damages on the ERISA claims fall squarely within its responsibility on a class certification motion.  The Court does not question the validity of Subscriber Plaintiffs' theory that, if liability is established, damages on the ERISA claims would be measured based a plan member's bargained-for coverage under the plan.  Its concern, rather, goes to the fundamental Rule 23 requirement that a class seeking certification under (b)(3) establish that it is possible to prove damages at trial through evidence that is common to the class.  Hydrogen Peroxide, 552 F.3d at 311.  Hydrogen Peroxide requires that, insofar as the merits of a claim bear on a Rule 23 issue, they must be examined by the Court. Id. at 317; see also Dukes, 131 S.Ct. at 2551 (holding that Rule 23 analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim.").  Accordingly, as to the ERISA claims, the Court must consider whether damages are capable of proof through common evidence by reference to the governing ERISA plan.  Assuming all plans applicable to the ERISA class contain language which is identical or

31

substantially similar to the named Plaintiffs' plans, two alternate measures of damages may be used to remedy a benefits determination in violation of the plan and ERISA law: 1) recalculation of benefits based on a plan-compliant UCR, that is, an award based on the difference between the adverse benefits determination and an allowed amount grounded in a valid UCR or 2) calculation of the difference between the improper ONET reimbursement and the amount normally charged by the provider for the underlying service.  As to the first, Subscriber Plaintiffs make no effort to demonstrate what a statistically accurate database of provider charges would yield in UCR information.  While Subscriber Plaintiffs had served a report by their damages expert, Stephen Foreman, purporting to provide a measure of damages based on "corrected" UCR figures, they have since abandoned that portion of Foreman's opinion.  As to the second of the possible measures, Subscriber Plaintiffs could theoretically submit proof of each provider's bills to demonstrate the amount that provider normally charges for a service. They have made no attempt to demonstrate to this Court that they could establish classwide damages based on that method, with good reason in light of the overwhelming number of individual issues such a measure would entail.

Instead, Subscriber Plaintiffs propose a measure of damages based upon the difference between the billed charge and the amount reimbursed.  This proposed measure bears no relation to the plans on which the ERISA claims rely.  Subscriber Plaintiffs have not presented a single plan that states that a provider's billed charge may serve as an alternate basis for paying ONET claims, much less any evidence that this payment standard appeared in the plans of putative class members generally, such that their model can satisfy their burden of proving that common

32

damages questions predominate over individual ones.  As such, they have failed to establish that relief for the alleged improper benefits determinations and/or breaches of fiduciary duty to Cigna plan members are "capable of proof at trial through evidence that is common to the class rather than individual to its members." Hydrogen Peroxide, 552 F.3d at 311.

To obtain certification and try the ERISA claims as a class, Subscriber Plaintiffs must propose a viable method by which the Court can determine the benefit amount Cigna is actually obligated to pay each class member. The Supreme Court's opinion in Dukes makes clear that this, however, cannot be achieved at the expense of precision or of actual proof of an individual class member's legal right to a damages award.  In rejecting a "trial by formula" to determine a putative class's backpay award on a Title VII employment discrimination claim, the Court held that a defendant is entitled to an individualized determination of the remedy to which each class member is entitled.  Dukes, 131 S.Ct. at 2561.  It reasoned that the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." Id. (quoting 28 U.S.C. § 2072(b)).  In this case, the Court cannot allow the ERISA Class to proceed to trial based on the assumption that the plans governing the claims of the entire class membership entitle all subscribers to ONET reimbursement based on the provider's billed charge.  Apart from its basis in speculation rather than in evidence, such an approach cannot be sanctioned under Rule 23 because it would deprive Cigna the opportunity for an accurate analysis of the amount necessary to make each class member whole and would threaten to modify the parties' rights under ERISA.

Subscriber Plaintiffs have not presented a workable framework that would permit the Court to adjudicate a monetary award for the alleged ERISA violations without considering the

individual plans, claims and ONET services of each class member. The trial plan proposed by Subscriber Plaintiffs conclusorily asserts that damages can be determined on an aggregate basis, based on the computerized records of Cigna, but fails to demonstrate how Cigna can simply "reprocess benefits not using flawed Ingenix data."  In other words, the Court is still left with the question – what data will that re-processing require?

