## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARLERY FRANCO, | : |
| | : |
| Plaintiff, | :    **Civil Action No. 07-6039 (SRC)** |
| | : |
| v. | :    **OPINION** |
| | : |
| CONNECTICUT GENERAL LIFE | : |
| INSURANCE CO., et al., | : |
| | : |
| Defendants. | : |
| | : |

**CHESLER**, District Judge

This matter comes before the Court upon two motions: the motion for summary judgment

filed by Defendant Cigna[1] [docket entry 755] and the motion for partial summary judgment filed

by Plaintiffs Darlery Franco, David Chazen and Camilo Nelson[2] (collectively, "Plaintiffs")

[docket entry 761]. Both motions have been opposed and fully briefed, and the Court proceeds

to rule on the papers submitted by the parties, and without oral argument, pursuant to Federal

---

[1] The Complaint names three Cigna entities as Defendants: Connecticut General Life Insurance Co., Cigna Corporation and Cigna Health Corporation. The motion is filed on behalf of all three Cigna entities, and the Court therefore refers generally to "Cigna" throughout this Opinion when discussing the merits of Plaintiffs' claims. It does wish to make clear, however, that this label is used to encompass all moving Defendants for simplicity only and should not be understood as a finding that the three entities are interchangeable and/or played the same role in the administration of Plaintiffs' ERISA-governed health plans. Indeed, Defendants maintain that Cigna Corporation and Cigna Health are entitled to summary judgment on the ERISA claims because there is no evidence that either entity is the plan administrator or exercised control over the administration of Plaintiffs' claims. They similarly maintain that summary judgment is warranted on the RICO claims because there is no evidence that Cigna Corporation or Cigna Health Corporation transacted with Ingenix. In light of other deficiencies of proof on the claims, the Court will not reach the argument that Cigna Corporation and Cigna Health Corporation are not proper defendants.

[2] Shahidah Nelson and Camilo Nelson, Jr., two other family members covered under Camilo Nelson's plans, are also named as Plaintiffs in this action. The Court will refer to these three Plaintiffs collectively as "the Nelsons" or, for simplicity, will refer only to Nelson, depending on the context of the discussion.

1

Rule of Civil Procedure 78.  Cigna's motion for summary judgment will be granted, terminating all claims, and Plaintiffs' motion for partial summary judgment will denied.

As the following discussion will explain, none of the Plaintiffs may proceed with their ERISA and RICO claims for various reasons.  Chazen and Nelson assert ERISA claims based on Cigna plans that expressly required Cigna to use the provider charge database maintained by Ingenix in processing ONET claims.  In light of that, the evidence proffered by Plaintiffs is insufficient to allow a reasonable factfinder to conclude that Cigna abused its discretion by using information drawn from the Ingenix database.  Moreover, § 502(a)(1)(B), which provides the legal framework for Plaintiffs to challenge benefit determinations, authorizes Plaintiffs to seek recovery of unpaid benefits due under plan terms.  Neither Franco, Chazen nor Nelson point to evidence in the record that could establish that, on any challenged benefit decision, Cigna's conduct (using Ingenix) deprived them of benefits to which they were entitled.  Additionally, Franco's individual claims are moot based on Cigna's payment of her providers' charges after this lawsuit was initiated.  Though Franco previously pursued her own claims and those of a putative class, certification of the class has been addressed twice and denied twice since the time of the 2008 payment made by Cigna.  Cigna has, moreover, demonstrated that Nelson is barred from pursuing this ERISA action, proffering uncontroverted evidence that he failed to exhaust his administrative remedies.  Finally, the RICO claims asserted by Franco and Chazen, which are predicated on mail fraud and wire fraud must fail. Plaintiffs have not demonstrated a contested issue of fact as to either Cigna's intent to defraud them or their having sustained a loss to business or property by virtue of Cigna's alleged misconduct.

# I.     BACKGROUND

This action, as the parties know, revolves around the alleged underpayment of benefits to

subscribers of ERISA-governed healthcare plans funded and/or administered by Cigna.  It was

filed as a putative class action a decade ago and has a long procedural history, involving various

dispositive motions and two unsuccessful motions for class certification, among others.  Three

claims remain active: an ERISA claim to recover unpaid benefits pursuant to ERISA §

502(a)(1)(B), a civil RICO claim pursuant to 18 U.S.C. § 1962(c), and a conspiracy to violate

RICO claim pursuant to 18 U.S.C. § 1962(d).[3]  Plaintiffs Franco and Chazen continue to pursue

all three of these claims, while motion practice has left Nelson with only the ERISA claim.  At

this point in the litigation, the case proceeds as the individual action of the named Plaintiffs only,

who have failed in their attempt to litigate their ERISA and RICO claims on behalf of other

Cigna plan subscribers.  Given the numerous written decisions issued in this action, including

---

[3] Plaintiffs' claim for relief pursuant to ERISA § 502(a)(3) was dismissed in large part by the September 23, 2011 Opinion and Order.  See Franco v. Connecticut Gen. Life Ins. Co., 818 F. Supp. 2d 792, 823 (D.N.J. 2011). The Opinion held that the claim was dismissed to the extent it was based on Cigna's failure to comply with statutory obligations of disclosure regarding the use of Ingenix and/or its ONET claims processing methodology.  The Court and the parties in their briefing continued to treat the § 502(a)(3) claim as active to the extent it was based on Cigna's alleged breach of fiduciary duty to plan members to apply plan terms with loyalty and care.  Cigna has argued in its motion for summary judgment that such a breach of fiduciary duty claim, premised on the allegedly improper determination of UCR in deciding ONET benefits claims, is at bottom nothing more than a claim for unpaid benefits, for which § 502(a)(1)(B) provides exclusive redress. Plaintiffs do not contest this point, or indeed, respond to the argument at all. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); see also Merling v. Horizon Blue Cross Blue Shield of New Jersey, No. 04-4026 (WHW), 2009 WL 2382319, at *4 (D.N.J. July 31, 2009) (holding same). Thus, insofar as Plaintiffs had continued to pursue an ERISA breach of fiduciary duty claim, they have now abandoned it, and summary judgment on the claim is warranted.  Summary judgment is appropriate for the additional reason that Cigna's argument is supported by well-established ERISA jurisprudence.  The Third Circuit has held that "[a] claim for breach of fiduciary duty is 'actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'" Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 254 (3d Cir. 2002); see also Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (noting that to the extent a plan administrator performs a fiduciary act when determining benefits and paying claims according to plan terms, the alleged failure to do so properly is addressed by the remedy provided by ERISA § 502(a)(1)(B)).  Plaintiffs' breach of fiduciary duty claim is duplicative of the claim for benefits under § 502(a)(1)(B) and therefore cannot proceed.

several published opinions, the Court assumes the parties' familiarity with the facts.  It sets forth

only those facts that are particularly relevant for deciding the motions at bar.

 The Plaintiffs each dispute reimbursements made by their plans for services Plaintiffs

obtained from healthcare providers who did not participate in Cigna's provider networks.[4]  The

managed care industry's shorthand for such nonparticipating providers is "nonpars."  Because

the services were obtained from providers who were "out of network" ("ONET"), the claims

based on those services were payable according to the ONET benefits provision of each

Plaintiff's respective plan.  Broadly speaking, the provisions stated that the allowed amount an

ONET claim would be the lesser of the provider's "normal charge" for the service or some

amount representing the charge most often made for such service in the provider's geographical

area.  As the Court has observed in previous Opinions, the standard of paying ONET claims

according to some prevailing charge benchmark has been broadly referred to as "UCR" in this

litigation, an acronym which stands for "usual, customary and reasonable" amount billed by

providers for a service. (Consolidated Amended Class Action Complaint [docket entry 242]

("Compl.") ¶ 6.)  The precise language varies, and each Plaintiff's plan provision will be quoted

below in the relevant analysis section.