The instant motion for class certification, in short, does not carry Subscriber Plaintiffs' burden of demonstrating how the case can be tried in a manageable manner. See Sullivan, 667 F.3d at 335 (Scirica, J., concurring) ("A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof."). For the reasons discussed, it appears to the Court that individual issues of both liability and damages would overwhelm the trial of this action. Subscriber Plaintiffs have not met Rule 23(b)(3)'s standard for certification of this litigation class action.[5]

---

[5] The Court notes that Subscriber Plaintiffs' Rule 23(b)(3) motion has consistently relied on the class certification decision issued by the Honorable Faith S. Hochberg in Wachtel v. Guardian Life Ins. Co. as authority for this putative class's satisfaction of the various certification requirements.  Wachtel indeed involved similar ERISA claims brought by health benefits plan members against their insurance company for the allegedly improper determination of ONET claims based on UCRs obtained from Ingenix's database.  See Wachtel v. Guardian Life Ins. Co., 223 F.R.D. 196 (D.N.J. 2004).  Subscriber Plaintiffs overstate, however, the applicability of the district court's class certification analysis in Wachtel.   Despite its superficial similarity to the matters before this Court, the Rule 23(b)(3) certification granted in the Wachtel action does not compel certification in this case.

In particular, Judge Hochberg's class certification ruling was based on a different factual record than the one before this Court.  Indeed, Judge Hochberg specifically concluded that "[d]efintions of UCR in Health Net's plans in different states are similar" based upon the plaintiffs' presentation of evidence concerning plan documents.  Wachtel, 223 F.R.D. at 202.  In contrast, the evidence presented in these proceedings makes it apparent that Subscriber Plaintiffs have woefully failed to meet their burden of demonstrating that fact.  With respect to the considerations of manageability, superiority and predominance concerning the damages issue,

D.      **Superiority**

For similar reasons, the indication that a trial on the ERISA claims would not be

manageable prevents this Court from concluding that the class action vehicle would be a superior

manner of resolving the claims.  In determining whether the superiority requirement is met, a

court may take into consideration the following factors: (1) the class members' interests in

_____

Judge Hochberg indeed concluded that damages could be calculated by a relatively mechanical
reprocessing of claims. However, it is not at all clear that the same arguments and facts presented
to this Court were presented to Judge Hochberg in Wachtel.  Suffice it to say that, on the basis of
the record in this proceeding, the Court is not satisfied that Subscriber Plaintiffs have adequately
demonstrated that damages could be determined without an unmanageable quantity of minitrials.

The Court also notes that the procedural history of Wachtel precluded the Third Circuit
from ruling on many of the class certification issues that are before this Court.  In 2004, Judge
Hochberg initially certified two classes, one represented by named plaintiffs the Wachtels and
one by named plaintiff McCoy, after consideration of the various Rule 23(b)(3) requirements.
That decision was appealed to the Third Circuit.  On June 30, 2006, the Court of Appeals vacated
the district court's order certifying the Rule 23(b)(3) classes.  Wachtel v. Guardian Life Ins. Co.
of Am., 453 F.3d 179 (3d Cir. 2006).  The order was vacated for failure to define class issues,
claims and defenses as required by Rule 23(c)(1)(B).  Id. 185 (3d Cir. 2006).  Importantly, the
Third Circuit did not reach any issues regarding the Rule 23(a) and (b)(3) requirements or review
the district court's findings that the requirements had been satisfied.  Indeed, it expressly noted
that although the defendants had argued that the district court had erroneously determined that
the predominance requirement of Rule 23(b)(3) had been met, the Court of Appeals would not
address such an argument in its opinion because "such analysis is best conducted with the benefit
of a clear initial definition of the claims, issues, and defenses to be treated on a class basis and
because we are remanding for further proceedings."  Id. at 181 n.1.