 The salient detail with respect to Plaintiffs' ERISA and RICO claims is that, according to

Plaintiffs, they received insufficient ONET benefits because the UCR amount was determined by

using a database of provider charges compiled and maintained by Ingenix, Inc.  The subject

database, also known as the Prevailing Healthcare Charges System ("PHCS") database, "was a

collection of healthcare providers' charges submitted to [Ingenix] by major managed care

---

[4] Non-participating providers do not bill for services at negotiated rates, as participating providers do pursuant to a
contract with Cigna.

companies (including Cigna), Blue Cross/Blue Shield plans, third-party administrators, and self-funded groups." (Cigna Mot. at 7.) (The Court will hereinafter refer to this database as the "Ingenix database," though Cigna notes that Ingenix actually operated two databases: the PHCS database and the MDR database, the latter not being at issue in this case.) The Ingenix database "was divided into modules, each of which reported ranges (broken down into percentiles) of provider charges for procedures performed in various geographic areas." (Id.)

The following is a synopsis of the facts specific to the ONET claims underlying each Plaintiff's causes of action in the instant litigation.

**A. Franco**

Plaintiff Franco underwent two facial reanimation surgeries while a beneficiary of a Cigna healthcare benefits plan, one on June 18, 2003 and the other on September 13, 2005. The surgeries were performed by nonpars Dr. Elliott Rose (2003 and 2005 procedures) and Dr. Fred Valauri (2003 procedure). The Cigna plan under which she was covered from 2001 to 2004 provided for reimbursement of ONET charges based on a UCR standard termed "reasonable and customary." The plan provided as follows:

> A charge will be considered Reasonable and Customary if:
>
> - it is the normal charge made by the provider for similar service or supply; and
>
> - it does not exceed the normal charge made by most providers of such service or supply in the geographic area where the service is received, as determined by CG [Cigna].
>
> To determine if a charge is Reasonable and Customary, the nature and severity of the Injury or Sickness being treated will be considered.

(Pl. Ex. 73 at 93.) Plaintiffs assert that the Cigna plan in effect in 2005 similarly included "reasonable and customary" language relating to services provided by nonpars. This assertion is

not supported by the evidence.  As Cigna points out, while the 2005 plan defines the term

"reasonable and customary," the plan did not provide ONET benefits.  Rather, the term was

applied it in the context of a provision dealing with the coordination of benefits between the

Cigna plan and other plans covering a beneficiary.  The record clearly shows that Franco's 2005

plan was a Health Maintenance Organization ("HMO") plan, which did not offer ONET

benefits.[5]

      With regard to the 2003 and 2005 ONET claims giving rise to Franco's ERISA action,

the record is mixed as to the manner in which the claims were handled.  Plaintiffs assert that

Cigna used Ingenix data to determine the UCR amount and paid Franco's ONET claims

accordingly.  They also assert that the Ingenix-based reimbursement left Franco liable to her

providers for many thousands of dollars.  Indeed, upon her administrative appeals (made on her

behalf by the providers), the benefit amount was increased based on Ingenix data but still left

amounts of her providers' bills outstanding. Franco has submitted evidence that she paid her

providers for at least part of the bills.  Evidence submitted by Cigna, on the other hand,

demonstrates that Franco's 2003 and 2005 surgeries were authorized by Cigna to be treated as

in-network claims pursuant to Cigna's Non-Participating Offer and Settlement Policy.  Under

this policy, Cigna offers to pay the nonpar an amount based on Ingenix database percentiles, but

in the event the nonpar rejects the offer or balance bills the Cigna plan participant, Cigna will

negotiate the reimbursement amount up to full billed charges.  The policy further provides that

the plan participants shall not incur any out-of-pocket expense in connection with a claim

handled in this manner, except for any co-payment or co-insurance responsibility the participant

---

[5] Plaintiffs do not contest that to avail herself of coverage under an HMO plan, a beneficiary generally must obtain her medical care and services from a provider or hospital in the plan's network, except in cases of emergency care and other limited and urgent situations.  In other words, a beneficiary generally receives no coverage for medical care provided outside the HMO plan's network of authorized providers.

would have for in-network services.  Consistent with Cigna's assertion that the claims were not treated as ONET claims, the record shows, among other things, that while Franco's 2003 plan capped ONET benefits at $10,000 per year, Cigna initially paid her providers over $50,000 in connection with the 2003 surgery and related pre- and post-operative procedures.  Also consistent with Cigna's assertion is the evidence that, although the 2005 plan provided no ONET benefits, Franco's 2005 surgery was nevertheless approved for coverage.  Franco bore a co-insurance responsibility of $940 for that surgery, consistent with the plan's annual $1,000 cap on a participant's out-of-pocket expense.  Viewing the facts in the light most favorable to Plaintiffs, and echoing the findings made by this Court in its August 6, 2008 Opinion on Cigna's motion to dismiss Franco's claim for lack of standing, it appears from the record that while Franco's 2003 claims were initially approved for handling pursuant to the Offer and Settlement Policy, they were subsequently processed as ONET claims in her administrative appeals.

Regardless, however, of these facts, the record unequivocally shows that in 2008, several years after Franco initiated this lawsuit, Cigna paid Dr. Rose's and Dr. Valauri's bills in full, less the amount which Franco's plan required her to pay as her in-network cost sharing responsibility. Plaintiffs do not dispute that Franco's providers were paid in full but maintain that Franco has a stake in the litigation based on costs associated with loans obtained to make payments to the providers before Cigna's 2008 payment.

### B.  Chazen

Chazen disputes the benefits determination on his ONET claim for shoulder surgery performed on August 14, 2006 by Dr. Roger G. Pollock, a nonpar.  At the relevant time, Chazen, a New Jersey resident, was covered by a fully-insured Cigna plan designated a Small Employer Health Plan ("SEHP") pursuant to New Jersey's Small Employer Health Benefits Act.  See

N.J.S.A. 17B:27A-17; see also Franco, 818 F. Supp. 2d at 803 & n.2 (D.N.J. 2011).  Chazen's

plan provides that "[o]ut-of-network services are paid based on the Maximum Reimbursable

Charge.  For this plan, the Maximum Reimbursable Charge is calculated at the 80th percentile of

all charges made by providers of such service or supply in the geographic area."  (Pl. Ex. 76 at

CIGCHAZEN00011.)  The plan provision defining "Maximum Reimbursable Charge" sets forth

as follows:

> The Maximum Reimbursable Charge is the lesser of:
>
> 1. The provider's normal charge for a similar service or supply; or
> 2. The policyholder-selected percentile of all charges made by providers
> of such service or supply in the geographic area where it is received.
>
> To determine if a charge exceeds the Maximum Reimbursable Charge, the
> nature and severity of the Injury or Sickness may be considered.
> CG uses the Ingenix Prevailing Health Care System to determine the
> charges made by providers in an area.  The database is updated
> semiannually.
>
> The percentile used to determine the Maximum Reimbursable Charge is
> listed in The Schedule.
>
> Additional information about the Maximum Reimbursable Charge is
> available upon request.

(Id. at CIGCHAZEN00063.)  Chazen's plan further provides that ONET claims would be paid at

70% of the Maximum Reimbursable Charge (i.e., imposing a 30% coinsurance obligation on

Chazen for the service) and that ONET benefits were subject to an annual deductible of $1,000

per person.  (Id. at CIGCHAZEN00012.)

Chazen's provider, Dr. Pollock, billed $6,500 for the shoulder surgery and submitted a

claim to Cigna for ONET reimbursement on behalf of his patient.  Cigna determined the

Maximum Reimbursable Charge using the applicable Ingenix schedule for Chazen's surgical

procedure and accordingly determined that the allowed amount on the claim was $3,770.  Of that

8

amount, $825 went toward meeting the annual deductible and, of the remaining amount, $883.50 represented Chazen's coinsurance obligation of 30%. Chazen appealed the claim determination, which Cigna denied for failure by Chazen to submit information to substantiate a greater reimbursement amount. His second level appeal was also denied. Dr. Pollock balance billed Chazen for the $4,438.50 amount which remained outstanding after Cigna's ONET benefit payment. Chazen paid $3,730.00. Chazen acknowledges that Dr. Pollock stated he would not pursue the remaining $708.50 of the bill.