On remand to the district court, Judge Hochberg issued an order consistent with the Third
Circuit's mandate that the class claims, issues and defenses be identified.  See Wachtel v. Health
Net, Inc., Civil Action No. 01-4183, docket entry 551 (D.N.J. Sept. 28, 2006).  In that order,
Judge Hochberg expressly adopted by reference her prior findings and rulings regarding class
certification.  Subsequently, the Wachtel action settled.  The Third Circuit never reviewed Judge
Hochberg's decisions concerning predominance and superiority, and this Court therefor does not
have the benefit of the Third Circuit's guidance.

individually controlling the prosecution or defense of separate actions; (2) the extent and nature

of any litigation concerning the controversy already begun by or against class members; (3) the

desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in

managing a class action. Fed.R.Civ.P. 23(b)(3).  This list is not exhaustive, and courts may

consider other pertinent factors in deciding whether a case is suited to class certification.

Amchem, 521 U.S. at 615-16. While Cigna has not directly opposed Subscriber Plaintiffs'

motion for class certification on the grounds that they have failed to establish superiority, it has

raised a host of challenges that Subscriber Plaintiffs would face at trial in the attempt to obtain

classwide relief in a cohesive and manageable manner.  As the foregoing discussion makes clear,

the Court is not satisfied that trying the ERISA claims as a class would constitute "the best

'available method for the fair and efficient adjudication of the controversy.'"  Newton, 259 F.3d

at 191 (quoting Fed.R.Civ.P. 23(b)(3)).

       **E.**      **Class Definition**

      The deficiencies discussed above, in and of themselves, defeat Plaintiffs' attempt to

certify the ERISA class.  The Court nevertheless turns to another substantial issue raised by

Cigna in opposition to the Rule 23(b)(3) motion – Plaintiffs' definition of the proposed ERISA

Class.  Defendant argues that the definition fails to satisfy Rule 23 because it is both overbroad

and incapable of determining class membership without exploring the merits of each putative

class member's ERISA claim. The Court agrees.

      Third Circuit jurisprudence on class actions recognizes that, in addition to the explicit

requirements enumerated in Rule 23(a) and (b), class certification entails satisfaction of the

implicit "essential prerequisite . . . that the class must be currently and readily ascertainable based on objective criteria." Marcus, 687 F.3d at 592-93; see also Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1760 at 139-140 (3d ed. 2005) ("the requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.")  A proposed class must be identifiable without being overbroad. Rowe v. E.I. Dupont De Nemours and Co., 262 F.R.D. 451, 455 (D.N.J. 2009). Appropriate class definitions must be tailored to the specifics of a case and must have some relation to the defendant's allegedly wrongful activities.  Id.  In Marcus v. BMW of North America, the Third Circuit held that if it is impossible to identify class members without extensive and individualized fact-finding, then class certification must be denied.  Marcus, 687 F.3d at 593.  Ascertainability, the Marcus court reasoned, serves three important functions in the class action context: it eliminates administrative burdens that threaten to undo the efficiencies a class action is supposed to achieve; it protects absent class members, particularly in a (b)(3) class, by providing them with the best notice practicable and a thus meaningful opportunity to consider exercising their right to opt out of the class; and it protects defendants "by ensuring that those persons who will be bound by the final judgment are clearly identifiable."  Id.; see also Agostino, 256 F.R.D. at 479.

Based on the proposed definition, Subscriber Plaintiffs seek to represent a class consisting of all Cigna members who received an ONET reimbursement which was less than the provider's billed charge because the "allowed amount" – i.e., the amount upon which coverage

would be based, after the applicable coinsurance and any deductible – was less than the billed charge.  The definition, however, gives no indication as to why the "allowed amount" was allegedly erroneous or contrary to plan terms.  Although this case revolves around the allegedly flawed nature of Ingenix, Ingenix is not even mentioned in the class definition.  Nor is there any indication in the class definition that the class is limited to those Cigna plan members whose plans tied the reimbursement of an ONET claim to the UCR standard, which is the critical plan term allegedly violated by Cigna by using Ingenix data.