### C.  Nelson

Nelson was at all relevant times a resident of California covered at various times from January 1, 2003 through December 31, 2010 by one of four employer-sponsored, self-insured Cigna plans. The plans also provided coverage for Nelson's wife and son. The plan in effect prior to January 1, 2006 provided for coverage of ONET claims according to the "Reasonable and Customary" standard. It provided:

> A charge will be considered Reasonable and Customary if: it is the normal charge made by the provider for a similar service or supply; and it does not exceed the normal charge made by most providers of such service or supply in the geographic area where the service is received, as determined by CG. To determine if a charge is Reasonable and Customary, the nature and severity of the Injury or Sickness being treated will be considered.

(Def. Ex. 6 at CIG028926288.) The three plans in effect between January 1, 2006 and December 31, 2010 provided for ONET benefits to be paid based on the "Maximum Reimbursable Charge." Each of these 2006 to 2010 plans stated:

> The Maximum Reimbursable Charge is the lesser of:
>
> - The provider's normal charge for a similar service or supply; or
> - The policyholder-selected percentile of all charges made by providers of such service or supply in the geographic area where it is received.

> To determine if a charge exceeds the Maximum Reimbursable Charge, the nature and severity of the Injury or Sickness may be considered. CG uses the Ingenix Prevailing Health Care System database to determine the charges made by providers in an area. The database is updated semiannually.
>
> The policyholder-selected percentile used to determine the Maximum Reimbursable Charge can be obtained by contacting Member Services/Customer Service.
>
> Additional information about the Maximum Reimbursable Charge is available upon request.

(Def. Ex. 5 at CIG028926135, Ex. 10 at CIG028926192-93, Ex. 11 at CIG028926343.)

The applicable percentile for Maximum Reimbursable Charge varied, with the plan sponsor for

Nelson's plan electing coverage based on the 90th percentile UCR and 95th percentile UCR at

different points in this 2006 to 2010 time period.

The claims disputed by Nelson relate to services provided by nonpar chiropractor Dr.

Stephanie Higashi. Plaintiffs acknowledge that some claims relating to treatment provided by

Dr. Higashi during the relevant time period were denied for reasons unrelated to any alleged flaw

in the Ingenix database, for example, because the plan's annual cap on covered visits had been

exceeded. They clarify that they seek relief only for the allegedly improper claim determinations

made using Ingenix. However, while Nelson asserts he is financially responsible to Dr. Higashi

and her practice for amounts not covered Cigna's benefit determination, no evidence of balance

billing has been proffered. To the contrary, Dr. Higashi testified at her deposition that her

chiropractic practice adjusted their billing balance sheets to write off amounts that Cigna had not

covered in connection with Nelson's ONET claims. Additionally, Nelson's plans required a

two-level appeal of a disputed claim as a precondition to filing suit and set forth a procedure for

filing such an appeal. Cigna asserts that the record shows that no appeals of any ONET claims

were pursued by the Nelsons or by Dr. Higashi on their behalf, while Plaintiffs indicate that Mrs. Nelson testified at her deposition that she made numerous calls to Cigna "regarding payments to Dr. Higashi." (Def. Ex. 42, Tr. at 35:14-19.)

## II.   DISCUSSION

### A. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255.

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014). However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." ).

### B.  ERISA § 502(a)(1)(B) Claim

Plaintiffs seek to recover plan benefits pursuant to ERISA § 502(a)(1)(B). The governing provision states as follows:

> A civil action may be brought—(1) by a participant or beneficiary— . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce
> his rights under the terms of the plan, or to clarify his rights to future
> benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). To prevail on this claim, a plaintiff must establish that he has "'a right to benefits that is legally enforceable against the plan,' and that the plan administrator

improperly denied those benefits." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir.

2012) (quoting Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006).

       In this action, Plaintiffs maintain they were improperly denied benefits as a result of

Cigna's use of allegedly flawed Ingenix data to determine the UCR on which the allowed

amount of their respective ONET claims was based.  To obtain the relief available pursuant to

the private right of action created by ERISA § 502(a)(1)(B), Plaintiffs bear the burden of proving

they are entitled to "benefits due under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). To

recover under ERISA § 502(a)(1)(B), they must prove that Cigna abused its discretion under the

governing plan, resulting in an underpayment or under-reimbursement of benefits.

       The governing ERISA plans each contain provisions granting Cigna discretionary

authority with regard to determining benefits, a fact that is uncontroverted.  It is well established

that judicial review of a plan administrator's benefit determinations must be made according to a

de novo standard, unless the governing ERISA plan "gives [its] administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The Third Circuit has

emphasized that, pursuant to Firestone, a deferential "arbitrary and capricious" standard of

review is appropriate when a plan grants its administrator discretionary authority to determine

benefits and/or to construe plan terms.[6]  Fleisher, 679 F.3d at 120-21 (citing Firestone and its

progeny).   Where this standard applies, the Third Circuit Court of Appeals has defined the task

of the reviewing court as follows:

_____

[6] The Court of Appeals has further noted that in the ERISA context, the deferential standard of review may be
referred to interchangeably as "arbitrary and capricious" or "abuse of discretion."  This Court will likewise use both
phrases in its discussion.  Fleisher, 679 F.3d at 121 n.2.

13

> We review a challenge by a participant to a termination of benefits under ERISA § 502(a)(1)(B) under an arbitrary and capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility for benefits.  An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.

Miller, 632 F.3d at 844-845 (citations omitted).  "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'" Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (quoting Daniels v. Anchor Hocking Corp., 758 F. Supp. 326, 331 (W.D. Pa.1991)).  The Court of Appeals has instructed that a court reviewing a plan administrator's benefits decision and/or interpretation of a plan under the arbitrary and capricious standard should not disturb the administrator's decision unless it is unreasonable.  Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir.1997); see also Funk v. CIGNA Group Ins., 648 F.3d 182, 190 (3d Cir. 2011) (summarizing the standard applicable to an ERISA § 502(a)(1)(B) claim).

In Metropolitan Life Insurance Company v. Glenn, the Supreme Court reaffirmed its adherence to the arbitrary and capricious standard of review it adopted in Firestone.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115-16 (2008).  The Glenn Court focused on the question of how the deference afforded to an administrator might be affected by the inherent conflict of interest a plan administrator faces in paying and evaluating claims, even when it is administering a self-insured's funds.  Id. at 112.  The Supreme Court noted that in Firestone, it held that "a conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" Id. at 115 (quoting Firestone, 489 U.S. at 115).  The Glenn Court stressed that the conflict does not diminish the deference owed to the administrator's decision or turn the standard into one for de novo review.  Id. at 115-16.  Rather, Glenn explained, the conflict is but one of the many

14

factors a court may take into consideration when reviewing whether the administrator has applied plan terms unreasonably.  Id. at 117.  The Court held:

> We believe that *Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.  This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific factors, reaching a result by weighing all together.

Id.  In short, in Glenn, the Supreme Court reinforced its Firestone holding that when an ERISA plan grants the administrator discretionary authority to determine eligibility for benefits, to decide claims, and/or to apply plan terms, the administrator's exercise of that discretion is entitled to deferential review.

Pursuant to Firestone and its progeny, Cigna's benefits decisions as to each ONET claim challenged by Plaintiffs must be afforded deference. Thus, Plaintiffs bear the burden of proving at trial that Cigna acted in an arbitrary and capricious manner in deciding the ONET claims as it did, that is, basing UCR on the Ingenix modules of provider charges. Given the discretion afforded to Cigna by each applicable plan, this Court may overturn Cigna's decisions only if Plaintiffs demonstrate that the decisions were unreasonable.  Fleisher, 679 F.3d at 121; Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

Cigna has challenged Plaintiffs' ERISA claims by arguing that the evidence of record does not suffice to demonstrate either an abuse of its discretion to determine benefits or the underpayment of benefits according to plan terms.  Cigna also raises other arguments regarding unique impediments to the continued pursuit of the ERISA claims brought by Franco and Nelson.  The Court will address the grounds raised by Cigna for summary judgment in turn.