The ERISA Class, as defined, goes well beyond the parameters of this action.  It would capture all instances in which the "allowed amount" was less than the billed charge, regardless of whether the processing of the ONET claim involved Ingenix or the UCR standard.  However, as Cigna has argued and, frankly, common sense dictates, plans vary.  Not all Cigna plans contain the UCR language.  Some plans, for instance, call for ONET claim reimbursement according to fee schedules based on Medicare.  Moreover, Cigna points out that, even as to those plans that do provide for payment of Nonpar claims according to UCR, the allowed amount may be less then the billed charge on any given claim for reasons completely unrelated to the determination of UCR and/or the use of Ingenix data.  For example, Cigna notes, a claim might be denied because the service was not medically necessary or because the provider submitted fraudulent charges, which would make the allowed amount on the claim zero.  In such instances, in which the allowed amount was less than the billed charge, neither Ingenix nor UCR come into play, yet those subscribers would be part of the proposed ERISA class as defined by Subscriber Plaintiffs.  Another example Cigna raises of a non-Ingenix related benefits determination concerns the

38

applicable deductible.  Supposing a plan member made an ONET claim under a plan with an

ONET deductible of $1,000 and the member had not yet met his deductible, the plan would pay

little or perhaps nothing on the claim, regardless of the methodology that might apply to ONET

benefits determinations under the plan.

On the other hand, certain of Cigna's objections as to the overbreadth of the class

definition are unavailing.  Cigna argues that the class, as defined, improperly includes plan

members who may not have exhausted their administrative remedies and/or who may not have

been balance billed by their providers and thus, in Cigna's view, have no right to bring an ERISA

claim to recover benefits.

The exhaustion issue presents a classwide common question that could be addressed a

trial.  While persons claiming plan benefits under ERISA must generally "exhaust their

administrative remedies before seeking judicial relief," they will not be required to do so if they

can demonstrate that pursuing administrative relief would have been futile.  Berger v. Edgewater

Steel Co., 911 F.2d 911, 916-17 (3d Cir. 1990).  Subscriber Plaintiffs maintain that as to any

ONET claim decided using Ingenix data, the appeals process would merely have consisted of

reviewing the claim based on the same flawed data.  Thus, they contend, any effort to appeal the

adverse benefit determinations would have been futile.  To the extent the ERISA claims relate to

Cigna's use of the Ingenix database in such a manner as to constitute an abuse of its discretion

under the plan, the question of whether the futility of administrative remedies would excuse

exhaustion would indeed apply to the entire class.  See, e.g., Wachtel, 223 F.RD. at 207-08

(discussing futility of exhausting administrative remedy in an action seeking to recover benefits

allegedly denied as a result of using flawed data supplied by Ingenix to determine UCR).[6]  The Court is satisfied that the issue of futility could be tried as a common issue of fact and law.

As to balance billing, Subscriber Plaintiffs are correct that Cigna's position is in conflict with previous rulings made by the Court in this case.  Cigna argues that the ERISA Class must be limited to those individuals who have received a bill from the Nonpar seeking to collect unreimbursed amounts of the billed charge.  It tries to cast the balance billing issue as one implicating a class member's standing to sue under Article III, contending that without a financial obligation to pay a balance bill, a plan member has not sustained any palpable harm from the alleged ERISA violation and therefore has suffered no injury-in-fact.  Cigna previously raised this same argument in its Rule 12(b)(6) motion, seeking to dismiss the ERISA claims brought by the Nelson Plaintiffs because they had not alleged that they were balance billed by their provider with regard to the ONET service underlying their claim for benefits.  The Court rejected the argument, reasoning that while a balance bill may go to the question of remedy, it does not have any bearing on whether a plan subscriber's "legal interests have allegedly been violated by CIGNA's conduct."  Franco, 818 F.Supp.2d 792, 815 (D.N.J. 2011).  As it held then, and as the judge previously presiding over this case held in 2008, the injury to an ERISA plan member arose at the moment Cigna denied the member benefits to which he or she claims to be entitled under the plan.  Id.; see also Franco, 2008 WL 3399644, at * 7 & n.8.  The receipt of a

---

[6] Defendant's argument that the ERISA Class must be limited to those plan members who exhausted their administrative remedies has no bearing, of course, on the ERISA breach of fiduciary claim, as exhaustion is not a prerequisite to assert such a claim. Zipf v. AT & T, 799 F.2d 889, 891 (3d Cir.1986); see also Wachtel, 223 F.R.D. at 205 (holding that "exhaustion is not required to assert a claim for breach of fiduciary duty.").

lower benefit payment than Cigna would have paid had it honored plan terms, is a sufficiently concrete invasion of a legally protected interest to confer Article III standing.  Franco, 818 F.Supp.2d at 815 (relying on Supreme Court's definition of injury-in-fact in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  Whether or not the Nonpar ultimately pursues the balance, that is, bills his patient or chooses to forgive the amount owed, is a matter best suited to the determination of damages.