15

1.   <u>Abuse of Discretion Standard of Review</u>

Putting aside for the moment the critical question of injury, i.e., whether the evidence of record creates a genuine issue as to the underpayment of ONET benefits according to plan terms, the Court will address Cigna's argument that Plaintiffs cannot prove that Cigna acted improperly under the plan. Here, the Court must ask: is there a disputed issue of fact as to whether using Ingenix data to determine the UCR on Plaintiffs' ONET claims was arbitrary and capricious?  As with all questions pertinent to ERISA § 502(a)(1)(B) claims, the plan language occupies center stage.

Chazen's plan as well as all four of the plans to which Nelson subscribed during the relevant time period expressly require Cigna to "use[ ] the Ingenix Prevailing Health Care System database to determine the charges made by providers in an area."  Moreover, in Chazen's case, the use of Ingenix was mandated by state regulations governing small employer health plans.  The applicable regulation provided:

> in paying benefits for covered services under the terms of the small employer health benefits plans provided by health care providers not subject to capitated or negotiated fee arrangements, small employer carriers shall pay covered charges for services, using either the allowed charges or actual charges. **Allowed charge means a standard based on the Prevailing Healthcare Charges System profile** for New Jersey or other state when services or supplies are provided in such state, incorporated herein by reference **published and available from the Ingenix, Inc.**, 12125 Technology Drive, Eden Prairie, Minnesota 55344.

<u>N.J.A.C.</u> § 11:21-7.13 (emphasis added).  In the Court's view, while plan and regulatory directives might not necessarily foreclose a finding that use of Ingenix constituted an abuse of discretion, they cannot be ignored in any meaningful analysis of whether Cigna acted reasonably within the discretion granted to it by the plan.  As the Court indicated in its April 14, 2014 Opinion on class certification, the Third Circuit's analysis in <u>Moench v. Robertson</u> is instructive

16

on the issue of the impact of ERISA plan obligations on judicial review of a fiduciary's

decisions. Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), cert. denied, 516 U.S. 1115 (1996).

Moench addressed an analogous situation in which the beneficiary of an ERISA-

governed employee stock ownership plan ("ESOP") brought an imprudent investment claim

against the plan fiduciaries for investing the ESOP fund in the common stock of the sponsoring

employer, despite the fiduciaries' knowledge of the employer's declining and "precarious

condition." Id. at 558.   The court acknowledged that there was some tension between a

fiduciary's fulfilling the primary purpose of an ESOP, which is to invest in qualifying employer

securities and thus encourage employee ownership interests in the employer, and abiding by the

ERISA duties of loyalty and care. Id. at 569.  It reasoned that, in light of the potentially

conflicting objectives of the plan and ERISA, the appropriate standard of review of an ESOP

fiduciary's investment in employer securities must take into account the plan's terms directing

investment. Id. at 571.  Looking to trust law for guidance, the Court of Appeals observed that

where a trust requires investment in a particular stock, the trustee must comply unless

compliance would be impossible, whereas where it is merely permitted to make a particular

investment, the trustee must exercise care, skill and caution. Id.  In an ESOP situation, where

investment in employer securities is encouraged yet not absolutely required, it reasoned that an

intermediate standard would be appropriate to reflect the fact that there may come a time when

such investments no longer serve the plan's purpose. Id.  The Moench court concluded that in

such situations, "fiduciaries should not be immune from judicial inquiry, as a directed trustee

essentially is, but also should not be subject to the strict scrutiny that would be exercised over a

trustee only authorized to make a particular investment." Id.  Instead, the Third Circuit held,

ESOP fiduciaries are entitled to a rebuttable presumption that investment of plan assets in employer stock was proper. Id.

In this Court's opinion, Moench's use of trust law concepts in the field of ERISA to decode the level of scrutiny to which a plan fiduciary's actions may be subjected directly applies here. Providing context for the abuse of discretion standard applicable to Cigna's benefits decisions requires consideration of the governing plan's instructions to the plan administrator with regard to determining UCR and specifically, the use of Ingenix. The Third Circuit's analysis in Moench strongly suggests that the most deferential end of the spectrum of review must apply where the plan directs that UCR will be determined using Ingenix. Indeed, as to Chazen, both the plan and New Jersey regulations required the use of Ingenix to determine UCR. Pursuant to Moench's guidance, to fulfill its duties under Chazen's and Nelson's plans, Cigna, as plan administrator and therefore essentially the directed trustee, was obligated to use Ingenix unless compliance with this plan requirement would be *impossible*.

Plaintiffs point to various evidence they contend not only thwarts Cigna's motion for summary judgment but actually entitles them to a decision that, as a matter of law, Cigna's decision to use Ingenix violated plan terms regarding UCR. They cite testimony given by Ingenix's 30(b)(6) witness and Ingenix's own expert, as well as the report of Plaintiffs' expert Bernard Siskin. Plaintiffs submit that this evidence shows that the Ingenix database was not representative of prevailing fees because of its use of "contributed data" (i.e., data provided by the carriers that contracted to license the database), when it should have used a "random sampling" or generated its modules of prevailing charges based on *all* charges made by providers in a geographic area. They maintain that, because of this, they have furnished ironclad proof of the patent incompatibility between Ingenix data and the plan UCR terms. Further, Plaintiffs

argue, the DataSpan Analysis, an internal analysis conducted by Cigna in 2004 regarding the Ingenix database, demonstrates that Cigna's failure to honor its plan responsibilities was knowing and deliberate.  According to Plaintiffs, the DataSpan report concluded that Ingenix "is not valid for determining UCR."  (Pl. Opp'n at 46.)  Their statement of facts isolates some of the report's observations about Ingenix, including that the "data is biased because no random sampling occurred; "data volume is low in a number of specific geographic areas;" and "geozips . . . frequently combine urban and rural areas because they are based on 3-digit zip codes."[7]  (Pl. SOF, quoting Pl. Ex. 2 at INGENIXMDL001183971-73.)

Plaintiffs' characterization of the evidence is not, however, entirely accurate. The Court notes that, in particular, they do no cite to a portion of the DataSpan Analysis itself that reaches the conclusion that Ingenix is invalid. As "proof" of Cigna's awareness that Ingenix was unsuited to determining UCRs, Plaintiffs quote from a portion of the report comparing the relative strengths and weaknesses of the database.  The selective focus on the weaknesses identified in DataSpan presents a distorted image of the analysis.  The report spotted issues to be addressed but also listed numerous strengths of the Ingenix product.

This evidence, at best, raises an issue as to whether the Ingenix database was reliable and accurate.  Viewing the evidence in the light most favorable to Plaintiffs, the Court will assume for purposes of Cigna's motion for summary judgment that the Ingenix database indeed suffered from serious flaws in both its method of collecting information on provider charges and its organization of that information into modules of prevailing charges according to geographic area. As such, the evidence may create the impression that whether Cigna abused its discretion in applying the terms of the plans is a disputed issue of fact.

---

[7] "Geozips" refers to the classification of a geographic area according to a grouping of zip codes. (Compl. ¶ 222.)

As to the ERISA claims of Chazen and Nelson, however, the impression is false because the claims must be analyzed in light of the express language in their plans, which direct Cigna to use Ingenix.  Plaintiffs have presented no evidence to justify a departure from plan requirements.  Applying the reasoning of <u>Moench</u>, a heavy burden is placed on Plaintiffs Chazen and Nelson, as ERISA plan beneficiaries, to demonstrate that Cigna's compliance with the requirement that Ingenix be used would be impossible.  Perhaps this high standard could be met—or at the very least a disputed issue of fact could be shown—by evidence indicating that Cigna used the data knowing it would consistently yield an artificially depressed benefit amount, that is, wrongfully enrich the plan at the expense of its beneficiaries.  Conceivably, such evidence could establish that complying with plan requirements to use Ingenix data would be impossible because it would necessarily cause the plan administrator to breach its fiduciary duty of loyalty and care.  Indeed, in the Complaint, Plaintiffs advanced a theory that Cigna's business relationship with Ingenix, in which Cigna would contribute provider charge data and in return license the database modules created by Ingenix, was a scheme designed to profit at the expense of the insureds.  They alleged, importantly, that Ingenix data is consistently biased downward, resulting in "False UCRs" and the systematic underpayment of benefits.  (<u>See</u> Compl. ¶¶ 7-8, 225, 234-239.)  No evidence of self-dealing has been proffered, and the entire theory of downward bias has been abandoned.  <u>Franco v. Connecticut Gen. Life Ins. Co.</u>, --- F.R.D. --- , 2014 WL 1415949, at *10 (D.N.J. Apr. 14, 2014).  Now, in fact, Plaintiffs have argued that the Ingenix database was unreliable because it was based on inadequate statistical sampling using contributed data.  Assuming the evidence they have presented could establish this flaw in the database, it would not permit the trier of fact to conclude that Cigna's use of the database to determine the ONET claims challenged here by Chazen and Nelson was arbitrary and capricious.