Putting these unnecessary limitations on the class definition aside, the Court does, for the reasons discussed, find that the ERISA Class for which Subscriber Plaintiffs seek Rule 23(b)(3) certification has been defined in an indeterminate and overly broad manner.  As a result, identifying which Cigna plan members are in fact part of this class would not be possible without conducting a mini-trial into the allegedly adverse benefit determination sustained by each subscriber.  The individuals that the class definition encompasses may not have a cognizable ERISA claim at all, as their benefits determinations in an amount less than the provider's billed charge may be appropriate for any number of reasons having nothing to do with UCR or Ingenix. The definition, in short, lacks the specificity required to allow ready identification of those Cigna members with a stake in the outcome of this litigation, an especially important requirement in a Rule 23(b)(3) class to ensure that absent class members receive adequate notice and a meaningful opportunity to opt out.  The ERISA Class definition must include basic objective criteria for membership, such as coverage under an ERISA plan containing the UCR standard of ONET reimbursement and a determination of benefits based on Ingenix.  For the reasons discussed, the proposed ERISA Class definition fails to meet this essential prerequisite of class certification.

41

**IV.     RICO Class**

Establishing liability under Section 1962(c) of RICO "'requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity,'" plus an injury to 'business or property.'" In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 269 (3d Cir. 2009) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  The alleged wrongdoing on which the RICO claims in this action are based consisted, according to Subscriber Plaintiffs, of the Cigna-Ingenix Enterprise's scheme to underpay Cigna plan members the benefits to which they were entitled under their respective plans.  The scheme was allegedly carried out through a pattern of racketeering activity consisting of mail and wire fraud.

The plans are necessarily at the root of the claims, for the lawfulness of the alleged underpayment scheme – that is, the predicate acts of mail and wire fraud – cannot be evaluated without reference to Cigna's obligations according to plan terms.  Thus, without engaging in a repetitive and exhaustive review of the Rule 23 requirements, the Court finds that many of the deficiencies in the Subscriber Plaintiffs' failed effort to certify the ERISA Class also plague their request for Rule 23(b)(3) certification of the RICO Class.  The proposed class definition is, for the same reasons, overbroad.  Moreover, unlike in the ERISA context, the limitation of the RICO Class to plan subscribers who have paid a balance bill, allegedly as a result of the scheme to underpay ONET claims, is essential.  As the Court discussed in its Opinion on the Rule 12(b)(6) motion, statutory standing to sue under RICO requires loss to "business or property" as a result of racketeering activity. 18 U.S.C. § 1964(c); Maio v. Aetna, 221 F.3d 472, 482-83 (3d Cir. 2000).  Clearly, without proof of uniformity or at least substantial similarity in the UCR

42

provision of the governing Cigna plans, Subscriber Plaintiffs have not established that the third and fourth elements of the RICO claim – that the alleged Enterprise engaged in mail and wire fraud misrepresenting that the ONET benefit was based on an accurate UCR – could be established at trial based on evidence common to the class.  Moreover, the predominance problem highlighted above with regard to the ability to prove damages on a classwide basis applies with equal force to the RICO Class.  Subscriber Plaintiffs have proffered no model or methodology by which they intend to prove the alleged RICO injury – which must be a concrete financial loss –  without having the exercise devolve into a series of minitrials for each class member.

Subscriber Plaintiffs, in short, fail to meet their burden of establishing, by a preponderance of the evidence, that the proposed RICO Class satisfies the requirements for Rule 23(b)(3) certification.

## V.   CONCLUSION

For the foregoing reasons, the Court will deny Subscriber Plaintiffs' motion for class certification in its entirety.  An appropriate Order will be filed herewith.

 s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: January 16, 2013

43