20

It is true, as Plaintiffs have pointed out, that on the motion to dismiss the Complaint, the Court rejected Cigna's argument that Chazen had failed to plead an ERISA claim because his plan authorized Cigna to use Ingenix.  Consistent with the standard for evaluating a Rule 12(b)(6) motion, the Court concluded that the factual allegations made by Plaintiffs were sufficient to state a plausible ERISA violation.  It bears repeating that the Complaint had alleged that Ingenix data was consistently biased downward, leading to artificially low UCRs, and that Cigna played a role in creating the database's fatal flaws.  At this stage of proceedings, however, Plaintiffs bear a burden to come forward with evidence that would permit the trier of fact to find Cigna liable under the abuse of discretion standard of review.

While Plaintiffs present evidence that might permit a factfinder to determine that the Ingenix database was flawed and even inaccurate, they do not proffer evidence that Cigna could have, or should have, disregarded the plan directive to use Ingenix. [8]  Throughout their papers, Plaintiffs criticize Ingenix in a vacuum, not only in isolation from governing ERISA plan language but also from the availability of other data sources for supplying UCR.  In each of the plans governing Plaintiffs' claims, the plan terms directed Cigna to calculate ONET benefits by considering the provider's normal charge and the UCR for the service.  Each of the plans entitled the plan participant to the lesser of these two figures.  Determining UCR is a critical part of Cigna's obligation under the plans, yet Plaintiffs do not identify another option providing better data than Ingenix—an alternate source of UCR that would be, at least in their view, suited to the plan definition.  In particular, Plaintiffs do not point to any database, statistical compilation, Medicare or Medicaid data, or anything else which would have yielded more reliable information

---

[8] The Court notes, however, that there is no evidence that the allegedly flawed nature of the database necessarily worked to a beneficiary's detriment, which the Court will discuss further in subsection 2, below.

for determining prevailing provider charges.  Ingenix, despite any alleged flaws, appears to have been the most comprehensive database of provider charges in the managed care industry at the time Plaintiffs' ONET claims were processed and decided.  Cigna's moving brief states that "there is no dispute that the Ingenix PHCS database was the largest aggregation of provider charge data available to determine UCR for Plaintiffs' claims." (Mot. at 27.)  Plaintiffs do not contest this statement.  Yet, the burden is on Plaintiffs to prove, as they have alleged, that Cigna implemented plan terms governing ONET claims in an arbitrary and capricious manner because it used Ingenix to determine UCR.  In short, nothing in ERISA requires perfection.  Indeed, perfection is achieved in few areas of human endeavor, including the law.  Plaintiffs' failure to demonstrate feasible, available alternatives, in light of the specific language in the Nelson and Chazen plans, together with regulatory provisions applicable to the Chazen plan, lead the Court to conclude that no reasonable trier of fact could find that Cigna's use of Ingenix in connection with the Chazen and Nelson plans was an abuse of discretion.

Franco's 2003 plan, in contrast, does not direct that Ingenix be used.  It does qualify that the "normal charge made by most providers of such service," or UCR, will be "as determined by [Cigna]."  In the Court's view, that statement would, pursuant to Moench, at a minimum give rise to a presumption that Cigna's discretionary decision to use Ingenix to determine UCR does not constitute an abuse of discretion. Still, a rebuttable presumption of the reasonableness of Cigna's actions with regard to Franco's claim does not carry the strength of an unequivocal instruction to the plan administrator to use Ingenix.  For that reason, and in light of evidence in the record that a trier of fact could weigh in considering the abuse of discretion standard as to Franco's claim, the Court cannot hold that her § 502(a)(1)(B) claim is lacking in the same way as

the other Plaintiffs' claims. Her ERISA claim, however, fails for other reasons the Court will discuss in the following sections.

### 2. Proof of Injury

Cigna meets its Rule 56(a) burden for summary judgment on Plaintiffs' ERISA claims by correctly pointing to an absence of evidence demonstrating that any Plaintiff has suffered an injury capable of redress under § 502(a)(1)(B). Independent of other deficiencies discussed elsewhere in this Opinion, the lack of proof as to this essential element of a § 502(a)(1)(B) claim, to recover benefits to which Plaintiffs were entitled under the terms of the applicable ERISA plan, warrants summary judgment in favor of Cigna. Though not articulated as such by Plaintiffs, two distinct theories of injury emerge from the arguments made by Plaintiffs in their brief opposing Cigna's motion for summary judgment: one, they maintain that their ONET benefits were insufficient due to an inaccurate UCR based on Ingenix data; and two, they maintain that, in light of the complete unreliability of Ingenix, they are entitled under the plan to ONET benefits in the amount of the provider's billed charge for the service underlying their ONET claims. The Court will review Plaintiffs' effort to demonstrate that the record contains sufficient evidence to support the existence of a compensable loss and explain why their effort fails to raise a genuine issue of fact as to injury.

### a. Insufficient benefits due to UCR based on Ingenix data

Establishing the ERISA claims for unpaid benefits requires proof that, as Plaintiffs had alleged throughout most of this litigation, using Ingenix data resulted in a depressed or deflated representation of the amount charged by most or all providers for a particular service in the same geographic area as the Plaintiff's service provider—more succinctly, an artificially low UCR. This is essential for proving that the ONET benefit on each disputed claim was inadequate

23

because all of the governing plans, in some verbiage or another, define the allowed amount as *the lesser of* the provider's normal charge or the UCR for the service.  Putting aside, for the moment, Plaintiffs' unsupported assertion that the plan entitles them to an allowed amount equal to the provider's billed charge, proving an underpayment of benefits is not as simple as showing that the ONET benefit was less than the billed charge. To prove that they were deprived of benefits under the terms of the plan, Plaintiffs must establish that an accurate UCR would have yielded a greater benefit amount, whether it had been based on the UCR itself or, if the UCR was higher than the particular provider's normal charge, based on the provider's charge.

Plaintiffs have argued that the record is replete with evidence showing that the Ingenix database was unsound and could not, in light of its problems, meet the plans' UCR definitions as a matter of law.  They argue that Ingenix's own expert has admitted that the database is comprised of "data contributed to Ingenix from payers" and that "contributed data has no known probability distribution for representing the entire population of charge data."  (Pl. Opp'n at 46-47, quoting Ott report.)  Moreover, they point to deposition testimony given by Ingenix's Rule 30(b)(6) witness on the Ingenix database, who similarly concedes that the information collected does not capture "the total population of the providers" in a geographical area and that it is not possible "to tell what percentage of providers are represented by the charge data" in a given geographical area.  (Id. at 47.)  They contend that this evidence reveals that Ingenix itself recognized that its database was not statistically valid.  Plaintiffs also rely heavily on the DataSpan Analysis, which, as the Court discussed above, critiques the Ingenix database but does not reach the conclusion that it is invalid for determining UCR.  The DataSpan report, Plaintiffs contend, together with the testimony of the Ingenix witnesses, at the very least gives rise to a genuine issue of fact as to whether the Plaintiffs' ONET claims were underpaid.

24

The Complaint as filed alleged that "Cigna contracted with Ingenix to provided ONET services data claims and uniform pricing schedules which are used to calculate reimbursements for ONET services at artificially low rates (hereinafter "False UCRs") that are presented as UCRs.  The False UCRs are, in fact, substantially below the actual UCR rate."  (Compl. ¶ 7.) The Complaint listed and described a number of flaws that allegedly render Ingenix's provider charge schedules invalid and, importantly, systematically biased downward.  (Id. ¶ 235.)  Based on the premise that Ingenix data was "substantially below" actual prevailing charges billed by providers, this civil action at its core had alleged that through its use of the Ingenix database to determine UCR, "Cigna paid less than it was obligated to pay for ONET and both the Subscriber and Provider Plaintiffs suffered monetary injury as a result."[9] (Id. ¶ 1)

Now, Plaintiffs oppose Cigna's motion for summary judgment by contending that there is a genuine issue of fact as to the statistical accuracy of the Ingenix database.  (Indeed, their affirmative motion for partial summary judgment goes beyond that assertion and seeks entry of judgment on the issue of Ingenix's fundamentally flawed nature and the data's incompatibility with plan language defining UCR.)  The inherent assumption in Plaintiffs' current approach is that, as to the various ONET claims underlying their ERISA claim for unpaid benefits, the allegedly statistically unsound data resulted in an ONET benefit *below* the amount they would have received had Cigna used an accurate database, that is, one that was compliant with the plan UCR definition.  However, neither the allegedly incriminatory DataSpan Analysis, nor any other evidence proffered by Plaintiffs, would permit a reasonable trier of fact to make the assumption required to substantiate Plaintiffs' claims of underpayment of benefits.  No evidence has been

---

[9] As the parties know, the Complaint also asserted claims by healthcare providers, but the claims of these "Provider Plaintiffs" were dismissed for lack of standing.

proffered that would support the contention that using Ingenix to process Plaintiffs' ONET claims consistently resulted in a depressed benefit payment. Indeed, as the Court pointed out in its April 14, 2014 Opinion denying the renewed motion for class certification, Plaintiffs' experts have conceded that they cannot conclude that the Ingenix database consistently or systematically resulted in depressed UCRs. Franco, 2014 WL 1415949, at *10 n. 6.

Nor, alternatively, has any evidence been proffered to show that the particular claims for ONET benefits made by Franco, Chazen and/or Nelson were underpaid as a result of using Ingenix data. Plaintiffs might possibly have demonstrated the existence of a genuine issue of fact by pointing to proof which could establish that, had accurate data been used to generate the UCRs related to Plaintiffs' specific ONET claims, the benefits due would have been higher than amount determined using the allegedly inaccurate Ingenix data. The record contains no evidence that either Ingenix as a whole produced deflated UCRs, which would permit the reasonable inference that the UCRs used for Plaintiffs' ONET claims were depressed, or that the Ingenix data supplied incorrectly low UCRs for the services received by Plaintiffs, resulting in underpayment of their claims. Even if, viewing the DataSpan Analysis and other evidence critical of Ingenix in the light most favorable to Plaintiffs, Plaintiffs could establish that the database was statistically inaccurate, the record lacks any indication that the inaccuracy of the database in general or of the data used to determine Plaintiffs' claims deprived them of benefits. It is difficult to understand how Plaintiffs expect the factfinder to find in their favor on the ERISA claim when their own expert, Dr. Siskin, conceded at his deposition that without first determining the "true UCR," he himself could not say whether the ONET claims of the then-putative class of Cigna subscribers had been underpaid, overpaid or correctly paid. (1/30/2012 Deni Decl. Ex. 33 at 448.)

26

This analysis is not intended to downplay Plaintiffs' concerns and dissatisfaction with the methodology used by Cigna to determine UCR and, in turn, to determine their ONET benefits. Indeed, it is a matter of public record that the managed care industry has moved away from the Ingenix database in favor of other methods of processing ONET claims.[10] This lawsuit, however, is about the ERISA plan benefits which Franco, Chazen and Nelson allege they are owed under their respective plans.  Plaintiffs have spent a decade litigating an ERISA action that is fundamentally based on the allegation that Cigna incorrectly determined ONET claims using flawed and allegedly unreliable data on provider charges.  Yet, they have failed to demonstrate what would be, in their view, a sound and reliable collection of provider charges suited to their plans' UCR definitions or, more specifically, the "correct" UCR for the particular service and geographic area applicable to Plaintiffs' own underlying ONET claims.  Without such evidence, no reasonable factfinder could even conduct a meaningful evaluation of whether Plaintiffs are in fact entitled to recover benefits pursuant to ERISA § 502(a)(1)(B).

Plaintiffs apparently assume that, if they can demonstrate a basis for believing that a UCR derived from Ingenix data is at least somewhat unreliable, then Cigna has the burden of demonstrating what the correct UCR should be.  No authority is presented for this proposition. In the context of ERISA litigation under § 502(a)(1)(B), the burden is on the plaintiff to prove that she did not receive benefits to which she is entitled.  Merely demonstrating that Cigna's methodology was not ideal, or even far from ideal, does not meet that burden.

_____

[10] The Court notes that Plaintiffs do not contend that any current methods or data compilations are superior to Ingenix data.

b. Reimbursement in the amount of the provider's billed charge

As an alternative to proving underpayment of benefits by reference to a correct UCR, Plaintiffs would appear to take the position that, having abdicated its responsibility to plan members to determine ONET benefits in compliance with the plan's UCR provision, Cigna must cover the Plaintiffs' ONET claims for the full amount actually charged by the nonpars for services. Plaintiffs have continued to argue, as they did on both of their motions for class certification, that because Cigna determined UCR based on data that was so corrupted and/or divorced from a realistic representation of provider charges, Plaintiffs are entitled under their plans to recover benefits based on the provider's "billed charges." This approach invokes the plans' language ensuring an allowed amount on ONET claims based on the provider's normal charge for the service or the UCR, whichever is lower. If they can demonstrate that UCRs used by Cigna have been inaccurate to Plaintiffs' detriment, Plaintiffs contend, they should not be tasked with generating an accurate UCR as a condition to recover unpaid benefits. Assuming, arguendo, that Plaintiffs had adequately demonstrated that Plaintiffs should be reimbursed based upon the provider's normal charge for the service, Plaintiffs have still failed to demonstrate, for each of their challenged ONET claims, what that "normal charge" was. As the Court explained in its April 14, 2014 Opinion, the plan terms do not provide that ONET benefits will be paid according to the actual billed charge made by the provider to the patient seeking coverage pursuant to her Cigna plan, despite Plaintiffs' argument to the contrary. The ONET provisions in each of the plans governing Plaintiffs' ERISA claims expressly state that the allowed amount on an ONET claim is capped at the provider's "normal charge" for the service. It is the plan as

28

written which the Court is bound to apply as it asks, pursuant to Rule 56, whether Plaintiffs have proffered any evidence of receiving less than promised by the plan.  The answer is no.

Plaintiffs argue that if they can prove – and they believe they can – that using Ingenix to determine UCR violated Cigna's obligation under the plan, the evidence would permit a factfinder to conclude that they have been deprived of benefits by virtue of having been reimbursed less than their respective providers billed for the service.  The Court's rejects this argument as contrary to plan language.  The Court has emphasized in previous Opinions that "[t]he ONET provisions in the named Plaintiffs' plans, quoted above, define the allowed amount on a claim by reference to the provider's 'normal charge.'" Franco, 2014 WL 1415949, at *12; Franco, 289 F.R.D. at 138.  Yet, in opposition to Cigna's motion for summary judgment, Plaintiffs make no effort whatsoever, either in their January 9, 2014 filing of opposition papers or in any supplemental submission following the April 14, 2014 Opinion, to demonstrate that the evidence in the record would permit a trier of fact to determine the "normal charge" made by the provider for each service underlying the challenged ONET reimbursements.  Instead, they continue to argue that the Court's determination that the plan language "normal charge" does *not* have the same meaning as the provider's actual charge is wrong.  The court will not reiterate its rationale in concluding that the two are not the same and that the plan language requires using a provider's "normal charge."

The record, as Cigna has argued, gives no indication as to the providers' normal charges for the services rendered to Plaintiffs.  Nelson's provider, Dr. Higashi, admitted that she charges differently depending on whether her patient is insured or not.  Franco does not provide proof as the amount normally charged by Drs. Rose and Valauri for facial reanimation surgery, the service she received from them. Chazen does not point to evidence on which the trier of fact

could make a finding as to Dr. Pollock's normal charge for shoulder surgery, and the record makes it impossible to determine this amount, in light of Dr. Pollock's forgiveness of a portion of Chazen's bill.  Without such evidence, Plaintiffs cannot as, a matter of law, establish that they received a benefit which was less than the amount the plan promised: the lesser of the provider's normal charge or the UCR for the service.

In short, surmounting this motion for summary judgment would require a leap from the premise that Ingenix is a flawed database (to credit Plaintiffs' assertions that this is manifest from the evidence in the record) to the conclusion that Plaintiffs are entitled to a higher benefit amount than they received.  Recovery of benefits due under plan terms presents the ultimate liability question on an ERISA § 502(a)(1)(B) claim, and Plaintiffs simply point to no evidence that could reasonably get them from here to there.

### 3.   Additional Bases for Summary Judgment on Plaintiffs' ERISA Claims

Apart from these general deficiencies, the ERISA claims are plagued with additional plaintiff-specific infirmities.

Franco's claim for recovery of unpaid benefits under § 502(a)(1)(B) is moot.  The key fact for purposes of whether Franco's claim presents an actual "case or controversy" is that, ultimately, Cigna paid her providers in full, plus interest for the costs of Franco's surgeries, minus Franco's in-network cost-sharing responsibilities.  "An offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation."  Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004); see Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir.1992) (noting that "[s]ettlement of a plaintiff's claims moots an action."). Franco does not dispute that her providers were paid after she filed this lawsuit.  She nevertheless attempts to keep her claim alive by asserting that Cigna has not

paid fully, as she was forced to take out loans to pay the surgeons.  This assertion is not supported by any evidence.  According to the record, a loan was taken out by Franco's father to pay the deposit for her 2003 surgery.  Franco has not come forward with any proof that contravenes Cigna's demonstration that, by paying her providers' bills in full, complete relief on her claim for unpaid benefits has been given.  She also attempts to keep her claim alive by arguing that the Court has already rejected Cigna's mootness argument.  This attempt is unavailing, as the Court had previously addressed the mootness issue in the context of a Rule 12(b)(6) motion to dismiss a putative *class action*, in which Franco "purport[ed] to represent an interest that extends beyond [her] own." Lusardi, 975 F.2d at 974.  The Court denied the motion to dismiss, finding that Cigna's February 2008 payment of her providers' balance bills did not moot Franco's claims because, as the Third Circuit held in Weiss v. Regal Collections, an offer for the full amount of the named plaintiff's individual claim, made prior to a motion for class certification, cannot render the class claims moot.  See August 6, 2008 Opinion and Order at 13 [docket entry 77] (citing Weiss, 285 F.3d 337 and Smolow v. Hafer, 353 F. Supp. 2d 561, 567 (E.D. Pa. 2005)).  This case is no longer a putative class action.  Plaintiffs have twice sought class certification pursuant to Rule 23(b)(3), and both motions have been denied.  Franco proceeds only on her own behalf, and it is clear that her interest in this litigation has been extinguished.  The Third Circuit has held that, in light of Article III's "case or controversy" requirement, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).  Based on the evidence before the Court, summary judgment for Cigna on Franco's claims is warranted for this additional reason.

The Nelsons' ERISA § 502(a)(1)(B) claim cannot prevail as a matter of law for failure to exhaust administrative remedies prior to filing suit. An ERISA plan participant must exhaust the administrative remedies under the plan before he may initiate a lawsuit to recover benefits or otherwise enforce his rights under the terms of the plan pursuant to the cause of action created by ERISA § 502(a)(1)(B).  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002). While the statute itself does not expressly require exhaustion of administrative remedies as a prerequisite to sue, the United States Court of Appeals for the Third Circuit has described the exhaustion requirement as a judicial innovation serving many sound policies, among others, reducing frivolous lawsuits, promoting the consistent treatment of claims for benefits, and enhancing fiduciary management of plans by preventing premature judicial intervention in the plan fiduciaries' decision-making process.  Metro. Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir.2007) (citing Harrow, 279 F.3d at 249 and Amato v. Bernard, 618 F.2d 559, 567–68 (9th Cir.1980)). The exhaustion requirement is a non-jurisdictional affirmative defense. Price, 501 F.3d at 280; see also Jakimas v. Hoffmann–La Roche, Inc., 485 F.3d 770, 782 (3d Cir. 2007) (holding that the defendant bears the burden of proving an affirmative defense to plaintiff's ERISA claims).

In relevant part, the Nelsons' plans established the following "Appeals Procedure":

> CG has a two-step appeals procedure for coverage decisions.  To initiate an appeal you must submit a request for an appeal in writing to CG within 365 days of receipt of a denial notice.  You should state the reason why you feel your appeal should be approved and include any information supporting your appeal.  If you are unable or choose not to write, you may ask CG to register your appeal by telephone. Call or write to us at the toll-free number or address on your Benefit Identification card, explanation of benefits, or claim form.

32

The plan section on Appeals goes on to describe in detail how and when the plan member can expect a determination on the appeal and what he or she can do if dissatisfied with the appeal.  To highlight some significant portions, it states:

> For level one appeals, we will respond in writing with a decision within 15 calendar days after we receive an appeal for a required preservice or concurrent care coverage determination and within 30 calendar days after we receive an appeal for a postservice coverage determination . . . .  If you are dissatisfied with our level-one appeal decision, you may request a second review. To initiate a level-two appeal, follow the same process required for a level one appeal.

Then, in a subsection clearly labeled "Legal Action," the plan provides as follows:

> If your plan is governed by ERISA, you have the right to bring a civil action under Section 502(a) of ERISA if you are not satisfied with the outcome of the Appeals Procedure.  In most instances, you may not initiate a legal action against CG until you have completed the Level One and Level Two appeal processes.  If your appeal is expedited, there is no need to complete the Level Two process prior to bringing legal action.

(Deni Decl., Ex. 10 at CIG28926189-90.)

The Nelsons do not dispute that no written appeals of their ONET claims decisions were filed, either by them or by Dr. Higashi on their behalf.  They do, however, assert that they availed themselves of the option to appeal by telephone, pointing to Mrs. Nelson's deposition testimony that she made various phone calls to Cigna about the claims.  She testified as follows:

> Q.     And what were your conversations with CIGNA regarding?
>
> A.     On hold for hours.
>
> Q.     Why did you contact CIGNA?
>
> A.     Because Dr. Higashi would let me know what was outstanding and I would go through it.  And a lot of them was just unpaid.  And so I would call CIGNA to try to get an understanding on why certain things weren't paid for.

(Decl. Ex. 42, Tr. at 35:12-36:20.)  The Court agrees with Cigna that these telephonic inquiries about "a lot" of unpaid claims relating to services rendered by Dr. Higashi do not suffice to create an issue of fact as to the initiation of an appeal within the meaning of the plan.  From this evidence, there is no indication that Mrs. Nelson registered an appeal, identified which claims decisions were being challenged or the basis for the challenge.  It falls far short of rebutting Cigna's demonstration that the two-level appeals procedure was not fully pursued by the Nelsons prior to initiating this suit, as required by the plan and by Third Circuit ERISA jurisprudence.

The Nelsons attempt to salvage their ERISA claim by arguing that they should be excused from the exhaustion requirement on grounds of futility. While the Third Circuit recognizes that an exception to the exhaustion requirement applies when "resort to the administrative process [under the ERISA plan] would be futile," it has held that a plaintiff merits this waiver only when the plaintiff makes "a clear and positive showing of futility."  Harrow, 279 F.3d at 249 (quoting Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990) and Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D.Pa. 1995)).  In Harrow, the Court of Appeals identified various factors a court may weigh to assess whether exhaustion should be excused on grounds of futility. They are:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

Id. at 250. These factors need not all carry the same weight, and a court should consider the applicability of the futility exception in light of the circumstances of a particular case. Id.  Based on these factors, the Court cannot find that the Nelsons have made a "clear and positive

showing" that it would have been futile to appeal their claims.  The only basis for futility advanced by the Nelsons is the dissatisfaction of the other named Plaintiffs with the outcome of their appeals, with Franco's appeal resulting in a 25% increase of the allowed amount based on Ingenix data and Chazen's appeal being denied.  There is no indication that the Nelsons diligently pursued their administrative remedies or that Cigna failed to comply with the Appeals Procedure as set forth in the plan.

Cigna has demonstrated a failure to exhaust by the Nelsons, and accordingly, the Court concludes that their ERISA § 502(a) claim is barred.

### C.  RICO Claims

Franco and Chazen also seek relief pursuant to RICO, which "provides a private cause of action for 'any person injured in his business or property by reason of a violation of section 1962 of this chapter.'"  Hemi Group, LLC v. City of New York, N.Y., 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)). They base their civil RICO claim on Cigna's alleged violation of 18 U.S.C. §  1962(c), which prohibits certain "racketeering activity," and on its alleged violation of 18 U.S.C. § 1862(d), which makes it unlawful to conspire to violate § 1962(c).  Establishing a violation of 18 U.S.C. § 1962(c) requires proof of the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)).  A "plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well."  Hemi Group, 559 U.S. at 9; see also Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268 (1992) (holding that to establish right to relief under RICO, a plaintiff must demonstrate that the alleged RICO violation proximately caused plaintiff's injury).

According to Plaintiffs, Cigna was engaged in an enterprise with Ingenix to deceive Cigna plan members into believing they were receiving the correct ONET benefits, based on accurate UCRs, when in reality the UCRs were based on flawed Ingenix data resulting in an underpayment of benefits.  In this case, the pattern of racketeering is alleged to have consisted of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1) (listing various state and federal crimes that constitute acts of racketeering); see also 18 U.S.C. § 1961(5) (providing that a "pattern" of racketeering activity consists of at least two acts of racketeering within a ten-year period).  The predicate acts of mail and wire fraud must involve the use of the United States mail and interstate wire transmissions, respectively, in furtherance of a scheme or artifice to defraud for the purpose of obtaining money or property. 18 U.S.C. § 1341; 18 U.S.C. § 1343.  Franco and Chazen claim that Cigna and Ingenix exchanged flawed data through both the U.S. mail and interstate wire facilities and argue that the exchange was crucial to the operation of the "Cigna-Ingenix Enterprise" because it enabled Ingenix to create the database and Cigna to underpay benefits to its plan members.  The predicate acts also allegedly consisted of the mailing of benefits communications to Franco and Chazen in the Explanation of Benefits ("EOB") forms that were generated and sent by Cigna when it processed their ONET claims.

The RICO claims suffer substantial deficiencies of proof as to at least two essential elements: injury to business or property and racketeering activity.  Without engaging in an exhaustive analysis of the RICO claims, the Court concludes that Plaintiffs' failure to proffer evidence in support of either of these elements warrants summary judgment in favor of Cigna.  If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex,

477 U.S. at 322–23).

 For the reasons discussed earlier in this Opinion, Cigna has adequately demonstrated that

the record lacks evidence that either Franco or Chazen sustained an underpayment of benefits in

connection with the healthcare services underlying their disputed ONET claims.  This lack of

proof is fatal to the RICO claim because, without evidence of underpayment, they cannot as a

matter of law establish the injury to business or property element.  Third Circuit jurisprudence

holds that this element requires "proof of actual monetary loss, i.e., an out-of-pocket loss."  Maio

v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).  Based on the evidence before the Court, Franco

and Chazen cannot establish that they were obligated to pay their respective ONET providers

more in balance bills than they would have owed had the alleged racketeering violations not been

committed by Cigna.  Indeed, in Franco's case, even if an initial underpayment of benefits based

on flawed Ingenix data had occurred—and there is simply no evidence in the record to support

this assumption—it is clear she no longer has a redressable financial loss because Cigna has paid

her providers' bills in full, less Franco's own co-insurance obligations.  In other words, assuming

that at one time Franco had made out-of-pocket payments to her providers in an amount that she

believed exceeded her correct member responsibility, this Court is now unable to grant Franco

the relief she seeks from Cigna pursuant to RICO, rendering her RICO claims moot.

 Insofar as Plaintiffs assert that paying excessive premiums for inferior coverage

constitutes the RICO injury, Cigna correctly points out that the Court has previously rejected this

argument.  Moreover, as the Court recently observed in its April 14, 2014 class certification

Opinion, "[t]he contention that overpaid premiums constitute the injury turns on the alleged inferiority of the Cigna plans, which turns on the alleged underpayment of ONET benefits per the terms of the plans." Franco, 2014 WL 1415949 at *14. If there is no evidence that the ONET claims were underpaid as a result of the Cigna's alleged scheme to defraud subscribers by contributing to and using the Ingenix database, then it follows that there is no evidence that Franco and Chazen paid excessive premiums for inferior coverage. Cigna has demonstrated that summary judgment on the RICO claims is warranted because no genuine issue of fact exists as to the lack of RICO injury.

Even if either Franco or Chazen could demonstrate that they sustained a concrete financial loss proximately caused by Cigna's conduct, the lack of evidence to substantiate the alleged predicate acts of racketeering defeats the RICO claims as a matter of law. Proving the predicate acts of mail and wire fraud requires Plaintiffs to show that Cigna engaged in a scheme to defraud; used the mail and wires to further the scheme; and had a specific intent to defraud Franco and Chazen. United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002); United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995). "'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission _reasonably calculated to deceive_ persons of ordinary prudence and comprehension.'" Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir.1998) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir.1991) (emphasis added)). As Cigna argues, the evidence shows, at best, that Cigna paid Ingenix fees for access to its database, submitted claims data to Ingenix for its use in the creation and maintenance of aggregated provider charge schedules, and issued Franco and Chazen EOBs via the mail. Missing is any proof that this activity, as it relates to the processing and payment of Plaintiffs' ONET claims, was fraudulent,

much less intentionally so.  Again, as the Court has stated, Plaintiffs proffer no evidence that the

ONET claims decisions disputed by Franco and Chazen were based on invalid UCRs, and,

moreover, that Cigna used such allegedly invalid data as part of a calculated scheme to deceive

plan subscribers.  In their opposition to this motion for summary judgment, Franco and Chazen

contend that the scheme to defraud is evident from Cigna's contribution of allegedly manipulated

data to Ingenix and use of Ingenix modules it allegedly knew to be invalid for fulfilling the

plans' UCR requirements.  At this stage of the litigation, however, more than allegations and

arguments are required. Though the RICO claims asserted by Franco and Chazen may have

survived the pleading stage of this litigation, they cannot proceed beyond this Rule 56 motion

without Plaintiffs' citation to "particular parts of materials in the record" that support their

contentions.  Fed. R. Civ. P. 56(c)(1)(A).


### III.   CONCLUSION

Summary judgment on all claims will be granted in favor Cigna.  The failure of

Plaintiffs' claims as a matter of law should not be construed as an endorsement of the Ingenix

database.  The issue that must be resolved is not whether Ingenix was flawed.  Rather, the critical

question on the ERISA claim is whether, in light of alternative and available methods for

determining UCR, coupled with plan language and, in Chazen's case, regulatory requirements,

Cigna abused its discretion in utilizing the Ingenix database and, as a result of such alleged

misconduct, deprived Plaintiffs of the ONET benefits to which the plan entitled them.  Plaintiffs

proffer no evidence in their favor on this question that can withstand Cigna's motion for

summary judgment.  Nor do they proffer evidence of a deliberate scheme to defraud, proximately causing Franco and Chazen concrete financial loss, as required to maintain a RICO claim.

Plaintiffs' cross-motion for partial summary judgment will be denied.

An Order memorializing these rulings and closing this action will be filed.


                                         s/Stanley R. Chesler
                                        STANLEY R. CHESLER
                                        United States District Judge


Dated:  June 24, 2014